UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MAY 27 2016**

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| WAVE 3 LEARNING, INC., a Nevada corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 16-cv-5643 |
| v. | ) ) | Judge Sara L. Ellis |
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

This is a Memorandum in support of a Motion for a Temporary Restraining Order and Preliminary Injunction brought by Plaintiff Wave 3 Learning, Inc. ("Wave 3" or "Plaintiff") against AVKO Educational Learning Foundation, Inc. ("AVKO" or "Defendant") (together, "the Parties") to immediately enjoin AVKO's sale of certain copyrighted works to third parties (and AVKO's false and disparaging statements being made to third parties related thereto) in direct violation of a signed settlement agreement executed by the Parties earlier this year.

### STATEMENT OF FACTS

After five years of litigation in four different courts, AVKO and Wave 3 finally came to a mutually-beneficial resolution to their long-standing dispute in the form of a signed settlement agreement executed on February 24, 2016 ("the Settlement Agreement"). *See* Exhibit A.

In exchange for Wave 3's dismissal of its lawsuit against AVKO, Wave 3's release of all claims against AVKO, four payments of $25,000 over four years, and a 6% royalty rate on all future Sequential Spelling-related sales (with Wave 3 required to meet certain annual revenue benchmarks), AVKO agreed to dismiss its lawsuit against Wave 3, release Wave 3 from all claims, grant Wave 3 an *exclusive* license to Sequential Spelling Levels 1-7 and their derivatives in the U.S., grant Wave 3 a non-exclusive license to the aforementioned material worldwide, and allow Wave 3 to maintain and continue to use <sequentialspelling.com> and the "Sequential Spelling" trademark. *See* Exhibit A. To be clear, the aforementioned exclusive license encompasses *all* Sequential Spelling Levels 1-7 material and derivatives thereof, including AVKO's "classic" editions of the Teacher's Guides and Student Workbooks, as well as Wave 3's approved revised versions and all future approved derivative works.

Since signing the Settlement Agreement, Wave 3 has worked in good faith and with great effort to fulfill the terms of the Settlement Agreement. However, and to Wave 3's great injury and irreparable harm, AVKO (specifically, Mr. Don McCabe) has consistently acted in bad faith to undermine and undo the Settlement Agreement. Mr. McCabe's bad faith has now escalated into damaging breaches of that agreement. Specifically, Mr. McCabe is now operating under the theory that Wave 3 only has an exclusive license to sell *Wave 3's revised* Sequential Spelling Levels 1-7 works and that AVKO somehow retains the right to sell "classic" Sequential Spelling Levels 1-7 works.

Although Mr. McCabe's theory directly contravenes the plain words of the Settlement Agreement, and although this theory directly contradicts Mr. McCabe's original (and correct) understanding of the Settlement Agreement as set forth in Mr. McCabe's email correspondence in early March of this year, Mr. McCabe nevertheless proclaimed in a May 11th email, "[A]ll our

mutual distributors will be able to purchase whatever AVKO product they desire from a firm that has acquired a license from AVKO to reproduce and distribute all the AVKO materials with the exception of your *Wave 3 Learning, Inc. Sequential Spelling Levels 1-7 derivatives*." *See* Exhibits B (emphasis added). Running with this self-serving and bad-faith interpretation of the Settlement Agreement, AVKO is now selling Sequential Spelling Levels 1-7 works to distributors such as Inquisicorp. Inc. ("Inquisicorp")—in direct violation of the Settlement Agreement. *See* Exhibits C-E. AVKO (through Mr. McCabe) is also falsely representing to third parties such as Inquisicorp that AVKO has the rights to sell Sequential Spelling Levels 1-7, in direct contradiction of the Settlement Agreement.

Whereas the Settlement Agreement was supposed to restore order and clarity to the Sequential Spelling market, and whereas the Settlement Agreement was supposed to give Wave 3 the undisputed right and much-needed security to invest the time and money into commercializing and developing Sequential Spelling Levels 1-7 materials (and derivatives thereof), AVKO's past and continuous breaches of the Settlement Agreement are causing irreparable harm and confusion to not only Wave 3, but also Wave 3's customers, potential customers, and the market and commercial demand for Sequential Spelling material in general. Unless AVKO is immediately enjoined, the Court will not be able to later right AVKO's wrongs.

