## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WAVE 3 LEARNING, INC., a Nevada corporation, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | No. 16-cv-5643 |
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan corporation, and Donald McCabe, an individual, | ) ) ) ) | Hon. Jorge L. Alonso |
| *Defendants.* | ) ) | |

## DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**NOW COMES** Defendants AVKO EDUCATIONAL RESEARCH FOUNDATION, INC. ("AVKO") and DONALD J. MCCABE ("McCabe"), by and through their undersigned counsel, COLE SADKIN, LLC, and as their Amended Answers[1] to Plaintiff's Complaint, states as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract, breach of an implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business expectancy, common law unfair competition, deceptive trade practices, fraud, and punitive damages.

**ANSWER: Affirmed.**

## JURISDICTION AND VENUE

---

[1] On or about October 13, 2016, Defendant McCabe filed an Answer. *See* Docket Number 38. On or about October 10, 2016, Plaintiff filed a Motion for Default after Defendant AVKO did not promptly file a responsive pleading. *See* Docket Number 37. On or about November 17, 2016, the Court granted Defendants an opportunity to file this joint amended responsive pleading. *See* Docket Number 50.

2.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), as this action involves a dispute between a Nevada corporation with a principal place of business in Illinois, and a Michigan corporation with a principal place of business in Michigan—for an amount exceeding $75,000 exclusive of interests and costs.

**ANSWER: Affirmed.**

3.     Venue and personal jurisdiction is proper in the Northern District of Illinois under 28 U.S.C. 1391 (b) and (c) since, *inter alia*, a substantial part of the events or omissions giving rise to the claims occurred in this district, the settlement agreement at issue was negotiated and executed in this district, the settlement agreement provides that this district shall have exclusive jurisdiction over any legal action or proceeding arising out of or relating to it, and Plaintiff is headquartered and primarily does business in this district.

**ANSWER: Affirmed.**

## PARTIES

4.     Plaintiff Wave 3 Learning, Inc. is a Nevada corporation with its principal place of business located at 126 E. Wing St., Suite 240, Arlington Heights, Illinois 60004.

**ANSWER: Affirmed.**

5.     Defendant AVKO Educational Research Foundation, Inc. is a Michigan corporation with its principal place of business located at 3084 Willard Road, Birch Run, Michigan 48415.

**ANSWER: Affirmed in part and denied in part.  AVKO is a 501(c)3 nonprofit membership organization.**

6.     Defendant Donald J. McCabe is an individual residing at 3084 Willard Road, Birch

Run, Michigan 48415.

**ANSWER: Affirmed.**

## BACKGROUND

7.      After five years of litigation in four different courts, AVKO Educational Learning Foundation, Inc. ("AVKO") and Wave 3 Learning, Inc. ("Wave 3") came to a mutually- beneficial resolution to their long-standing dispute in the form of a signed settlement agreement executed on February 24, 2016 ("the Settlement Agreement"). *See* Exhibit A.

**ANSWER: Affirmed in part and denied in part. Defendants deny that the settlement obtained was a "mutually-beneficial resolution".**

8.      In exchange for Wave 3's dismissal of its lawsuit against AVKO, Wave 3's release of all claims against AVKO, four payments of $25,000 over four years, and a 6% royalty on all future Sequential Spelling-related sales (with Wave 3 required to meet certain annual revenue benchmarks), AVKO agreed to dismiss its lawsuit against Wave 3, release Wave 3 from all claims, grant to Wave 3 an exclusive license to Sequential Spelling Levels 1-7 and their derivatives in the U.S., grant a non-exclusive license to such material worldwide, and allow Wave 3 to maintain and continue to use <sequentialspelling.com> and the "Sequential Spelling" trademark. *See* Exhibit A.

**ANSWER: Affirmed in part and denied in part. AVKO granted an exclusive license to Wave 3 Revised Edition Sequential Spelling Teacher Editions 1-7, not AVKO's Sequential Spelling 1-7.**

9.      After signing the Settlement Agreement, Wave 3 worked in good faith and with great effort to fulfill the terms of the Settlement Agreement. However, and to Wave 3's great

injury and irreparable harm, AVKO (specifically, Mr. Don McCabe) consistently acted in bad faith to undermine and undo the Settlement Agreement. Ultimately, AVKO's and Mr. McCabe's bad faith escalated into damaging breaches of that agreement, including egregious violations of Wave 3's exclusive license and far-reaching injuries to Wave 3's reputation and standing in the marketplace.

**ANSWER: Denied. Plaintiffs did not work in good faith to fulfill the terms of the Settlement Agreement. Plaintiffs posted disparaging remarks on their website that cause injury to the reputation of both AVKO and McCabe. These disparaging remarks are a clear breach of the terms of the Settlement Agreement. Furthermore, Plaintiff and AVKO's attorneys at the time, modified the Settlement Agreement on February 25, 2016, without the consent of AVKO or McCabe. AVKO and McCabe were not notified of the changes until July 8, 2016. Any actions taken by AVKO or McCabe regarding changes to the Settlement Agreement were only in response to the deficient changes made to the Agreement without their consent.**

### Mr. McCabe's Bad-Faith Attempts to Undo the Settlement Agreement

10.     After a lengthy, all-day settlement conference mediated by Magistrate Judge Sheila Finnegan, Wave 3 and AVKO entered into the Settlement Agreement on February 24, 2016. Since that date, AVKO (by and through its President, Mr. Don McCabe) attempted in bad faith to undo the Settlement Agreement on at least <u>seven</u> separate occasions. In several of those occasions, Mr. McCabe tried to use AVKO's approval authority (as set forth in the Settlement Agreement) in bad faith to force Wave 3 to change the Settlement Agreement in AVKO's favor.

**ANSWER: Denied. Plaintiffs did not work in good faith to fulfill the terms of the Settlement Agreement. Plaintiffs posted disparaging remarks on their website that cause injury to the reputation of both AVKO and McCabe. These disparaging remarks are a clear breach of**

the terms of the Settlement Agreement. Furthermore, Plaintiff and AVKO's attorneys at the time, modified the Settlement Agreement on February 25, 2016, without the consent of AVKO or McCabe. AVKO and McCabe were not notified of the changes until July 8, 2016. Any actions taken by AVKO or McCabe regarding changes to the Settlement Agreement were only in response to the deficient changes made to the Agreement without their consent.

11.     First, in a March 8th email to Wave 3, Mr. McCabe—after unreasonably denying its approval of Wave 3's revised versions of Sequential Spelling Level 1 and Sequential Spelling Level 2—stated:

> Now if you really think Wave 3's version is better than AVKO's, perhaps there might be a solution.
>
> If, in the agreement we made, you accept a small change from "exclusive" to non-exclusive, you could publish with new ISBN numbers the WAVE 3 Sequential Spelling Series which would then allow AVKO to license others such as Inquisicorp to reproduce and distribute the classic AVKO Sequential Spelling.
>
> This shouldn't be of any great concern to you. After all Inquisicorp has made it abundantly clear that they do not like your version and will not sell it.
>
> And, certainly with your knowledge of the market, you should be able to easily outsell Inquisicorp with your new and improved version. After all, Inquisicorp does not compete with Wave 3 for customers like Rainbow, Timberdoodle, and Christian Book Store. It sells only to its existing customers. *See* Exhibit B, Pages 3-4.

