## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into by and among AVKO Educational Research Foundation, Inc. and Donald J. McCabe (collectively "AVKO"), and Wave 3 Learning, Inc. and Thomas A. Morrow (collectively "Wave 3"). AVKO and Wave 3 are sometimes referred to herein collectively as the "Parties." This Agreement shall be effective on the date of the last signature required for full execution by both AVKO and Wave 3 (the "Effective Date").

WHEREAS, AVKO filed an action in the United States District Court for the Northern District of Illinois, Eastern Division, against Wave 3, Case No. 1:15-cv-3393 (the "Lawsuit"), for unfair competition and false designation of origin under the Lanham Act, unfair competition under Illinois common law, unjust enrichment, deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, tortious interference with a business expectancy, breach of contract, and copyright infringement.

WHEREAS, Wave 3 filed a countersuit in the United States District Court for the Northern District of Illinois, Eastern Division, against AVKO, Case No. 1:15-cv-3393 (the "Countersuit"), for breach of contract, tortious interference with a prospective business relationship, trade libel, punitive damages, and alter ego.

WHEREAS, the Parties seek to resolve this dispute and the respective allegations amicably, and without the inconvenience and additional burdens of further litigation.

WHEREAS, Wave 3 denies all liability for the claims brought by AVKO.

WHEREAS, AVKO denies all liability for the claims brought by Wave 3.

WHEREAS, the Parties have agreed to compromise and settle all claims that have been brought or could have been brought, against each other in the Lawsuit and Countersuit without any party admitting liability or damages.

WHEREAS, the Parties desire to keep the terms of their settlement confidential.

NOW, THEREFORE, in exchange for the mutual covenants and conditions set forth below, the consideration of which is expressly acknowledged by each party, the Parties further agree as follows:

## RECITALS

1. <u>Representations and Warranties.</u>

The Parties represent and warrant that each party that is a legal entity is duly organized, validly existing and in good standing under the laws of the location of its formation, and has all requisite power, authority or capacity, as applicable, to execute, deliver and perform this Agreement. No other person or entity is required to execute this Agreement for it to be binding as intended.

EXHIBIT 1

The Parties represent and warrant that they have personally or through their attorneys investigated all facts surrounding the various claims, controversies and disputes, and are fully satisfied with the terms, conditions and effects of this Agreement.

The Parties represent and warrant that no promise or inducement has been offered or made except as herein set forth, and that this Agreement is executed without reliance upon any statement or representation by any other party or the agent of any other party.

Wave 3 represents and warrants that no other copying of AVKO content has occurred.

The Parties represent and warrant that their gross revenues are fairly and accurately represented by the tax documents they shared with each other.

2. Settlement Payment.

Beginning on or before the Effective Date, Wave 3 shall pay to AVKO the sum of one hundred thousand dollars ($100,000.00) (the "Settlement Amount") in annual installments of twenty-five thousand dollars ($25,000) until satisfaction of the Settlement Amount. The first payment will be due on June 1, 2016. Upon satisfaction of the Settlement Amount, AVKO acknowledges the receipt and sufficiency of this payment, and that it is in consideration of the releases and other provisions contained in this Agreement. In addition to the Settlement Amount, Wave 3 shall pay to AVKO a six percent (6%) royalty on Wave 3's gross revenue that year.

Wave 3 shall pay the Settlement Amount by wire transfer, and any associated transmittal fees, or by providing a certified or cashier's check payable to "Wolek & Noack," attorneys for AVKO, to be deposited in a trust for AVKO, in order that AVKO's attorneys can verify compliance with this Agreement, and AVKO authorizes delivery of said check to Wolek & Noack. Failure to pay the full Settlement Amount within 14 business days of the effective date of this Agreement terminates this entire Agreement unless the Parties agree in writing to extend this deadline.