## ARGUMENT

The standards for a temporary restraining order ("TRO") and a preliminary injunction are identical *See Illusions Too Reality, LLC v. City of Harvey*, 2003 U.S. Dist. LEXIS 1530, at *11 (N.D. Ill. Feb. 4, 2003). To determine the propriety of granting a temporary restraining order or preliminary injunction, federal courts generally apply a two-step analysis. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007) (applying the two-step, "sliding scale" analysis). First,

federal courts determine if there is (1) some likelihood of success on the merits, (2) a threat of irreparable harm, and (3) an inadequate remedy at law. If those conditions are satisfied, the court must then (4) balance the hardships, and (5) consider the impact on public interest. *See id.*; *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (affirming grant of preliminary injunction). Most notably, "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

### A.      Likelihood of Success on the Merits

Under the sliding scale approach, a party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This "threshold is low." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). This standard "does not require a finding that it is more likely than not that one side will prevail." *Oxford Capital Illinois, L.L.C. v. Sterling Payroll Fin., L.L.C.*, 2002 U.S. Dist. LEXIS 4372, at *12 n.2 (N.D. Ill. Mar. 15, 2002). Indeed, it is possible that both the plaintiff and the defendant may have a "better than negligible" likelihood of success. *Id.*

Here, the Plaintiff not only has a "better than negligible" likelihood of success on the merits, it has an extremely high likelihood of success on the merits. AVKO has plainly breached, and has made it clear that it intends to continue to breach, Wave 3's exclusive license to Sequential Spelling Levels 1-7 material as set forth in the Settlement Agreement by selling such material to distributors and other non-individuals.

Under Illinois law, to prevail on a breach of contract claim, the plaintiff must establish (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff;

4

(3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citing *Hickox v. Bell*, 195 Ill.App.3d 976, 992 (1990) (citations omitted)).

### 1. *Valid and Enforceable Contract*

On February 24, 2016, under the supervision and with the assistance of Magistrate Judge Sheila Finnegan, Wave 3 and AVKO entered into a valid and enforceable settlement agreement. *See* Exhibit A. The Settlement Agreement was signed by Mr. Donald McCabe as President of AVKO, as well as by Mr. McCabe in his individual capacity, and by Mr. Thomas Morrow as President of Wave 3, as well as by Mr. Morrow in his individual capacity. The parties reviewed and discussed the Settlement Agreement with their attorneys before executing it.

### 2. *Performance of the Contract by Plaintiff*

In accordance with the Settlement Agreement, Wave 3 (1) dismissed with prejudice its lawsuit against AVKO, (2) refrained from selling its revised works until they were authorized in accordance with the Settlement Agreement, (3) remitted the first of four $25,000 payments to AVKO, (4) has kept confidential the terms of the Settlement Agreement not necessary to exercise its rights granted under the Settlement Agreement, and (5) has refrained from disparaging AVKO.

### 3. *Breach of the Contract by Defendant*

As explained above, AVKO has sold and intends to continue to sell Sequential Spelling Levels 1-7 material to distributors and other non-individuals in violation of Wave 3's exclusive licensed granted to it under the Settlement Agreement. AVKO also has represented, and intends to continue to represent, to third parties that Wave 3 does not have the exclusive license it was granted under the Settlement Agreement.

### 4. *Resulting Injury to Plaintiff*

As a direct and proximate result of AVKO's breaches of the Settlement Agreement, Wave 3 has been injured and will continue to be injured financially and professionally. Specifically, AVKO's sale of the aforementioned material purloins Wave 3' profits, undercuts Wave 3's exclusive license, undermines Wave 3's credibility in the market, and causes irreparable confusion and conflict in the marketplace.

### B. Irreparable Harm

Irreparable injury is defined as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Ordinarily, transgressions of a continuing nature are sufficient. *Central Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 959, 608 (4th Dist. 1993). Without question, the injury Wave 3 seeks to redress is immediate and irreparable. Fed. R. Civ. P. 65(b). Wave 3 is not only losing significant revenue due to AVKO's breaches, it is also losing the faith and business of existing and potential customers. Moreover, the market for Sequential Spelling material is again thrown into chaos and conflict. This damage is irreversible. The harm and injury Wave 3 will continue to suffer cannot be fully rectified by a final judgment at trial. Unless immediately enjoined by the Court, Wave 3 will suffer escalating irreparable harm.