ANSWER: Denied. Plaintiffs did not work in good faith to fulfill the terms of the Settlement Agreement. Plaintiffs posted disparaging remarks on their website that cause injury to the reputation of both AVKO and McCabe. These disparaging remarks are a clear breach of the terms of the Settlement Agreement. Furthermore, Plaintiff and AVKO's attorneys at the time, modified the Settlement Agreement on February 25, 2016, without the consent of AVKO or McCabe. AVKO and McCabe were not notified of the changes until July 8, 2016. Any actions taken by AVKO or McCabe regarding changes to the Settlement Agreement were only in response to the deficient changes made to the Agreement without their consent.

12.    Through the March 8th email, Mr. McCabe attempted to force Wave 3 to agree to a nonexclusive license to the Sequential Spelling material so AVKO could continue selling such material to Inquisicorp. Inc. ("Inquisicorp") and other distributors. This "small change" is actually a material dismantling of the Settlement Agreement—one that significantly harms Wave 3 and significantly benefits AVKO.

**ANSWER: Denied.  Defendants merely attempted to correct deficiencies contained within the Settlement Agreement.**

13.    Second, in a March 9th email and attachment, Mr. McCabe stated that Wave 3's materials were "totally unacceptable" but again offered "a possible solution." *See* Exhibit B, Pages 4-5. In an attachment to his email, Mr. McCabe argued that AVKO did not have the legal authority to grant exclusive rights and thus it could not "cede, sell, or transfer that which is not wholly its to give."  *See* Exhibit B, pages 5-6.

**ANSWER: Affirmed.**

14.    After arguing in his attached letter that the Settlement Agreement is effectively "null and void," Mr. McCabe insisted that the parties are left "with a simple choice . . . [c]hange the term to non-exclusive and re-negotiate the terms for derivatives or resume the court battle with motions from both sides running up our legal bills." *See* Exhibit B. If such a change were negotiated, Mr. McCabe represented, "AVKO's Board of Directors could be persuaded to allow Wave 3 to produce and distribute derivatives (your teacher editions and student workbooks)" and would "permit Wave 3 to copyright the student workbook derivatives" as long as Wave 3 "made clear that AVKO has only given permission and not its blessing and that AVKO has the copyrights to the teacher edition." *See* Exhibit B, Pages 5-6.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe did**

**submit the comments quoted in his settlement commentary.  However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement.**

15.     Relying on his own legal theory (a theory he did not run by AVKO's lawyers and one AVKO's lawyers could not ethically endorse), Mr. McCabe in the above email again tried to force Wave 3 to change the Settlement Agreement so that AVKO could have the right to sell Sequential Spelling Levels 1-7 to Inquisicorp and other distributors.

**ANSWER: Denied.  Mr. McCabe was concerned with the legal ramifications of selling exclusive rights to materials that AVKO co-owns the copyrights to.  The other owning entity, Instructional Media Innovations, Inc., has yet to give permission to AVKO to sell the copyrights of these materials Sequential Spelling Levels 1-7, which were not the materials listed in the Settlement Agreement.**

16.     These early March emails show that Mr. McCabe knew and understood that the Settlement Agreement grants to Wave 3 an exclusive license to Sequential Spelling Levels 1-7 and their derivatives. This grant includes AVKO's "classic" editions of the Teacher's Guides and Student Workbooks, as well as Wave 3's approved revised versions and all future approved derivative works. Indeed, Mr. McCabe's original aim in trying to renegotiate the Settlement Agreement was, in Mr. McCabe's own words, to "allow AVKO to license others such as Inquisicorp to reproduce and distribute the classic AVKO Sequential Spelling." *See* Exhibit B, Page 4.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary.  However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the**

Settlement Agreement. **The materials that AVKO was hoping to license to others, such as Inquisicorp, were not materials protected under the Settlement Agreement.**

17.     Third, in a March 12th email, Mr. McCabe warned Wave 3 that "AVKO will NOT approve of your student workbooks" because they are "derivatives of Sequential Spelling and the AVKO Student Response Book and Engaging Language Kits" which requires "written authorization from AVKO to avoid any possibility of a new lawsuit." Mr. McCabe immediately then entices: "This permission would almost be certainly be granted, if you would simply agree to the slightest of changes in the agreement, that is, non-exclusive." *See* Exhibit B, Pages 6-7. Again, Mr. McCabe unreasonably denied approval in order to force Wave 3 to revise the Settlement Agreement in AVKO's favor.

**ANSWER: Affirmed in part and denied in part. Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary. However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. Further, Mr. McCabe did not unreasonably deny approval as Plaintiff Wave 3 did not submit all of their work for approval as the Agreement laid out that they would.**

18.     Fourth, in a March 16th email, Mr. McCabe claimed that "as the settlement agreement was written you are now in default as you have not paid the amount of the settlement agreement within the allotted time." *See* Exhibit B, Page 7. This was false, as the first payment was due on (and was paid by) June 1, 2016, per the terms of the Settlement Agreement. *See* Exhibit A. Indeed, Mr. McCabe hurled this baseless claim at Wave 3 in order to sell his next pitch—that "AVKO is open to re–negotiation."

**ANSWER: Affirmed in part and denied in part. Defendants admit that Mr. McCabe did**

submit the comments quoted in his settlement commentary.  **However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement.**

19.     Mr. McCabe's "in default" email mirrored his previous emails in that it was sent to force Wave 3 to renegotiate the Settlement Agreement. Unsurprisingly, Mr. McCabe conjured up this theory and sent this email without (and likely against) the advice of AVKO's attorneys.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe did submit the emails referenced by Plaintiff.  However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. At the time of these e-mails, AVKO's previous counsel had already withdrawn.**

20.     Fifth, in a March 18th email, Mr. McCabe reiterated his "in default" argument and the fact that AVKO is "open to re–negotiation."  *See* Exhibit B, Page 8.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary.  However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement.**

21.     Sixth, in an April 30th email, Mr. McCabe incorrectly stated that "[y]ou do not own nor have a license to claim the copyrights to Sequential Spelling," and that to be valid and in effect, [a]ll licenses require payment--not just a promise of a payment."     *See* Exhibit B, Page 14.  This was false: Wave 3's license went into effect upon execution of the Settlement Agreement on February 24, 2016.  *See* Exhibit A.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary.  However, Defendants deny the**

**context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. Further, the Temporary Restraining Order commanded that all licenses to publish Sequential Spelling be terminated.**

22. In the same April 30th email, Mr. McCabe also frivolously accused Mr. Thomas Morrow (President of Wave 3) of breaching the Settlement Agreement's non-disclosure clause for telling distributors that Wave 3 owns an exclusive license to certain Sequential Spelling works (which Wave 3 must do in order to let them know he has the right and authority to sell the material). Mr. McCabe then warned Mr. Morrow to "cease this activity" or it would "act accordingly." *See* Exhibit B, Page 15. Mr. McCabe again conjured up this theory and sent this email without (and likely against) the advice of AVKO's attorneys.