3. Materials at Issue

AVKO shall grant and hereby grants an exclusive license in the United States and Canada, and a worldwide nonexclusive license to the below titles and their derivatives (collectively "Sequential Spelling"):

- Sequential Spelling Level 1 Teacher Guide
- Sequential Spelling Level 2 Teacher Guide
- Sequential Spelling Level 3 Teacher Guide
- Sequential Spelling Level 4 Teacher Guide
- Sequential Spelling Level 5 Teacher Guide
- Sequential Spelling Level 6 Teacher Guide

2

- Sequential Spelling Level 7 Teacher Guide
- Sequential Spelling Level 1 Student Response Book
- Sequential Spelling Level 2 Student Response Book
- Sequential Spelling Level 3 Student Response Book
- Sequential Spelling Level 4 Student Response Book
- Sequential Spelling Level 5 Student Response Book
- Sequential Spelling Level 6 Student Response Book
- Sequential Spelling Level 7 Student Response Book

4. Sequential Spelling Website

In the event the Agreement is terminated, Wave 3 shall sell the www.sequentialspelling.com domain to AVKO at the same price it was originally purchased for.

5. Annual Revenue Requirement.

In the event that Wave 3's sales don't meet the thresholds in the below table, Wave 3's exclusive license is revoked and replaced by a nonexclusive license.

| Year | Revenue |
| --- | --- |
| 2017 | $225,000 |
| 2018 | $250,000 |
| 2019 | $275,000 |
| 2020+ | $300,000 |

6. AVKO Sales.

AVKO shall be permitted to sell all of its copyrighted materials on its website or other channels to the extent that it is to individuals and not distributors. *Until there is an approved version of Sequential Spelling 1 (one) Teacher Guide, AVKO has the right to sell such material to Sunlight and AVKO and Wave 3 will split the gross margins 50% and 50%.*

7. Copyright Use.

Wave 3 understands and believes that AVKO is the sole and exclusive owner of the copyrights at issue in this lawsuit and all associated federal intellectual property registrations and pending registration applications, with the exception of this license as hereby granted. Wave 3 *its distributors*

2/24/2016

3

admits the validity of all copyrights at issue in this lawsuit and all associated intellectual property registrations and applications.

8. Trademark Use.

Wave 3 understands and believes that AVKO is the sole and exclusive owner of the *Sequential Spelling* trademark at issue in this lawsuit and all associated federal intellectual property registrations and pending registration applications, with the exception of this license as hereby granted. Wave 3 admits the validity of all trademarks at issue in this lawsuit and all associated intellectual property registrations and applications.

9. Audit.

AVKO shall have the right to use an auditor of its choice to audit Wave 3's financial records upon reasonable notice of no fewer than fourteen (14) days. In the event the auditor discovers a discrepancy of greater than three percent (3%) between the revenue reported to AVKO and Wave 3's actual revenue, Wave 3 shall pay all past-due royalties with a five percent (5%) interest award and pay the costs of the auditor.

10. Right of Review

Wave 3 shall submit all of its existing Sequential Spelling materials to AVKO for approval prior to printing or publishing any new materials. Wave 3 shall be expressly permitted to sell the remainder of its existing stock of materials. Wave 3 shall not be permitted to print or sell any further Sequential Spelling materials without the express authorization of an individual expressly designated by AVKO for such a purpose. Such authorization shall not be unreasonably withheld. If the Parties cannot agree to the reasonableness of the withheld authorization, then the question will be submitted to Paul Holz. If Paul Holz does not issue a decision on approval within two weeks, the Parties shall submit three names of persons to decide the approval question. If one of those names overlaps, that person shall decide the reasonableness of the approval. If there are no name overlaps, the Parties shall return to Judge Finnegan and she will select an individual from those three names.

Such an individual will be granted no fewer than fourteen (14) from receipt of the item to provide an authorization or rejection. This time period is per item and is cumulative. For example, if two books are received on the same day, the individual will have eight weeks to provide an authorization or rejection. In the event there is a dispute regarding the approval of any Sequential Spelling materials that cannot be resolved by the Parties, the Parties will agree on a neutral third party to settle the dispute.

11. Release.

Conditioned upon the representations and warranties of the Parties, payment of the Settlement Amount, and other obligations set forth herein, AVKO hereby releases and forever discharges Wave 3 from all claims, demands, damages and costs arising out of, or directly or indirectly connected in any way with, the claims and allegations asserted by AVKO in the

4

Lawsuit and/or any matters, events, acts or omissions which could have been asserted by or on behalf of AVKO in the Lawsuit.

Conditioned upon the representations and warranties of the Parties, payment of the Settlement Amount, and other obligations set forth herein, Wave 3 hereby releases and forever discharges AVKO from all claims, demands, damages and costs arising out of, or directly or indirectly connected in any way with, the claims and allegations asserted by Wave 3 in the Countersuit and/or any matters, events, acts or omissions which could have been asserted by or on behalf of Wave 3 in the Countersuit.