### C. No Adequate Remedy at Law

In order to preclude the granting of equitable relief, "an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical efficient, to the attainment of the ends of justice, and final." *Interstate Cigar Co. and ICC Indiana Warehouse, Inc. v. United States of America*, 928 F.2d 221, 223 (7th Cir. 1991) (citations omitted). It has long been a principal of equity jurisprudence that the mere

existence of a possible remedy at law is not sufficient to warrant denial of equitable relief. *See American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214 (1937).

Here, Plaintiff has no remedy at law. Its exclusive license, and the clarity in the marketplace that the license was supposed to generate, is in serious peril. Wave 3's injuries cannot be remedied by any other means besides an immediate restraining order and injunction. Wave 3 is not only losing and will continue to lose revenue; it has lost and will continue to lose distributors and other business that it will likely never regain. This business is crucial not only to Wave 3's business, it is also vital to Wave 3's ability to meet certain revenue benchmarks as outlined in the Settlement Agreement. *See* Exhibit A.

### D. Balance the Hardships

The Seventh Circuit has explained that, in balancing the harms, "the better a party's chances of winning at trial, the less the balance of harms needs to favor that party." *AM Gen.Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 831 (7th Cir. 2002). Here, as established above, Wave 3 has a highly likelihood of success on the merits. Moreover, Wave 3 will be immeasurably more harmed if the order and injunction is not granted than AVKO will be harmed if the order and injunction is granted. AVKO will still be receiving royalties from Wave 3's sales of the material, as well as three more checks for $25,000. Wave 3, on the other hand, may see its commercial market irreversibly shrink if not entirely disappear. Moreover, AVKO will only be enjoined from that which the company agreed not to do: sell Sequential Spelling Levels 1-7 to distributors and other non-individuals and mispresent the terms of the Settlement Agreement.

### E. Public Interest

There is a significant public interest in requiring parties to adhere to their contractual obligations. *Baskin-Robbins Inc. v. Patel*, 264 F. Supp. 2d 607, 612 (N.D. Ill. 2003); *see also J.C.*

*Penney Corp., Inc. v. Milwaukee Golf Dev. Co.*, LLC, No. 06 C 1826, 2006 WL 1215376, at *5 (N.D. Ill. May 3, 2006) (explaining that "the enforcement of contracts is an important public interest"); *Hallmark Cards, Inc. v. Tackbary*, No. 99 C 334, 1999 U.S. Dist. LEXIS 6468, at *28 (N.D. Ill. Apr. 9, 1999) ("The significant public interest in enforcing . . . agreements cannot be overstated."). By granting Wave 3's TRO, the Court will serve the significant public interest of ensuring that parties adhere to their contractual obligations, which is especially important in the context of litigation, where the validity and enforceability of settlement agreements is an essential and irreplaceable part of the justice system.

## CONCLUSION

Wave 3 will be irreparably harmed if Defendant is allowed to continue selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals. Accordingly, Wave 3 respectfully requests that this Court enter an Order granting: (1) a temporary restraining order requiring Defendant to (a) immediately cease mispresenting the terms of the Settlement Agreement to third parties, (2) a subsequent preliminary injunction (a) enjoining Defendant from any attempt to sell Sequential Spelling Levels 1-7 material to distributors and other non-individuals and (b) enjoining Defendant from representing to third parties that Wave 3 does not have an exclusive license to the copyrights in the Sequential Spelling Levels 1-7 works, until final adjudication of the merits of this action.

Dated: May 27, 2016

Respectfully submitted,

s/Daliah Saper
Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654
Phone: (312) 527-4100
dsaper@saperlaw.com

Matt Grothouse
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
(312) 527-4100
matt@saperlaw.com

Attorneys for Plaintiff
Wave 3 Learning, Inc.

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into by and among AVKO Educational Research Foundation, Inc. and Donald J. McCabe (collectively "AVKO"), and Wave 3 Learning, Inc. and Thomas A. Morrow (collectively "Wave 3"). AVKO and Wave 3 are sometimes referred to herein collectively as the "Parties." This Agreement shall be effective on the date of the last signature required for full execution by both AVKO and Wave 3 (the "Effective Date").