**ANSWER: Affirmed in part and denied in part. Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary. However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. Further, Mr. McCabe's claims were not frivolous as discussion of the terms of the Settlement Agreement are in violation of the Agreement.**

23. Seventh, in a May 12th email, after again frivolously and incorrectly accusing Wave 3 of breaching the Settlement Agreement, Mr. McCabe told Mr. Morrow that it is "time for just the two of us to have a sit down conference with Judge Finnegan so our lawyers won't get another 30 or 40 thousand dollars." *See* Exhibit B, Page 16-17. Mr. McCabe then drafted a new, "replacement" settlement agreement that, most tellingly, is similar to the Settlement Agreement in most respects but doubled the amount Wave 3 must pay AVKO.

**ANSWER: Affirmed in part and denied in part. Defendants admit that Mr. McCabe did submit the comments quoted in his settlement commentary. However, Defendants deny the**

**context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement.**

24.     The central theme of Mr. McCabe's conduct and communications was clear:  Mr. McCabe wished to undo the Settlement Agreement and renegotiate a new one. As a result, AVKO and Mr. McCabe entirely undermined the Settlement Agreement to Wave 3's financial injury and irreparable harm.

**ANSWER: Affirmed in part and denied in part.  Defendants admit that Mr. McCabe was attempting to coordinating with Plaintiff to reconsider certain terms of the Settlement Agreement.  However, Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement.**

### Undermining the Approval Process

25.     When discussing the approval process during settlement negotiations, the Parties understood and agreed that the point and purpose of AVKO's approval authority was to ensure the general quality of the new Wave 3 material (no spelling errors, grammar errors, formatting errors, or functionality issues like the ones that AVKO complained about regarding the Wave 3 iPad app) and that Wave 3's materials would maintain the general pedagogical spirit and effectiveness of the Sequential Spelling program (i.e., the Wave 3 material would not become an entirely different and ineffective spelling program).

**ANSWER: Affirmed.**

26.     The Settlement Agreement grants AVKO approval authority but explicitly provides that such approval or authorization "shall not be unreasonably withheld."  *See* Exhibit A.  Mr. McCabe well understood this, as he all but admitted that this was the approval standard in his March 9th email to Mr. Morrow, wherein Mr. McCabe represents that were Wave 3 to agree

11

to a nonexclusive license, AVKO would follow the Settlement Agreement's original intended standard of approval. *See* Exhibit B, Page 6 (stating that if Wave 3 agreed to a nonexclusive license, AVKO would maintain the right to "disapprove of misspelled words, vulgar words, 6 pt type face, improper pagination, punctuation, grammar, untrue statements, etc.").

**ANSWER: Affirmed.**

27.     A few days after the execution of the Settlement Agreement, Wave 3 began submitting its revised materials to Mr. McCabe/AVKO. Instead of following the correct standard of approval, however, Mr. McCabe decided to reject every change in Wave 3's revised versions from the use of a table of contents, to the inclusion of an answer key, to deletion of the outdated and offensive word "negro."

**ANSWER: Denied.   The standard of approval was laid out in an amendment to the Settlement Agreement made by Wave 3 and AVKO's attorneys without AVKO being present or giving consent to the process.   Furthermore, Mr. McCabe/AVKO's rejections were not an attempt to force renegotiations.**

28.     The bad-faith intent behind Mr. McCabe's disapproval is evident throughout   Mr. McCabe's March emails: Mr. McCabe was misusing the approval process in an attempt to force Wave 3 to agree to a nonexclusive license.  *See* Exhibit B.

**ANSWER: Denied.  Mr. McCabe was not executing his right to approval with bad-faith intent or attempting to force renegotiations.**

29.     Fortunately, during settlement negotiations, the Parties anticipated complications arising from an approval process that required Mr. McCabe and Mr. Morrow to work together. The Parties therefore wrote into the Settlement Agreement an appeal mechanism involving a third party.  *See* Exhibit A.

**ANSWER: Denied. Defendants were not present or privy to Plaintiff's referenced settlement negotiations, nor did Defendants approve of the appeal mechanism. Plaintiff and AVKO's attorneys drafted the appeal mechanism without AVKO's consent.**

30.     As provided in the Settlement Agreement, if the "Parties cannot agree as to the reasonableness of the withheld authorization, then the question will be submitted to Paul Holz. If Paul Holz does not issue a decision on approval within two weeks, the Parties shall submit three names of persons to decide the approval question. If one of those names overlaps, that person shall decide the reasonableness of the approval." *See* Exhibit A.

**ANSWER: Affirmed.**

31.     Due to Mr. McCabe's abuse of the approval process, the Parties were forced to turn to the appeal mechanism. Eventually, the Parties agreed to allow a third party, Mr. Jerry Bailey (President of Dynamic Literacy holding a Master's Degrees in Education), to review the materials and determine the reasonable or unreasonable nature of Mr. McCabe's denial of approval.

**ANSWER: Affirmed in part and denied in part. Defendants admit that Mr. McCabe did have substantive concerns regarding Plaintiff's services. However, Defendants deny Plaintiff's allegation that Mr. McCabe was abusing the approval process.**

32.     Just before Mr. Morrow sent to Mr. Bailey Wave 3's revised versions and AVKO's listed reasons for disapproval, however, Mr. McCabe sent an email on April 1, 2016 to Mr. Bailey (with Mr. Morrow cc'd) listing out six specific problems that Mr. McCabe/AVKO had with Wave 3's revised versions. *See* Exhibit C. Mr. McCabe then represented that "[t]he changes to all the other 13 Wave 3 books that you will be asked to judge separately fall into the same categories" and so Mr. Bailey's decision as to the reasonableness of the six specific objections would obviate

the need for him to review the remaining revised works.  *See* Exhibit C.

**ANSWER: Affirmed.**

33.    In an email dated April 4, 2016, Wave 3 accepted Mr. McCabe's representation that these six objections were AVKO's reasons for disapproving Wave 3's works and that if such objections were resolved, all seven levels of Wave 3's revised works would be approved. *See* Exhibit D. Although Wave 3 believed that several of Mr. McCabe's listed objections were unreasonable and unrelated to the general quality of the work or the pedagogical effectiveness of the material, Wave 3 in good faith agreed to reasonably accommodate Mr. McCabe's objections in order to move the approval process along (at that point, two months had already elapsed since the date of the Settlement Agreement).

**ANSWER: Affirmed.**

34.    Wave 3 sent Mr. Bailey its proposed reasonable solutions to Mr. McCabe's six objections in its April 4th email. *See* Exhibit D. On April 15, 2016, Mr. Bailey approved of Wave 3's solutions.  *See* Exhibit E.

**ANSWER: Defendants do not possess sufficient knowledge with which to affirm or deny.**

35.    In the days and weeks that followed Mr. Bailey's, Mr. McCabe sent emails to Wave 3 reminding it to submit its Bailey-approved revised editions to AVKO so AVKO could ensure that Wave 3 complied with Mr. Bailey's ruling. *See* Exhibit B, Page 11 ("I know you said you would make some of the changes that Mr. Bailey said were reasonable and necessary to get our approval. But saying and doing are not the same thing.").