The Parties shall dismiss with prejudice the Lawsuit within 14 days after the Agreement being signed. AVKO hereby releases and forever discharges Wave 3, from any and all actions, causes of action, claims, demands, damages, and costs relating to the Lawsuit through and including the Effective Date.

Wave 3 hereby releases and forever discharges AVKO, from any and all actions, causes of action, claims, demands, damages, and costs relating to the Countersuit through and including the Effective Date. Upon termination of the Agreement under the conditions set forth herein, Wave 3 shall immediately stop publishing, selling or distributing any materials mentioned herein. Any further litigation about the issues and materials herein will be subject only to this Agreement, and any further litigation will be pursuant to this Agreement, and Wave 3 shall be liable for the $100,000.00 for past damages.

Within 14 days, Wave 3 shall change any indication of ownership to reflect the license rights mentioned herein.

12. Tolling of Any Statutes of Limitations

The Parties hereby agree that any statute of limitations periods, estoppel, and laches defenses are hereby waived, and to the extent the license ends, any such defense is tolled for the duration of this agreement.

13. No Admission of Liability.

It is understood and agreed that this Agreement and other consideration recited herein does not constitute an admission on the part of either party of any liability and that this Agreement represents a compromise and settlement of disputed claims.

8. Confidentiality.

The Parties agree that the facts and circumstances leading up to and surrounding this Agreement, the settlement of this dispute and controversy, and the facts and circumstances involved in the Lawsuit as described in the complaint, shall be kept private and confidential by the Parties, and that the Parties shall not communicate the terms of this Agreement or any other fact or circumstance surrounding the settlement of the dispute and controversy arising from the facts and circumstances discussed in this Agreement or the Lawsuit to any individual, entity, or other third-party, except as otherwise expressly provided below.

No party, nor an attorney for or a representative of a party, shall in any way communicate, publish, reveal, disclose, or characterize any terms, information, terms or details of this Agreement or the underlying circumstances or litigation, including the amount paid, except the Parties may state that it was "settled amicably" or state that the settlement is subject to a confidentiality provision. The Parties further expressly acknowledge and agree that if either party breaches the terms of the Agreement, the aggrieved party shall be entitled to all remedies available at law or in equity.

The confidentiality provision set forth in this section shall not prohibit communication or disclosures that are required by law, court order or subpoena, including disclosures necessitated by litigation in which any of the parties to this Agreement are involved. To the extent any party deems a communication or disclosure to be required by law or by court order, the communication or disclosure shall be limited to those persons or entities "needing to know" and shall be limited to the specific information requested or ordered.

The Parties agree that the confidentiality provisions set forth herein constitute material terms of this Agreement. The Parties agree that no part of the Settlement Amount is being paid for confidentiality but rather the consideration for such confidentiality is the mutual agreement of the Parties to abide by it.

9. <u>Non-disparagement.</u>

The Parties agree that they will not make any statement now, or at any time in the future, to representatives of any media or to any other person or entity, which is disparaging of the other Parties' reputation or disparaging of the character, competence or reputation of any officer, director, executive, shareholder, agent, employee, insurer, or attorney of the other Party which could, if publicized, cause any person or entity related to one of the Parties to any humiliation or embarrassment, or which could cause the public to question the competence, reputation or character of any of these persons or entities.

10. <u>Miscellaneous.</u>

10.1 <u>Fees.</u> The Parties to this Agreement shall bear their own attorneys' fees, costs and other expenses associated with the Lawsuit and Countersuit. If litigation is commenced in connection with this Agreement, the prevailing party shall be entitled to an award of its reasonable attorney's fees, and court and other direct costs.

10.2 <u>Jurisdiction.</u> This Agreement shall be exclusively governed by and construed in accordance with Illinois law without reference to its conflicts of law rules. The United States District Court for the District of Illinois, Eastern Division, or the appropriate state court located in Illinois, shall have exclusive jurisdiction over any legal action or proceeding arising out of or relating to this Agreement. For any action or proceeding that arises out of or relates to this Agreement, each of the undersigned expressly consents to personal jurisdiction and venue of each court specified in this section and hereby expressly waives any objection to same.