WHEREAS, AVKO filed an action in the United States District Court for the Northern District of Illinois, Eastern Division, against Wave 3, Case No. 1:15-cv-3393 (the "Lawsuit"), for unfair competition and false designation of origin under the Lanham Act, unfair competition under Illinois common law, unjust enrichment, deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, tortious interference with a business expectancy, breach of contract, and copyright infringement.

WHEREAS, Wave 3 filed a countersuit in the United States District Court for the Northern District of Illinois, Eastern Division, against AVKO, Case No. 1:15-cv-3393 (the "Countersuit"), for breach of contract, tortious interference with a prospective business relationship, trade libel, punitive damages, and alter ego.

WHEREAS, the Parties seek to resolve this dispute and the respective allegations amicably, and without the inconvenience and additional burdens of further litigation.

WHEREAS, Wave 3 denies all liability for the claims brought by AVKO.

WHEREAS, AVKO denies all liability for the claims brought by Wave 3.

WHEREAS, the Parties have agreed to compromise and settle all claims that have been brought or could have been brought, against each other in the Lawsuit and Countersuit without any party admitting liability or damages.

WHEREAS, the Parties desire to keep the terms of their settlement confidential.

NOW, THEREFORE, in exchange for the mutual covenants and conditions set forth below, the consideration of which is expressly acknowledged by each party, the Parties further agree as follows:

### RECITALS

1.   Representations and Warranties.

The Parties represent and warrant that each party that is a legal entity is duly organized, validly existing and in good standing under the laws of the location of its formation, and has all requisite power, authority or capacity, as applicable, to execute, deliver and perform this Agreement. No other person or entity is required to execute this Agreement for it to be binding as intended.

1

The Parties represent and warrant that they have personally or through their attorneys investigated all facts surrounding the various claims, controversies and disputes, and are fully satisfied with the terms, conditions and effects of this Agreement.

The Parties represent and warrant that no promise or inducement has been offered or made except as herein set forth, and that this Agreement is executed without reliance upon any statement or representation by any other party or the agent of any other party.

Wave 3 represents and warrants that no other copying of AVKO content has occurred.

The Parties represent and warrant that their gross revenues are fairly and accurately represented by the tax documents they shared with each other.

2.    Settlement Payment.

Beginning on or before the Effective Date, Wave 3 shall pay to AVKO the sum of one hundred thousand dollars ($100,000.00) (the "Settlement Amount") in annual installments of twenty-five thousand dollars ($25,000) until satisfaction of the Settlement Amount. The first payment will be due on June 1, 2016. Upon satisfaction of the Settlement Amount, AVKO acknowledges the receipt and sufficiency of this payment, and that it is in consideration of the releases and other provisions contained in this Agreement. In addition to the Settlement Amount, Wave 3 shall pay to AVKO a six percent (6%) royalty on Wave 3's gross revenue that year.

Wave 3 shall pay the Settlement Amount by wire transfer, and any associated transmittal fees, or by providing a certified or cashier's check payable to "Wolek & Noack," attorneys for AVKO, to be deposited in a trust for AVKO, in order that AVKO's attorneys can verify compliance with this Agreement, and AVKO authorizes delivery of said check to Wolek & Noack. Failure to pay the full Settlement Amount within 14 business days of the effective date of this Agreement terminates this entire Agreement unless the Parties agree in writing to extend this deadline.

3.    Materials at Issue

AVKO shall grant and hereby grants an exclusive license in the United States and Canada, and a worldwide nonexclusive license to the below titles and their derivatives (collectively "Sequential Spelling"):

- Sequential Spelling Level 1 Teacher Guide

- Sequential Spelling Level 2 Teacher Guide

- Sequential Spelling Level 3 Teacher Guide

- Sequential Spelling Level 4 Teacher Guide

- Sequential Spelling Level 5 Teacher Guide

- Sequential Spelling Level 6 Teacher Guide

2

- Sequential Spelling Level 7 Teacher Guide
- Sequential Spelling Level 1 Student Response Book
- Sequential Spelling Level 2 Student Response Book
- Sequential Spelling Level 3 Student Response Book
- Sequential Spelling Level 4 Student Response Book
- Sequential Spelling Level 5 Student Response Book
- Sequential Spelling Level 6 Student Response Book
- Sequential Spelling Level 7 Student Response Book

4.  <u>Sequential Spelling Website</u>

In the event the Agreement is terminated, Wave 3 shall sell the www.sequentialspelling.com domain to AVKO at the same price it was originally purchased for.