**ANSWER: Affirmed.**

36.    On April 27, 2016, Wave 3 sent printer's proofs of Wave 3's revised editions to be

reviewed by Mr. Bailey. *See* Exhibit F.

**ANSWER: Affirmed.**

37. On April 28, 2016, Mr. Bailey confirmed that Wave 3's proofs complied with Mr. Bailey's ruling. *See* Exhibit G. Although Wave 3 complied with Mr. Bailey's ruling, and although Mr. Bailey confirmed Wave 3's compliance, however, Mr. McCabe still found a reason to object to Wave 3's verified compliance. *See* Exhibit B, Pages 13-14.

**ANSWER: Denied. Defendants were unable to approve or deny because not all of the revised materials had been submitted for review.**

### AVKO Sold Sequential Spelling Level 1-7 Material to Distributors in Direct Violation of the Settlement Agreement

38. After unsuccessfully (and in bad faith) trying to revise the Settlement Agreement, and after attempting to use the approval process to force Wave 3 to agree to a nonexclusive license, AVKO (through Mr. McCabe) held the position that Wave 3 only had an exclusive license to sell *Wave 3's revised* Sequential Spelling Levels 1-7 works and that AVKO somehow retained the right to sell "classic" Sequential Spelling Levels 1-7 works.

**ANSWER: Denied. Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. Further, Mr. McCabe did not unreasonably deny approval as Plaintiff Wave 3 did not submit all of their work for approval as the Agreement laid out that they would.**

39. Although Mr. McCabe's theory directly contravened the plain words of the Settlement Agreement, and although this theory directly contradicted Mr. McCabe's original (and correct) understanding of the Settlement Agreement (as made clear in his early-March emails), Mr. McCabe proclaimed in a May 12th, "[A[ll our mutual distributors will be able to purchase whatever AVKO product they desire from a firm that has acquired a license from AVKO to

reproduce and distribute all the AVKO materials with the exception of your *Wave 3 Learning, Inc. Sequential Spelling Levels 1-7 derivatives*." *See* Exhibit B, Page 15 (emphasis added.

**ANSWER: Denied. Defendants deny the context alleged by Plaintiff that Mr. McCabe was attempting to force alterations to the Settlement Agreement. Further, Mr. McCabe did not unreasonably deny approval as Plaintiff Wave 3 did not submit any of their work for approval as the Agreement laid out that they would.**

40. Running with this self-serving and bad-faith interpretation of the Settlement Agreement, AVKO (through Mr. McCabe) then sold or licensed Sequential Spelling Levels 1-7 material to the following distributors and other non-individuals in direct violation of the Settlement Agreement and Wave 3's exclusive license: JJ Hipps Publishing, InquisCorp. Corp., Rainbow Resources, Instructional Media Innovations, A Brighter Child, Google, Wentworth York Ltd., Amazing Ambassadors, South Sutter Charter School, Forest Charter School, Joy Center of Learning, Golden Valley Charter School, Connecting Waters Charter School, Springboro Community Schools, Northfield Public Schools, The Learning House Inc., Care Books And More, Little Giant Steps, Gateway Curriculum Center, Quest for Reading Success, West Brooke Curriculum, Intelligent Design Consulting, Kiddley Divey Sewing, and Brady Bunch Pickers. Sales from these unauthorized sales totaled over $22,000. *See* Exhibit H.

**ANSWER: Denied. The Parties did not produce an approved version of the Materials and thus AVKO was not in violation of the terms.**

### AVKO Refused to Pay Wave 3 its Royalties

41. Per the Settlement Agreement, the Parties agreed to allow AVKO to continue selling Sequential Spelling Level 1 material (and Level 1 only) to distributors until there was a Wave 3 "approved version of Sequential Spelling Level 1." *See* Exhibit A. During this transitional

16

period, Wave 3 was entitled to 50% of the gross profits of AVKO's sales of the Level 1 material. *See* Exhibit A.

**ANSWER: Affirmed.**

42.     After Mr. Bailey approved Wave 3's version of Sequential Spelling 1 (on April 28, 2016), AVKO was required to provide an accounting of all sales of Level 1 material since February 24th, as well as 50% of the royalties thereof. However, Mr. McCabe (acting as President of AVKO) staunchly refused to remit this money until he was satisfied that Wave 3 met other, unrelated terms of the Settlement Agreement.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

43.     In an email dated April 27th, Mr. McCabe stated: "As far as our sales are concerned, whatever might be due you will be kept in trust until the full amount of the settlement has been paid to our attorneys." *See* Exhibit B, Page 13.  AVKO's payment to Wave 3 of 50% of gross profits from the aforementioned sales, however, was not conditioned upon Wave 3's fulfillment of the four $25,000 payments over four years.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

44.     On May 26, 2016, after months of trying to work with AVKO and AVKO's counsel but to no avail, Wave 3 filed a Complaint against AVKO, which included claims of breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business expectancy, and punitive damages.

**ANSWER: Affirmed.**

45.     After delaying to file a temporary restraining order based on representations by

AVKO's counsel that Mr. McCabe would be removed from AVKO and AVKO would thereafter be able to reasonably work with Wave 3 (a representation that never materialized), Wave 3 filed and ultimately noticed up an Emergency Motion for a Temporary Restraining Order for June 19, 2016.

**ANSWER: Affirmed.**

46. On July 21, 2016, this Court entered a Temporary Restraining Order ("TRO"), specifically enjoining and restraining Defendant AVKO and all those in active concert or participation with the same from, among other things: (1) selling to non-individuals Sequential Spelling Levels 1-7 material and all derivatives thereof in contravention of Wave 3's Learning, Inc.'s exclusive license to such material, (2) licensing others persons or entities to sell to all persons and entities, and continuing to license other persons or entities to sell to all persons and entities, Sequential Spelling Levels 1-7 material and all derivatives thereof in contravention of Wave 3's Learning, Inc.'s exclusive license to such material, and (3) misrepresenting to third parties its rights and Wave 3 learning, Inc.'s rights to Sequential Spelling Levels 1-7 material and all derivatives thereof in contravention of Wave 3's Learning, Inc.'s exclusive license to such material. Counsel for Wave 3 sent AVKO (via an email to Mr. Don McCabe) the TRO on Thursday, July 21, 2016.

**ANSWER: Affirmed in part and denied in part. Defendants admit that the Court entered a TRO. Defendants deny that the TRO should continue to be enforced, as Defendants did not have full access to counsel when the TRO was entered.**

47. On July 22, 2016, Don McCabe, still holding himself out as President of AVKO, sent Wave 3 President Thomas Morrow an email stating that AVKO was hereby terminating its license to Wave 3 (in direct violation of the Settlement Agreement) and representing that AVKO

would on August 4, 2016, "re-license to JJH Publishing" the "classic version of Sequential Spelling 1-7" in direct violation of the plain words of the Settlement Agreement. *See* Exhibit I. Mr. McCabe cc'd Joe Hipps, President of JJH Publishing, on this email.