10.3 <u>Severability, Waiver and Survival.</u> If any term of this Agreement is held invalid, illegal, or unenforceable by a court of competent jurisdiction, that term shall be severed from this Agreement and the remaining terms shall continue in full force. No delay, omission, or failure

6

by any Party to exercise any right or remedy provided to it in this Agreement shall be deemed to constitute waiver or acquiescence, and any Party may exercise such right or remedy in the manner it deems expedient. Any Agreement provision that may reasonably be interpreted as being intended by the Parties to survive this Agreement's termination or expiration shall survive any such termination or expiration.

10.4 <u>Interpretation</u>. This Agreement shall be construed within its fair meaning and in interpreting this Agreement no inference shall be drawn against the drafting Party. Headings, the title of this Agreement, and the terms used to reference each Party as used in this Agreement are for reference purposes only and in no way define, limit, construe or describe the scope or extent of such section or in any way affect this Agreement.

10.5 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that signatures transmitted electronically, whether sent via facsimile or as attached files to emails (e.g., .PDF), shall be acceptable to bind the Parties and shall not in any way affect this Agreement's validity.

10.6 <u>Entire Agreement</u>. This Agreement sets forth the Parties' entire agreement and understanding relating to its subject matter and merges and supersedes all prior agreements, writings, commitments, discussions and understandings between them. The Agreement's terms are contractual and not mere recitals. No amendment or modification may be made to this Agreement unless it is in writing and signed by each Party.

10.7 <u>Binding Agreement</u>. The terms and provisions of this Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective predecessors, successors, transferees and permitted assigns. Notwithstanding the foregoing, this Agreement is not a third party beneficiary contract and shall not be construed to be for any third party's benefit, and no third party shall have any claim or right of action hereunder.

10.8 <u>Independent Investigation</u>. Each Party: (i) has read and understood this Agreement and agrees to all of its terms and conditions; (ii) independently evaluated the desirability of entering into this Agreement and is not relying on any representation, guarantee or statement other than as set forth herein; and (iii) has been afforded the opportunity to seek the advice of legal counsel regarding its rights and obligations set forth in this Agreement and has either sought or refused such counsel and accordingly has negotiated this Agreement either on its own or through its respective counsel.

**[THE REMAINDER OF THIS PAGE HAS BEEN LEFT BLANK INTENTIONALLY]**

IN WITNESS WHEREOF, each Party executes this Agreement either personally or by a duly authorized representative and agrees to be bound by this Agreement's terms and conditions.

By: AVKO Educational Research Foundation, Inc.
Name: Donald J. McCabe
Title: President
Date: 2/24/16

By: Wave 3 Learning, Inc.
Name: Thomas Morrow
Title: President
Date: 2/24/16

By: Donald J. McCabe
Date: 2/24/16

By: Thomas A. Morrow
Date: 2/24/16

8

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WAVE 3 LEARNING, INC., a Nevada Corporation, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Case No.: 2016-CV-05643 ) ) |
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan corporation, and DON MCCABE, an individual, | ) Judge Jorge L. Alonso ) ) ) ) |
| Defendants. | ) |

## AFFIDAVIT OF DONALD MCCABE

I, Donald McCabe, being duly sworn do hereby swear, depose, affirm, and say the following:

1. I am Donald McCabe. I am one the founders and and currently the President of the 501(c)(3) non-profit organization known as AVKO Educational Research Foundation, Inc. My volunteer job duties involve providing free tutoring, free tutor training, the development of materials and techniques to teach reading and spelling, managing and representing the interests and mission of the non-profit AVKO Foundation.

2. While I do represent the interests of AVKO, I act on behalf of a board of members and my office, the Bernice Webb Memorial Library, the Board Room, the Tutoring and Tutor Training which I conduct is on the first floor of a building leased by AVKO. Only occasionally do I work out of the basement where the printing of and publishing part of

1

**EXHIBIT 2**

AVKO's mission takes place. Further, I do not act without the input and approval of my board members.

3. It was and is my understanding that the Original Settlement Agreement co-written by attorneys Wolek and Noack and the attorneys for Wave 3 on February 23, 2016) laid out the structure and time table for Wave 3's settlement payments to AVKO, that it lists the specific materials to which Wave 3 has exclusive license to distribute; it lays out the process of approval for future editions of Sequential Spelling and, it orders confidentiality and non-disparagement between the two parties. It is also my understanding that Wave 3 is publishing AVKO materials for which it has not received approval, for which its license has been revoked and not reinstated. It is also my understanding that Wave 3 has breached the confidentiality and non-disparagement clauses by giving its version of the history of AVKO and Wave 3 on its website.