5.  <u>Annual Revenue Requirement.</u>

In the event that Wave 3's sales don't meet the thresholds in the below table, Wave 3's exclusive license is revoked and replaced by a nonexclusive license.

| Year | Revenue |
|------|---------|
| 2017 | $225,000 |
| 2018 | $250,000 |
| 2019 | $275,000 |
| 2020+ | $300,000 |

6.  <u>AVKO Sales.</u>

AVKO shall be permitted to sell all of its copyrighted materials on its website or other channels to the extent that it is to individuals and not distributors. *Until there is an approved version of Sequential Spelling I (one) Teacher Guide, AVKO has the right to sell such material to ~~distribute~~ and AVKO and Wave 3 will split the gross margins 50%.*

7.  <u>Copyright Use.</u>

Wave 3 understands and believes that AVKO is the sole and exclusive owner of the copyrights at issue in this lawsuit and all associated federal intellectual property registrations and pending registration applications, with the exception of this license as hereby granted. Wave 3

*its distributors*

2/24/2016

3

admits the validity of all copyrights at issue in this lawsuit and all associated intellectual property registrations and applications.

8.    Trademark Use.

Wave 3 understands and believes that AVKO is the sole and exclusive owner of the *Sequential Spelling* trademark at issue in this lawsuit and all associated federal intellectual property registrations and pending registration applications, with the exception of this license as hereby granted. Wave 3 admits the validity of all trademarks at issue in this lawsuit and all associated intellectual property registrations and applications.

9.    Audit.

AVKO shall have the right to use an auditor of its choice to audit Wave 3's financial records upon reasonable notice of no fewer than fourteen (14) days. In the event the auditor discovers a discrepancy of greater than three percent (3%) between the revenue reported to AVKO and Wave 3's actual revenue, Wave 3 shall pay all past-due royalties with a five percent (5%) interest award and pay the costs of the auditor.

10.    Right of Review

Wave 3 shall submit all of its existing Sequential Spelling materials to AVKO for approval prior to printing or publishing any new materials.  Wave 3 shall be expressly permitted to sell the remainder of its existing stock of materials.  Wave 3 shall not be permitted to print or sell any further Sequential Spelling materials without the express authorization of an individual expressly designated by AVKO for such a purpose. Such authorization shall not be unreasonably withheld. If the Parties cannot agree to the reasonableness of the withheld authorization, then the question will be submitted to Paul Holz.  If Paul Holz does not issue a decision on approval within two weeks, the Parties shall submit three names of persons to decide the approval question.  If one of those names overlaps, that person shall decide the reasonableness of the approval.  If there are no name overlaps, the Parties shall return to Judge Finnegan and she will select an individual from those three names.

Such an individual will be granted no fewer than fourteen (14) from receipt of the item to provide an authorization or rejection. This time period is per item and is cumulative. For example, if two books are received on the same day, the individual will have eight weeks to provide an authorization or rejection. In the event there is a dispute regarding the approval of any Sequential Spelling materials that cannot be resolved by the Parties, the Parties will agree on a neutral third party to settle the dispute.

11.    Release.

Conditioned upon the representations and warranties of the Parties, payment of the Settlement Amount, and other obligations set forth herein, AVKO hereby releases and forever discharges Wave 3 from all claims, demands, damages and costs arising out of, or directly or indirectly connected in any way with, the claims and allegations asserted by AVKO in the

4

Lawsuit and/or any matters, events, acts or omissions which could have been asserted by or on behalf of AVKO in the Lawsuit.

Conditioned upon the representations and warranties of the Parties, payment of the Settlement Amount, and other obligations set forth herein, Wave 3 hereby releases and forever discharges AVKO from all claims, demands, damages and costs arising out of, or directly or indirectly connected in any way with, the claims and allegations asserted by Wave 3 in the Countersuit and/or any matters, events, acts or omissions which could have been asserted by or on behalf of Wave 3 in the Countersuit.