**ANSWER: Affirmed in part and denied in part. Defendant Mr. McCabe did send the email referenced by Plaintiff. However, Defendants deny the context proffered by Plaintiff that this correspondence was sent improperly. Instead, Mr. McCabe understood the existing TRO to terminate all existing license agreements.**

48. Holding himself out as President of AVKO, McCabe misrepresented to a third party (Joe Hipps/JJH Publishing) that AVKO had the power under the Settlement Agreement to unilaterally terminate (and did terminate) Wave 3's exclusive license. Mr. McCabe also misrepresented to a third party (Joe Hipps/JJH Publishing) that after August 4, 2016, AVKO would have the power to negotiate a "re-license" of the "classic version of Sequential Spelling 1-7" to JJH Publishing. Under the Settlement Agreement, AVKO does not have the power to license the "classic version of Sequential Spelling 1-7" to JJH Publishing or any other person or entity.

**ANSWER: Affirmed in part and denied in part. Defendant Mr. McCabe did send the email referenced by Plaintiff. However, Defendants deny the context proffered by Plaintiff that the correspondence was sent improperly. The versions protected in the Agreement are not the original or "class" versions of the Materials, and thus Wave 3 does not have exclusive rights to those materials.**

49. As a result of these damaging misrepresentations, this Court on July 26, 2016 held AVKO and Mr. McCabe in contempt of Court for violating the Court's June 21st Temporary Restraining Order. The Court ordered a schedule of fees to be imposed for each day AVKO and Mr. McCabe failed to comply with the Order. The Court also stated that "further relief may be

granted if Defendant remains in non-compliance with the law."

**ANSWER: Affirmed.**

50.     In response to a June 27th email sent from Mr. McCabe, counsel for Plaintiff sent Mr. McCabe a detailed email on July 28th explaining exactly what he and AVKO should do to be in compliance with the Court's TRO. *See* Exhibit J. In this email, Plaintiff's counsel made it clear that "AVKO cannot terminate its exclusive license to Wave 3 and Judge Zagel did not order AVKO to do so" and that "[a]ny representations you make to third parties that AVKO terminated Wave's license or that Judge Zagel ordered you to do so constitutes non-compliance with the TRO and Judge Zagel's Contempt Order." *See* Exhibit J.

**ANSWER: Affirmed in part and denied in part. Defendant Mr. McCabe affirms that he did receive the email proffered by Plaintiff. However, Defendants deny that alleged representations made constitute non-compliance with the TRO for the reasons stated above.**

51.     Nevertheless, on Friday, July 29, 2016 (just one day later), Mr. McCabe misrepresented to Rainbow Resource Center, Inc. and Exodus Books (two third-party distributors) that "at the moment there is no publisher licensed to sell those books [the Sequential Spelling material exclusively licensed to Wave 3] to distributors" and then implied that it would have the rights to license the works after the TRO expires on August 4, 2016. *See* Exhibit K.

**ANSWER: Affirmed in part and denied in part. Defendant Mr. McCabe affirms that he reached out to the distributors proffered by Plaintiff. However, Defendants deny the context proffered by Plaintiff that the correspondence was sent improperly. The versions protected in the Agreement are not the original or "class" versions of the Materials, and thus Wave 3 does not have exclusive rights to those materials.**

52.     On Monday August 8, 2016 and Monday August 15, 2016, the Court heard

Plaintiff's arguments in favor of its Motion to Show Cause and Motion for Preliminary Injunction. Mr. McCabe attended the two hearing as a fact witness for Defendant AVKO.

**ANSWER: Affirmed.**

53. On, August 16, 2016, the Court granted Plaintiff's Motions and ordered AVKO and Mr. McCabe to, among other things, "immediately cease selling or licensing any Sequential Spelling material Levels 1-7 (or any variation or derivative thereof including DVD's) to any third party whatsoever."

**ANSWER: Affirmed.**

54. At all times since February 24, 2016, Mr. McCabe has personally and exclusively directed AVKO to breach the Settlement Agreement at issue, breach the implied covenant of good faith and fair dealing within that Settlement Agreement, unjustly enrich AVKO (and himself), tortiously interfere with Wave 3's business expectancy, unfairly compete in the marketplace, conduct deceptive trade practices, and make fraudulent misrepresentations to third parties—all of which were willfully done with malice toward Wave 3.

**ANSWER: Denied.**

55. The purpose of the Settlement Agreement was to provide clarity in the marketplace and to establish Wave 3 as the exclusive source of Sequential Spelling Levels 1-7. Through the royalty arrangement provided by the Settlement Agreement, Wave 3's profits translate to AVKO's profits and Wave 3's success means AVKO's success. However, through AVKO's past and present material breaches of the Settlement Agreement, the market is once again confused, to Wave 3's financial detriment and irreparable harm.

**ANSWER: Denied.**

**COUNT I**
**Breach of Contract (AVKO)**

56.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-55 as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1 through 55.**

57.     On February 24, 2016, AVKO and Wave 3 entered into a binding Settlement Agreement.

**ANSWER:  Affirmed.**

58.     Since February 24, 2016, Wave 3 has performed its obligations under the Settlement Agreement by (1) dismissing with prejudice its lawsuit against AVKO, (2) refraining from selling its revised works until they were authorized in accordance with the  Settlement Agreement, (3) remitting the first of four $25,000 payments to AVKO, (4) remitting royalties on its sales of Sequential Spelling material, (5) keeping confidential the terms of the Settlement Agreement not necessary to exercise its rights granted under the Settlement Agreement, and (6) refraining from disparaging AVKO.

**ANSWER:  Denied.  Plaintiff Wave 3 and Morrow have made continuous disparaging comments about AVKO and McCabe through their website.**

59.     AVKO, through the conduct set out in detail above, committed material breaches of the Settlement Agreement by, among other things, selling Sequential Spelling Levels 1-7 to distributors and other non-individuals in the United States after February 24, 2016; refusing to give an accounting of and remitting payment for AVKO's sale of Sequential Spelling Level 1 material from February 24, 2016 to April 28, 2016; and violating the non-disparaging clause through its communications with Inquisicorp Inc. and other third parties.

**ANSWER: Denied.**

60.     The foregoing breaches of contract have directly and proximately caused and are

still causing Wave 3 substantial damages, including the loss of company resources and property, lost compensation and royalty fees, marketplace confusion and dilution, and harm to the company's reputation and relations with its customers and potential customers.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that include the following:

(a) A permanent mandatory injunction ordering AVKO to stop selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals in the United States and Canada for the life of the Settlement Agreement;

(b) A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(c) AVKO's profits associated with the breach and damages to Plaintiff, in an amount to be determined at trial but in no instance less than $175,000;

(d) Both pre-judgment and post-judgment interest;

(e) Attorneys' fees and costs; and

(f) ) Such other and further relief as this Court finds just and equitable.

## COUNT II
**Breach of Implied Convenient of Good Faith and Fair Dealing (AVKO)**

61. Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-60 as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-60.**

62. Implied as a matter of law in the Settlement Agreement between Wave 3 and

AVKO is a covenant of good faith and fair dealing between the contracting parties, which mandates (as though expressly set forth in the agreement) that AVKO deal fairly and honestly with respect to all matters pertaining to the Settlement Agreement.