4. On or about February 24, 2016, my counsel acted without my knowledge to engage in substantive modifications to the Original Settlement Agreement. The resulting modifications resulted in the Settlement Agreement attached by counsel in the Complaint and the Motion for Partial Judgment on the Pleadings.

5. It was and is my understanding that Wave 3 only retained exclusive rights to Wave 3's versions of Sequential Spelling, as the Settlement Agreement only lists Sequential Spelling Levels 1-7 Teacher Guide and Sequential Spelling 1-7 Student Response Books. AVKO would never have been able to grant Wave 3 exclusive rights to AVKO's classic versions of Sequential Spelling Levels 1-7 as AVKO was not the sole owner of the copyright to the electronic (CD) versions of those materials.

2

6. It was and is my understanding that AVKO was able to license and sell the Sequential Spelling Levels 1-7 "classic" versions because the classic versions of Sequential Spelling Levels 1-7 are not derivatives of the materials listed in the Settlement Agreement. Indeed, the "Materials at Issue" are derivatives of the original Classic versions.

7. As I was not aware of the "secret and unauthorized" modification of the Settlement Agreement on February 24, 2016. I was also not aware that there was a time frame for which AVKO had to remit royalties to Wave 3, but AVKO did comply immediately when ordered by the Court.

8. On behalf of AVKO, I terminated Wave 3's license in response to the Temporary Restraining Order that required AVKO to terminate all licenses relating to Sequential Spelling Levels 1-7.

9. Despite allegations made by Wave 3, I have no knowledge that any of my actions may have "directly and irreversibly injured" Wave 3's business interests and expectancy. I do, however, have knowledge of actions by Thomas Morrow that most likely "directly and irreversibly injured" Wave 3's business interests and expectancy. These are emails from Thomas Morrow to distributors. These emails threatened lawsuits. Copies of these emails were sent to me by some of AVKO's former distributors. That Thomas Morrow has virtually destroyed the market for Sequential Spelling comes as no surprise to me. After all, he left his only other educational venture Home School Holdings, Inc. in which he was the largest single stockholder and its CEO (up until he left) millions of dollars in debt.

10. I never claimed that Wave3 was not granted an exclusive license to sell their versions of Sequential Spelling Levels 1-7. Only when asked, did I or any representative of AVKO

3

explain that AVKO maintained the copyright of the materials. As the result of Judge Zagel's ruling, AVKO has always told third parties that

> Wave 3 Learning, Inc. has the exclusive license to sell and distribute Sequential Spelling materials Levels 1-7 and all derivatives thereof. You can contact Wave 3 Learning, Inc. by email at thomas@wave3learning.com, by phone at 1-888-WAV-3LRN, or by visiting its website at sequentialspelling.com.

11. This message is at every telephone and is read verbatim. Prior to the Court's ruling, AVKO representatives merely told third parties that Wave 3 had exclusive rights (limited to the U.S. and Canada) to sell their version of Sequential Spelling 1-7. Only when specifically asked about the copyrights would any AVKO representative tell third parties that AVKO owned the copyrights.

## VERIFICATION

I, Donald McCabe, declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct. Executed on January 12, 2017.

By: _____
Donald McCabe

Date: Jan. 12, 2017

4

---------- Forwarded message ----------
From: **Brian Noack** <BrianN@wonoip.com>
Date: Fri, Jul 8, 2016 at 2:48 PM
Subject: FW: AVKO & Wave 3 Settlement
To: Don McCabe <donmccabe1@gmail.com>, RobertM195 <RobertM195@aol.com>
Cc: Adam Wolek <adamw@wonoip.com>

Don, Robert,

At your request, please find the modifications to the settlement agreement below. The payment from Wave 3 represented 6% of the first quarter of sales. Payments will continue on a quarterly basis throughout the life of the agreement. As you may recall, AVKO has the right to audit these figures at any time pursuant to the agreement.

Best,

**Brian T. Noack**

briann@wonoip.com

P: 239.671.1103

F: 708.843.0509

**Wolek & Noack**

233 S Wacker Dr.

Suite 2140

Chicago, IL 60606

**EXHIBIT 3**

CONFIDENTIALITY NOTE: This message and any attachments are from a law firm. They are solely for the use of the intended recipient and may contain privileged, confidential or other legally protected information. If you are not the intended recipient, please destroy all copies without reading or disclosing their contents and notify the sender of the error by reply e-mail.