The Parties shall dismiss with prejudice the Lawsuit within 14 days after the Agreement being signed. AVKO hereby releases and forever discharges Wave 3, from any and all actions, causes of action, claims, demands, damages, and costs relating to the Lawsuit through and including the Effective Date.

Wave 3 hereby releases and forever discharges AVKO, from any and all actions, causes of action, claims, demands, damages, and costs relating to the Countersuit through and including the Effective Date. Upon termination of the Agreement under the conditions set forth herein, Wave 3 shall immediately stop publishing, selling or distributing any materials mentioned herein. Any further litigation about the issues and materials herein will be subject only to this Agreement, and any further litigation will be pursuant to this Agreement, and Wave 3 shall be liable for the $100,000.00 for past damages.

Within 14 days, Wave 3 shall change any indication of ownership to reflect the license rights mentioned herein.

12.     Tolling of Any Statutes of Limitations

The Parties hereby agree that any statute of limitations periods, estoppel, and laches defenses are hereby waived, and to the extent the license ends, any such defense is tolled for the duration of this agreement.

13.     No Admission of Liability.

It is understood and agreed that this Agreement and other consideration recited herein does not constitute an admission on the part of either party of any liability and that this Agreement represents a compromise and settlement of disputed claims.

8.     Confidentiality.

The Parties agree that the facts and circumstances leading up to and surrounding this Agreement, the settlement of this dispute and controversy, and the facts and circumstances involved in the Lawsuit as described in the complaint, shall be kept private and confidential by the Parties, and that the Parties shall not communicate the terms of this Agreement or any other fact or circumstance surrounding the settlement of the dispute and controversy arising from the facts and circumstances discussed in this Agreement or the Lawsuit to any individual, entity, or other third-party, except as otherwise expressly provided below.

5

No party, nor an attorney for or a representative of a party, shall in any way communicate, publish, reveal, disclose, or characterize any terms, information, terms or details of this Agreement or the underlying circumstances or litigation, including the amount paid, except the Parties may state that it was "settled amicably" or state that the settlement is subject to a confidentiality provision. The Parties further expressly acknowledge and agree that if either party breaches the terms of the Agreement, the aggrieved party shall be entitled to all remedies available at law or in equity.

The confidentiality provision set forth in this section shall not prohibit communication or disclosures that are required by law, court order or subpoena, including disclosures necessitated by litigation in which any of the parties to this Agreement are involved. To the extent any party deems a communication or disclosure to be required by law or by court order, the communication or disclosure shall be limited to those persons or entities "needing to know" and shall be limited to the specific information requested or ordered.

The Parties agree that the confidentiality provisions set forth herein constitute material terms of this Agreement. The Parties agree that no part of the Settlement Amount is being paid for confidentiality but rather the consideration for such confidentiality is the mutual agreement of the Parties to abide by it.

9.    Non-disparagement.

The Parties agree that they will not make any statement now, or at any time in the future, to representatives of any media or to any other person or entity, which is disparaging of the other Parties' reputation or disparaging of the character, competence or reputation of any officer, director, executive, shareholder, agent, employee, insurer, or attorney of the other Party which could, if publicized, cause any person or entity related to one of the Parties to any humiliation or embarrassment, or which could cause the public to question the competence, reputation or character of any of these persons or entities.

10.    Miscellaneous.

10.1    Fees. The Parties to this Agreement shall bear their own attorneys' fees, costs and other expenses associated with the Lawsuit and Countersuit. If litigation is commenced in connection with this Agreement, the prevailing party shall be entitled to an award of its reasonable attorney's fees, and court and other direct costs.

10.2    Jurisdiction. This Agreement shall be exclusively governed by and construed in accordance with Illinois law without reference to its conflicts of law rules. The United States District Court for the District of Illinois, Eastern Division, or the appropriate state court located in Illinois, shall have exclusive jurisdiction over any legal action or proceeding arising out of or relating to this Agreement. For any action or proceeding that arises out of or relates to this Agreement, each of the undersigned expressly consents to personal jurisdiction and venue of each court specified in this section and hereby expressly waives any objection to same.