**ANSWER: Affirmed.**

63.     Pursuant to this implied covenant of good faith and fair dealing, AVKO—vested with contractual discretion regarding approval of Wave 3's revised materials—was obligated to act reasonably and in good faith in exercising this discretion. AVKO was also obligated to act reasonably and in good faith in honoring Wave 3's exclusive license to Sequential Spelling Levels 1-7 material.

**ANSWER: Affirmed.**

64.     AVKO, acting through its President, unreasonably denied approval to Wave 3's revised versions in an attempt to force Wave 3 to renegotiate the Settlement Agreement. AVKO also unreasonably interpreted and represented to third parties Wave 3's rights to the material as set forth in the Settlement Agreement so that AVKO could continue selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals.

**ANSWER: Denied. Defendants did not unreasonably deny approval and did not attempt to force Plaintiff to renegotiate the Settlement Agreement.**

65.     AVKO's actions, which were undertaken in bad faith, were wholly inconsistent with Wave 3's reasonable expectations and therefore breached the implied covenant of good faith and fair dealing between the Parties.

**ANSWER: Denied. Defendants did not unreasonably deny approval and did not attempt to force Plaintiff to renegotiate the Settlement Agreement.**

66.     As a direct and proximate result of AVKO's breach of the implied covenant of

good faith and fair dealing, Plaintiff has suffered and continues to suffer significant damages including, but not limited to, lost distribution, lost sales, lost profits, attorneys' fees, costs, consequential damages, and interest on money owned.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that include the following:

(a) A permanent mandatory injunction ordering AVKO to stop unreasonably interfering with the approval process and misrepresenting to third parties its rights and Wave 3's rights to Sequential Spelling Levels 1-7 material;

(b) A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(c) AVKO's profits associated with the breach and damages to Plaintiff, in an amount to be determined at trial but in no event less than $175,000;

(d) Both pre-judgment and post-judgment interest;

(e) Attorneys' fees and costs; and

(f) Such other and further relief as this Court finds just and equitable.

## COUNT III
## Unjust Enrichment (AVKO)

67. Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-66 of its counterclaims as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-66.**

68. AKVO sold Sequential Spelling Levels 1-7 material to non-individuals after

February 24, 2016.

**ANSWER: Affirmed.**

69.     AVKO's wrongful acts have impoverished and continue to injure Wave 3's exclusive license to the aforementioned material, including by loss of revenue, loss of customers, dilution and confusion in the market, injury to its reputation, and diminution in the value of the Sequential Spelling Levels 1-7 material.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

70.     But for AVKO's wrongful acts, Wave 3 would not have lost revenue, lost customers, endured reputational injury and diminution in the value of its exclusive license and AVKO would not have gained revenue, gained or maintained customers it should no longer have, and benefited from the lack of an exclusive source of the material.

71.     Wave 3 has no adequate remedy at law.

**ANSWER: Denied.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that include the following:

(a)     A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(c)     AVKO's profits associated with AVKO's sale of the material at issue, in an amount to be determined at trial but in no event less than $22,000;

(d)     Both pre-judgment and post-judgment interest;

(e)     Attorneys' fees and costs; and

(f)     Such other and further relief as this Court finds just and equitable.

## COUNT IV
## Tortious Interference with a Business Expectancy (AVKO)

72.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-71 of its counterclaims as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-71.**

73.     Wave 3 had a reasonable expectation of entering into valid business relationships with established distributors, potential distributors, and potential customers interested in purchasing Sequential Spelling Levels 1-7 and AVKO knew of this reasonable expectancy.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

74.     Since sometime after the execution of the Settlement Agreement, AVKO has explicitly or implicitly represented to Wave 3's current and potential distributors and consumers that Wave 3 did not possess a license to sell or distribute the aforementioned material and that AVKO retained the right to sell such material.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

75.     Through these willfully false and disparaging statements about Wave 3 and its rights, AVKO has intentionally interfered with Wave 3's business expectancy by convincing distributors and customers to purchase AVKO's goods instead of Wave 3's goods.

**ANSWER: Denied.**

76.     With reasonably certainty, but for AVKO's commercial conduct and false and disparaging statements, Wave 3's business expectancy would have been realized.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny**

this allegation.

77.     AVKO's interference was done purposefully, intentionally, and willfully, such that many potential distributors and customers of Wave 3's goods and services were dissuaded from selecting Wave 3. As a result, AVKO intended to and did interfere with Wave 3's business expectancy.

**ANSWER: Denied.**

78.     Wave 3 has lost distributors, customers, sales, and goodwill as a direct and proximate result of AVKO's tortious conduct.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO including, but not limited to, the following relief:

(a)     Permanent injunctive relief against AVKO enjoining it, or any of its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with AVKO, from publishing false and defamatory statements concerning Wave 3 and from tortiously interfering with Wave 3's actual or prospective business relationships or expectancies;

(b)     Damages to Wave 3, in an amount to be determined at trial but in no event less than $175,000;

(c)     Disgorgement of AVKO's ill-gotten profits;

(d)     Both pre-judgment and post-judgment interest;

(e)     Attorneys' fees and costs; and

(f)     Such other and further relief as this Court finds just and equitable.

## COUNT V
## Illinois Common Law Unfair Competition (AVKO)

79.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-78 of its counterclaims as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-78.**

80.     Through the aforementioned acts, AVKO has unfairly competed with Wave 3 in order to usurp Wave 3's customers and undermine the marketplace, to the detriment of Wave 3.

**ANSWER: Denied.**

81.     As a result of Defendant AVKO's actions, Defendant has misappropriated valuable sales from Plaintiff, has purloined Plaintiff's customers, and has confused the marketplace.

**ANSWER: Denied.**

82.     Such acts have caused, serious, irreparable injury for which Plaintiff has no adequate remedy at law.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO including, but not limited to, the following relief:

(a) Damages to Wave 3, in an amount to be determined at trial but in no event less than

$175,000;

(b) Disgorgement of AVKO's ill-gotten profits;

(c) Both pre-judgment and post-judgment interest;

(d) Attorneys' fees and costs; and

(e) ) Such other and further relief as this Court finds just and equitable.

## COUNT VI
### Deceptive Trade Practices (AVKO)

83.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-82 of its counterclaims as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-82.**

84.     Defendant AVKO, in and through various of the aforementioned emails, employed deception and misrepresentations of material facts—namely, falsely stating that it had the rights to sell Sequential Spelling material Levels 1-7 and that Wave 3 did not have that right—with the intent that third parties (Illinois consumers and businesses) would rely on this deception and concealment of material facts in purchasing Sequential Spelling material from AVKO.

**ANSWER: Denied.**

85.     Defendant AVKO's false representations in and through emails in fact and proximately caused injury to Illinois consumers and to Plaintiff Wave 3.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Plaintiff prays that this Honorable Court enter an order and judgment in favor of Plaintiff and against Defendant AVKO as follows:

 (a)   For damages to Illinois consumers and Plaintiff, in an amount to be determined at trial, but in no event less than $25,000.

 (b)  Both pre-judgment and post-judgment interest;

 (c)  Attorneys' fees and costs; and

 (d)  Such other and further relief as this Court finds just and equitable.