**From:** Brian Noack <BrianN@wonoip.com>
**Date:** Thursday, February 25, 2016 at 3:01 PM
**To:** 'Daliah Saper' <ds@saperlaw.com>, 'Matt Grothouse' <matt@saperlaw.com>
**Cc:** Adam Wolek <adamw@wonoip.com>
**Subject:** Re: AVKO & Wave 3 Settlement

Hi Daliah,

We agree to Mr. Morrow's deal of making the audit privilege two-sided in exchange for quarterly royalty payments and the change in verbiage from "that year" to "the duration of this agreement." Out of an abundance of caution, we are responding to you rather than him to avoid any potentially impermissible communications with a represented party. We trust you'll pass along our acceptance.

Please let me know if you have any questions.

Best,

Brian

**Brian T. Noack**

briann@wonoip.com

P: 239.671.1103

F: 708.843.0509

**Wolek & Noack**

233 S Wacker Dr.

Suite 2140

Chicago, IL 60606

CONFIDENTIALITY NOTE: This message and any attachments are from a law firm. They are solely for the use of the intended recipient and may contain privileged, confidential or other legally protected information. If you are not the intended recipient, please destroy all copies without reading or disclosing their contents and notify the sender of the error by reply e-mail.

**From:** Thomas Morrow <thomas@wave3learning.com>
**Date:** Thursday, February 25, 2016 at 12:26 PM
**To:** 'Daliah Saper' <ds@saperlaw.com>, Adam Wolek <adamw@wonoip.com>
**Cc:** 'Matt Grothouse' <matt@saperlaw.com>, Brian Noack <BrianN@wonoip.com>
**Subject:** RE: AVKO & Wave 3 Settlement

When it was originally written, I understood the payment to be once annually.

I tell you what; I'll make you a deal. There is something we missed, too.

We need to make the audit privilege two sided since AVKO is going to be selling my products (level one teacher guide) for a time and will still be selling their stuff from the website to individuals only. We need to have confidence that everything on both sides is on the up and up.

Subject to that agreement, quarters is fine.

Best regards,

Thomas Morrow

President

Wave 3 Learning, Inc.

126 E. Wing St. Ste 240

Arlington Heights, IL 60004

Ph: 1-888-WAV-3LRN (928-3576)

**From:** Daliah Saper [mailto:ds@saperlaw.com]
**Sent:** Thursday, February 25, 2016 11:35 AM
**To:** Adam Wolek <adamw@wonoip.com>; Thomas Morrow <thomas@wave3learning.com>
**Cc:** Matt Grothouse <matt@saperlaw.com>; Brian Noack <BrianN@wonoip.com>
**Subject:** Re: AVKO & Wave 3 Settlement

I am cc'ing Thomas for his confirmation.

On Thu, Feb 25, 2016 at 10:39 AM, Adam Wolek <adamw@wonoip.com> wrote:

Daliah, Matt,

To clarify a potential ambiguity in the contract, "In addition to the Settlement Amount, Wave 3 shall pay to AVKO a six percent (6%) royalty on Wave 3's gross revenue that year[,]" means that in addition to the Settlement Amount, Wave 3 shall pay to AVKO a six percent (6%) royalty on a quarterly basis on Wave 3's gross revenue for the duration of this agreement.

As we discussed, please confirm that you agree with this interpretation.

Best regards,

Adam

**Adam Wolek**
adamw@wonoip.com
P: 312.860.9006
F: 708.843.0509

**Wolek & Noack**
233 S. Wacker Drive
Suite 2140
Chicago, IL 60606
www.wonoip.com

CONFIDENTIALITY NOTE: This message and any attachments are from a law firm. They are solely for the use of the intended recipient and may contain privileged, confidential or other legally protected information. If you are not the intended recipient, please destroy all copies without reading or disclosing their contents and notify the sender of the error by reply e-mail.

--

Daliah Saper

312.527.4100

www.saperlaw.com


\*\*Get to know Saper Law: http://youtu.be/Q2g0zprTiQI

\*\*Book Daliah Saper: http://youtu.be/P4h4bpuAKRQ