10.3    Severability, Waiver and Survival. If any term of this Agreement is held invalid, illegal, or unenforceable by a court of competent jurisdiction, that term shall be severed from this Agreement and the remaining terms shall continue in full force. No delay, omission, or failure

by any Party to exercise any right or remedy provided to it in this Agreement shall be deemed to constitute waiver or acquiescence, and any Party may exercise such right or remedy in the manner it deems expedient. Any Agreement provision that may reasonably be interpreted as being intended by the Parties to survive this Agreement's termination or expiration shall survive any such termination or expiration.

    10.4    <u>Interpretation</u>. This Agreement shall be construed within its fair meaning and in interpreting this Agreement no inference shall be drawn against the drafting Party. Headings, the title of this Agreement, and the terms used to reference each Party as used in this Agreement are for reference purposes only and in no way define, limit, construe or describe the scope or extent of such section or in any way affect this Agreement.

    10.5    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that signatures transmitted electronically, whether sent via facsimile or as attached files to emails (*e.g.*, .PDF), shall be acceptable to bind the Parties and shall not in any way affect this Agreement's validity.

    10.6    <u>Entire Agreement</u>. This Agreement sets forth the Parties' entire agreement and understanding relating to its subject matter and merges and supersedes all prior agreements, writings, commitments, discussions and understandings between them. The Agreement's terms are contractual and not mere recitals. No amendment or modification may be made to this Agreement unless it is in writing and signed by each Party.

    10.7    <u>Binding Agreement</u>. The terms and provisions of this Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective predecessors, successors, transferees and permitted assigns. Notwithstanding the foregoing, this Agreement is not a third party beneficiary contract and shall not be construed to be for any third party's benefit, and no third party shall have any claim or right of action hereunder.

    10.8    <u>Independent Investigation</u>. Each Party: (i) has read and understood this Agreement and agrees to all of its terms and conditions; (ii) independently evaluated the desirability of entering into this Agreement and is not relying on any representation, guarantee or statement other than as set forth herein; and (iii) has been afforded the opportunity to seek the advice of legal counsel regarding its rights and obligations set forth in this Agreement and has either sought or refused such counsel and accordingly has negotiated this Agreement either on its own or through its respective counsel.

**[THE   REMAINDER   OF   THIS   PAGE   HAS   BEEN   LEFT   BLANK INTENTIONALLY]**

IN WITNESS WHEREOF, each Party executes this Agreement either personally or by a duly authorized representative and agrees to be bound by this Agreement's terms and conditions.

By: AVKO Educational Research Foundation, Inc.
Name: _Donald J. McCabe_
Title: _President_
Date: _2/24/16_

By: Wave 3 Learning, Inc.
Name: _Thomas Morrow_
Title: _President_
Date: _2/24/16_

By: Donald J. McCabe
Date: _2/24/16_

By: Thomas A. Morrow
Date: _2/24/16_

# EXHIBIT B

From: **Don McCabe** <donmccabe1@gmail.com>
Date: Wed, May 11, 2016 at 9:13 AM
Subject: Breach of Contract plus interference
To: Thomas Morrow <Thomas@wave3learning.com>, Daliah Saper <ds@saperlaw.com>, RobertM195
<RobertM195@aol.com>, Adam Wolek <adamw@wonoip.com>


Mr. Morrow,

You are continuing to breach the February 23, 2016 agreement by posting on your website that you have been
licensed the copyrights and trademarks to Sequential Spelling. You may not claim AVKO has acquiesced. You
have only been licensed to publish your derivative of Sequential Spelling. The Student Work books while
technically and legally are infringing upon AVKO's copyrighted student response book and the *Engaging Language
Kits*, AVKO has implied an unwillingness to further enrich our attorneys by opposing your copyrighting of the
Wave 3 workbooks.

Your letter to distributors such as Inquisicorps, Rainbow, etc., are uncalled interference in commerce as well as
desperate threats.

Please stop this.

And by the way, all our mutual distributors will be able to purchase whatever AVKO product they desire from a
firm that has acquired a license from AVKO to reproduce and distribute all the AVKO materials with the exception
of your Wave 3 Learning, Inc. Sequential Spelling Levels 1-7 derivatives.