### COUNT VII
### Fraud (AVKO)

86.     Wave 3 incorporates by reference into this Count all of the allegations

appearing in paragraphs 1-85 of its counterclaims as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-85.**

87.     AVKO propagated false statements of material facts to Wave 3, including but not limited to representing that it only licensed Sequential Spelling material to JJH Publishing when it in fact sold Sequential Spelling material to twenty other non-individual companies/organizations.

**ANSWER: Denied.**

88.     AVKO knew these representations were false.

**ASNWER: Denied.**

89.     AVKO intended to induce Wave 3 to believe that its infringing sales to third party non-individuals were less and less egregious.

**ANSWER: Denied.**

90.     Wave 3 justifiably relied on AVKO's representations.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

91.     As a result of this reliance, Wave 3 suffered injury, including additional market and reputational loss as well as additional litigation expenses and foregone damages.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Plaintiff prays that this Honorable Court enter an order and judgment in favor of Plaintiff and against Defendant AVKO as follows:

(a) For damages to Plaintiff, in an amount to be determined at trial, but in no event less than $5,000.

(b) Both pre-judgment and post-judgment interest;

(c) Attorneys' fees and costs; and

(d) Such other and further relief as this Court finds just and equitable.

## COUNT VIII
## <u>Punitive Damages (AVKO)</u>

92.     Wave 3 incorporates by references into this Count all of the allegations appearing in paragraphs 1-91 as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-91.**

93.     AVKO's actions were intentional, willful, and wanton, and were performed with malice toward Wave 3.

**ANSWER: Denied.**

94.     Punitive damages are necessary to punish AVKO for its conduct and to deter it from committing similar transgressions in the future.

**ANSWER: Denied.**

WHEREFORE, Plaintiff seeks punitive damages from Defendant, including attorneys' fees, in the amount of no less than $350,000.


## COUNT IX
## <u>Breach of Contract (McCabe)</u>

95.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-94 of its counterclaims as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-94.**

96.     On February 24, 2016, AVKO and Wave 3 entered into a binding Settlement Agreement.

**ANSWER:  Affirmed**

97.     Since February 24, 2016, Wave 3 has performed its obligations under the Settlement Agreement by (1) dismissing with prejudice its lawsuit against AVKO, (2) refraining from selling its revised works until they were authorized in accordance with the Settlement Agreement, (3) remitting the first of four $25,000 payments to AVKO, (4) remitting royalties on its sales of Sequential Spelling material, (5) keeping confidential the

terms of the Settlement Agreement not necessary to exercise its rights granted under the Settlement Agreement, and (6) refraining from disparaging AVKO.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

98. Defendant McCabe, at all times personally and exclusively directing AVKO to perform the conduct set out in detail above, committed material breaches of the Settlement Agreement by, among other things, selling Sequential Spelling Levels 1-7 to distributors and other non-individuals in the United States and Canada after February 24, 2016; refusing to give an accounting of and remitting payment for AVKO's sale of Sequential Spelling Level 1 material from February 24, 2016 to April 28, 2016; and violating the non-disparagement clause through its communications with Inquisicorp. Inc. and other third parties.

**ANSWER: Denied.**

99. The foregoing breaches of contract have directly and proximately caused and are causing Wave 3 substantial damages, including the loss of company resources and property, lost compensation and royalty fees, marketplace confusion and dilution, and harm to the company's reputation and relations with its customers and potential customers.

**ANSWER: Denied.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against Defendant McCabe that include the following:

(a) A permanent mandatory injunction ordering Defendant McCabe to stop selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals in the United States for the life of the Settlement Agreement;

(b) A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(c) AVKO's profits associated with the breach and/or damages to Plaintiff, in an amount to be determined at trial but in no instance less than $175,000;

(d) Both pre-judgment and post-judgment interest;

(e) Attorneys' fees and costs; and

(f) ) Such other and further relief as this Court finds just and equitable.

## COUNT X
**Breach of Implied Convenient of Good Faith and Fair Dealing (McCabe)**

100.    Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-99 as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-99.**

101.    Implied as a matter of law in the Settlement Agreement between Wave 3 and AVKO is a covenant of good faith and fair dealing between the contracting parties, which mandates (as though expressly set forth in the agreement) that AVKO deal fairly and honestly with respect to all matters pertaining to the Settlement Agreement.

**ANSWER: Affirmed.**

102.    Pursuant to this implied covenant of good faith and fair dealing, AVKO— vested with contractual discretion regarding approval of Wave 3's revised materials—was obligated to act reasonably and in good faith in exercising this discretion.  AVKO was also obligated to act reasonably and in good faith in honoring Wave 3's exclusive license to Sequential Spelling Levels 1-7 material.

**ANSWER: Affirmed.**

103.    At all times, Mr. McCabe personally and exclusively directed AVKO to unreasonably deny approval to Wave 3's revised material in an attempt to force Wave 3 to renegotiate the Settlement Agreement. Mr. McCabe also directed AVKO to unreasonably interpret and misrepresent to third parties Wave 3's exclusive license as set forth in the Settlement Agreement in order to continue to sell Sequential Spelling Levels 1-7 material to distributors and other non-individuals.

**ANSWER: Denied.**

104. Mr. McCabe's actions, which were undertaken in bad faith, were wholly inconsistent with Wave 3's reasonable expectations and therefore breached the implied covenant of good faith and fair dealing between the Parties.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

105. As a direct and proximate result of AVKO's breach of the implied covenant of good faith and fair dealing, (which was personally and exclusively directed by Mr. McCabe) Plaintiff has suffered and continues to suffer significant damages including, but not limited to, lost distribution, lost sales, lost profits, attorneys' fees, costs, consequential damages, and interest on money owned.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against Defendant McCabe that includes the following:

(a) A permanent mandatory injunction ordering Defendant McCabe to stop selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals in the United States during the life of the Settlement Agreement;

(b) A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(c) Defendant McCabe's profits associated with the breach and damages to Plaintiff, in an amount to be determined at trial but in no event less than $175,000;

(d) Both pre-judgment and post-judgment interest;

(e) Attorneys' fees and costs; and

(f) Such other and further relief as this Court finds just and equitable.

## COUNT XI
### Unjust Enrichment (McCabe)

106. Wave 3 incorporates by reference into this Count all of the allegations

35

appearing in paragraphs 1-105 of its counterclaims as if set forth fully herein.

Case: 1:16-cv-05803 Document #: 91 Filed: 11/30/16 Page 36 of 42 PageID #:492

**ANSWER: Defendants reassert their answers to paragraphs 1-105.**

107.    Through the personal and exclusive direction of Defendant McCabe, AKVO continued to sell Sequential Spelling Levels 1-7 material after February 24, 2016 in direct violation of Wave 3's exclusive license.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

108.    AVKO's wrongful acts, directed by Defendant McCabe, have impoverished and threaten to continue to injure Wave 3's exclusive license to the aforementioned material, including by loss of revenue, loss of customers, dilution of and confusion in the market, injury to its reputation, and diminution in the value of the Sequential Spelling Levels 1-7 material.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

109.    But for AVKO's wrongful acts, which were directed by Defendant McCabe, Wave 3 would not have lost revenue, lost customers, endured reputational injury and diminution in the value of its exclusive license and AVKO would not have gained revenue, gained or maintained customers it should no longer have, and benefited from the lack of an exclusive source of the material.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against Mr. McCabe that include the following:

(a)     A full and true accounting of AVKO's sales of all Sequential Spelling material after February 24, 2016;

(b)     Defendant McCabe's profits associated with AVKO's sale of the material at issue, in an amount to be determined at trial but in no event less than $22,000;

(d)      Attorneys' fees and costs; and

(e)      Such other and further relief as this Court finds just and equitable.