May God smile on you today.

Don McCabe, President and Research Director Emeritus,
AVKO Educational Research Foundation
3084 Willard Road Birch Run, MI 48415-9404
Phone: (810) 686-9283   Fax: (810) 686-1101
[Website] http://www.avko.org

# EXHIBIT C

# A Brighter Child
Homeschool and educational supplies

HOME ▾    ABOUT US ▾    PRIVACY POLICY ▾    CONTACT US ▾

My Account | My Wishlist | My Cart | Checkout | Log In

Search | sequential spelling | GO

Home / Search results for: 'sequential spelling'

## Search results for 'sequential spelling'

Items 1 to 25 of 371 total                Page: 1 2 3 4 5 ▶                Show 25 ▾ per page

View as: List Grid                                          Sort By Relevance ▾ ↓

Sequential Spelling Level 1 (AVKO)

SKU: 1431

$15.00    ADD TO CART

Sequential Spelling is AVKO's premiere seven-level spelling program for teaching the patterns of English spelling within seven normal public school years. Sequential Spelling is great for schools as well as homeschoolers. The sequences are not based on grade level curriculum, but instead students are encouraged to progress through them and most students should start with Level 1. The sequences are based on building from easy words to advanced words that use the same letter endings as from *all*, *tall*, *stall*, *install*, *installment*, *installation* The idea is get children to see patterns of spelling that exist in many words, from the very simple to the more complicated. This edition from AVKO is designed to be used with the Student Response Book (sold separately). Although not essential, it is a great convenience in managing your students' Sequential Spelling lessons. There are also (optional) DVDs available to correspond with the books for Levels 1-5.

Learn More

### COMPARE PRODUCTS

You have no items to compare.

### MY CART

You have no items in your shopping cart.

### CATEGORIES

Advanced Mathematics

Art & Music

Educational Games

Phonics & Reading

Language Arts

Christian Curriculum

Hands-On Science Kits

General Mathematics

Lesson Planners & Records

# EXHIBIT D



File Edit View History Bookmarks Tools Help

Sequential Spelling - Product ...

www.rainbowresource.com prodlist.php?subject=Spelling%2FVocab

sequential spelling

🔖 Download a Placement Test

Sort by  Popularity (most)  ›  Go

*Click product title for description and product reviews*

Jump to page of products that begin with
Showing Products: *(1 to 21 of 48)*

Page 1 of 3  Jump to page:  #'s  ›  Go

(1) 2 3 Next

Sequential Spelling Level 1 AVKO
Original
Item #: 038467
Grades: 1-3
Retail: $15.00
Rainbow Price: $11.95

**Add to Cart**

Sequential Spelling Level 1 Student
Revised
Item #: 029460
Grades: 1-3
Retail: $14.95
Rainbow Price: $8.25

**Add to Cart**

Sequential Spelling 1 DVD (version 2.5)
Item #: 036889
Grades: 1-3
Retail: $30.00
Rainbow Price: $27.95

**Add to Cart**

Sequential Spelling
for Adults I & II

12:35 PM
5/25/2016

# EXHIBIT E

## 1. Sequential Spelling

Your children get immediate results with Sequential Spelling. Minimize study time and reduce test-taking anxiety! Sequential Spelling teaches students to recognize patterns of spelling based on the rules of the English ...

Search Score: **967** (http://www.sonlight.com/homeschool/subjects/language-arts/spelling/sequential-spelling/)

## 2. Sequential Spelling, Volume 1

Add to Cart    Retail: $15.00

 Teaches students to recognize patterns of spelling based on the rules of the English language, but without all the complicated explanations.Some of the patterns covered: -in, -en, -et, -ot, -ay, -ime, -and, -ight. Repres...

Search Score: **324** (http://www.sonlight.com/RL150.html)

## 3. Sequential Spelling, Volume 2

Add to Cart    Retail: $15.00

 Teaches students to recognize patterns of spelling based on the rules of the English language, but without all the complicated explanations. Some of the patterns covered: -ob, -ack, -eam, -ame, -ab, -ir, -ub. Representa...

Search Score: **324** (http://www.sonlight.com/RL151.html)

## 4. Sequential Spelling, Volume 3