## COUNT XII
## Tortious Interference with a Business Expectancy (McCabe)

110.    Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-108 of its counterclaims as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-109.**

111.    Wave 3 had a reasonable expectation of entering into valid business relationships with established distributors, potential distributors, and potential customers interested in purchasing Sequential Spelling Levels 1-7 and Defendant McCabe knew of this reasonable expectancy.

**ANSWER: Affirmed.**

112.    Since at least as early as February 29, 2016, AVKO—at Mr. McCabe's direction—explicitly and implicitly represented to Wave 3's current and potential distributors and consumers that AVKO had the right to sell Sequential Spelling Levels 1-7 material and that Wave 3 did not.

**ANSWER: Denied.**

113.    Through these willfully false and disparaging statements about Wave 3 and its goods and services, Defendant McCabe has intentionally interfered with Wave 3's business expectancy by convincing distributors and customers to purchase AVKO's goods instead of Wave 3's goods.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

114.    With reasonably certainty, but for Defendant McCabe's conduct and false and disparaging statements, Wave 3's business expectancy would have been realized.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

115.     Defendant McCabe's interference was done purposefully, intentionally, and willfully, such that many potential distributors and customers of Wave 3's goods and services were dissuaded from selecting Wave 3. As a result, Defendant McCabe intended to and did interfere with Wave 3's business expectancy.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

116.     Wave 3 has lost distributors, customers, sales, and goodwill as a direct and proximate result of AVKO's tortious conduct.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO including, but not limited to, the following relief:

(a)   Permanent injunctive relief against Defendant McCabe, enjoining him from publishing false and defamatory statements concerning Wave 3; and, tortiously interfering with Wave 3's actual or prospective business relationships or expectancies;

(b) Damages to Wave 3, in an amount to be determined at trial but in no event less than

$175,000;

(c) Disgorgement of Defendant McCabe's ill-gotten profits;

(d) Both pre-judgment and post-judgment interest; and,

(e) ) Such other and further relief as this Court finds just and equitable.

**COUNT XIII**
**Common Law Unfair Competition (McCabe)**

117.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-116 of its counterclaims as if set forth fully herein.

118.     Through the aforementioned acts, AVKO (at the direction of Defendant McCabe) has unfairly competed with Wave 3 in order to usurp Wave 3's customers and undermine the marketplace, to the detriment of Wave 3.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

119.     As a result of Defendant AVKO's actions, personally and exclusively directed by Mr. McCabe, AVKO has misappropriated valuable sales from Plaintiff, has purloined Plaintiff's customers, and has confused the marketplace.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

120.     Such acts have caused, serious, irreparable injury for which Plaintiff has no adequate remedy at law.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against Defendant McCabe including, but not limited to, the following relief:

(a) Damages to Wave 3, in an amount to be determined at trial but in no event less than

$175,000;

(b) Disgorgement of AVKO's ill-gotten profits;

(c) Both pre-judgment and post-judgment interest;

(d) Attorneys' fees and costs; and

(e)  Such other and further relief as this Court finds just and equitable.

## COUNT XIV
## Deceptive Trade Practices (McCabe)

39

121. Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-120 of its counterclaims as if set forth fully herein.

**ANSWER: Defendants reassert their answers to paragraphs 1-120.**

122. Defendant McCabe directed AVKO, in and through various of the aforementioned emails, to employ deception and misrepresentations of material facts—namely, falsely stating that it had the right to sell Sequential Spelling material Levels 1-7 and that Wave 3 did not have that right with the intent that third parties (Illinois consumers and businesses) would rely on this deception and concealment of material facts in purchasing Sequential Spelling material from AVKO.

**ANSWER: Denied.**

123. Defendant AVKO's false representations in and through emails (made at the direction of Defendant McCabe) actually and proximately caused injury to Illinois consumers and to Plaintiff Wave 3.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Plaintiff prays that this Honorable Court enter an order and judgment in favor of Plaintiff and against Defendant McCabe as follows:

(a) For damages to Illinois consumers and Plaintiff, in an amount to be determined at trial, but in no event less than $25,000.

(b) Both pre-judgment and post-judgment interest;

(c) Attorneys' fees and costs; and

(d) Such other and further relief as this Court finds just and equitable.

**COUNT XV**
**Fraud (McCabe)**

124. Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-85 of its counterclaims as if set forth fully herein.

125.    AVKO—at the direction and through Defendant McCabe—propagated false statements of material facts to Wave 3, including but not limited to representing that it only licensed Sequential Spelling material to JJH Publishing when it in fact sold Sequential Spelling material to twenty other non-individual companies/organizations.

**ANSWER: Denied.**

126.    Defendant McCabe knew these representations were false.

**ANSWER: Denied.**

127.    Defendant McCabe intended to induce Wave 3 to believe that its infringing sales to third party non-individuals were less and less egregious.

**ANSWER: Denied.**

128.    Wave 3 justifiably relied on AVKO's/McCabe's representations.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

129.    As a result of this reliance, Wave 3 suffered injury, including additional market and reputational loss as well as additional litigation expenses and foregone damages.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Plaintiff prays that this Honorable Court enter an order and judgment in favor of Plaintiff and against Defendant AVKO as follows:

 (a) For damages to Plaintiff, in an amount to be determined at trial, but in no event less than $5,000.

(b) Both pre-judgment and post-judgment interest;

(c) Attorneys' fees and costs; and

(d) Such other and further relief as this Court finds just and equitable.

Case: 1:16-cv-05643 Document #: 52 Filed: 11/30/16 Page 42 of 42 PageID #:498

**COUNT XVI**
**Punitive Damages (McCabe)**

130.    Wave 3 incorporates by references into this Count all of the allegations appearing in paragraphs 1-129 as if set forth fully herein.

**ANSWER:  Defendants reassert their answers to paragraphs 1-129.**

131.    Defendant McCabe's actions were intentional, willful, and wanton, and were performed with malice toward Wave 3.

**ANSWER: Denied.**

132.    Punitive damages are necessary to punish Defendant McCabe for his conduct and to deter it from committing similar transgressions in the future.

**ANSWER: Defendants do not possess sufficient information with which to affirm or deny this allegation.**

WHEREFORE, Plaintiff seeks punitive damages from Defendant, including attorneys' fees, in the amount of no less than $350,000.


Dated: November 30, 2016

Respectfully Submitted,


Donald McCabe


AVKO Educational Research
Foundation, Inc.


Cole Sadkin, LLC
20 South Clark Street, Suite 500
Chicago, IL 60603
www.colesadkin.com
(312) 548-8610
mcole@colesadkin.com
*Attorneys for Defendants*

42