## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WAVE 3 LEARNING, INC., a Nevada corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16-cv-5643 |
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan corporation, and Don McCabe, an individual, | ) ) ) ) | Hon. Jorge L. Alonso |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiff Wave 3 Learning, Inc. ("Plaintiff" or "Wave 3"), by and through its undersigned counsel, hereby submits this Reply to Defendants' Response to Plaintiff's Motion for Partial Judgment on the Pleadings. In support thereof, Plaintiff states as follows:

## INTRODUCTION

Defendants implore the Court to overlook Defendants' checkered history in this case and effectively disregard Judge Zagel's rulings and sanctions. They paint themselves as hapless victims who were unable to give a proper defense because they were not represented by counsel. However, nothing could be further from the truth. After Judge Zagel gave Defendant Avko Educational Research Foundation, Inc. ("Defendant AVKO") the chance to retain counsel numerous times, Defendant Donald McCabe (Defendant "McCabe") instead chose to appear in court as a material witness for AVKO and twice testified before Judge Zagel—each time talking for almost an hour. At those hearings, Defendant McCabe asserted *every argument* that Defendants now assert in their Response.[1] The Court flatly rejected those arguments then and the Court should conclusively reject those arguments now. As explained below, each of Defendants' arguments offered in response to Plaintiff's Motion has no basis in fact or in law.

## Argument

Through their filings, the parties have narrowed the issues in dispute in Plaintiff's Motion. Defendants do not challenge the material facts set forth in Plaintiff's First Amended Complaint (and accompanying exhibits).[2] Additionally, Defendants do not challenge the legal sufficiency of Plaintiff's claims (Counts I-IV, VI, VII, IX-XII, XIV, and XV). Accordingly, the relevant material facts, as well as the legal sufficiency of the causes of actions at issue, are

---

[1] In Sections I-II below, Plaintiff cites transcripts to demonstrate that each one of the arguments sets forth in Defendants' Response is simply a recycled version of one Defendants already made.
[2] At times, Defendants dispute Plaintiff's interpretation of these facts, but not the facts themselves.

1

undisputed. The only question before the Court, therefore, is whether these undisputed facts support Plaintiff's well-pled causes of action. They do.

I. THE UNDISPUTED FACTS

In their Response, Defendants do not dispute any of the following facts: (1) Defendant McCabe sends every email, negotiates and enters into every contract and deal, and makes every day-to-day financial and business decision for AVKO, and no other AVKO officer is involved in any day-to-day operations of AVKO Pl.'s First Am. Compl. Ex. B; (2) Defendants entered into a Settlement Agreement with Plaintiff on February 24, 2016; (3) Defendant McCabe sent numerous emails to Plaintiff and to third parties from February through July of 2016, and such emails are accurately reflected in the exhibits attached to Plaintiff's First Amended Complaint, Pl.'s First Am. Compl. Ex. B; (4) Defendants sold Sequential Spelling Material to more than twenty distributors/non-individuals and licensed Sequential Spelling Materials to JJH Publishing *after* February 24, 2016, Pl.'s First Amend. Compl. Ex. H; (5) the invoices referenced in Plaintiff's First Amended Complaint, which were provided by Defendants per Court Order, accurately reflect Defendants' business transactions, *see* Exhibit A; (6) the approval power set forth in the Settlement Agreement was crafted to ensure the general quality of the new Wave 3 material (no spelling errors, grammar errors, formatting errors, or functionality issues) and to maintain the general pedagogical spirit of the Sequential Spelling program, Pl.'s First Am. Compl., Ex. B, at 6; (7) Defendant McCabe's stated reason for denying approval of Wave 3's derivative materials was Wave 3's deletion of words like "negro;" (8) Defendant McCabe demanded that the parties renegotiate a new settlement agreement in the same emails that he denied approval of Wave 3's derivative materials; (9) Defendants represented to numerous third parties that Wave 3 did not have an exclusive license or any license to sell the "classic versions"

of the Sequential Spelling Material; (10) Defendants knew that Plaintiff had to invest heavily in building up and promoting a business based on its exclusive license to the Sequential Spelling Material, Pl.'s First Am. Compl. Ex. B, at 4; (11) Defendants directly benefited from selling Sequential Spelling Material through profits, royalty payments, and goodwill—including over $20,000 in revenue from over twenty non-individuals as set forth in Exhibit H of Plaintiff's First Amended Complaint; (12) Defendants, despite Plaintiff's request, did not remit any royalties or provide any accounting statements to Wave until the Court ordered him to do so; (13) Defendants terminated Wave 3's license in response to their "reading" of Judge Zagel's July 21, 2016 Temporary Restraining Order; and, (14) Defendant McCabe represented to the Plaintiff on July 15, 2016, that since February of 2016, AVKO did not sell or license Sequential Spelling Material (including the "classic versions") to any non-individual except JJH Publishing. *See* Exhibit E, at 4, 7, 10. These facts, therefore, are undisputed.

Defendants, nonetheless, argue that these facts do not legally amount to Plaintiff's causes of action.[3] These *legal* arguments, however, do not raise any genuine issue of material fact. They constitute arguments and questions of law. And, as explained in detail below, the law—when correctly applied to the undisputed facts in this case—entitles Plaintiff to partial judgment on the pleadings.

## II. THE APPLICATION OF THE LAW TO THE UNDISPUTED FACTS

The facts in the pleadings conclusively prove each of Plaintiff's causes of action at issue in its Motion. Defendants' "contrasting interpretations"[4] of these facts (and how the law should apply to them) are not only unpersuasive, they are directly contradicted by the facts in the pleadings, by case law, and by common sense.

---

[3] *See, e.g.,* Defs.' Resp. to Pl.'s Mot. Part. J. on Pldgs. ("Defs.' Resp."), at 11 (explicitly admitting the legal sufficiency of Plaintiff's claim).
[4] Defs.' Resp. 1.

3

### A. Defendant McCabe Personally and Solely Directed All of AVKO's Conduct and Communications

The pleadings amply demonstrate that Defendant McCabe personally directed AVKO's communications and conduct from February 24, 2016 to the present. In their Response, Defendants do not dispute the fact that Defendant McCabe is solely responsible for every email that AVKO sends out, negotiates every contract and deal that AVKO makes, and personally renders every day-to-day business decision (Defendants do not deny it because it is true). *See* Exhibit C, at 18 (McCabe admitting that he is "in charge" of AVKO).[5] Instead, Defendants pithily state that Defendant McCabe "acts on behalf of a board of members." Defs.' Resp. 6. This is misleading. Defendant McCabe dominates AVKO's board, which consists only of Defendant McCabe, Defendant McCabe's son, and Michael Lane, an uninvolved person who lives in Texas. *See* Exhibit C, at 17, 22-23. But more importantly, regardless of the Board, Defendant McCabe is still solely responsible for all of AVKO's day-to-day business operations.

Applying the law to the undisputed facts, it is clear that Defendant McCabe directed AVKO's tortious conduct and that Defendant McCabe should therefore be personally liable for such actions. *See Peaceable Planet, Inc. v. Ty, Inc.,* 362 F.3d 986, 994 (7th Cir. 2004) (recognizing that if an officer of a corporation is "personally involved in the commission of the tort by his corporation, he is jointly liable for the tort); *accord TRT Transp., Inc. v. Chicago Trolley Rentals, Inc.*, No. 11 C 3693, 2011 WL 4585580, at *2 (N.D. Ill. Sept. 30, 2011) (quoting *Microsoft Corp. v. Rechanik,* 2007 WL 2859800, at *2 (7th Cir.2007) (stating that "[a]n individual can be jointly liable for a company's infringing conduct")).

---

[5] The Court should take judicial notice of the transcripts of the prior proceedings in this case. *See Ray v. City of Chi.,* 629 F.3d 660, 665 (7th Cir. 2011) (recognizing that the court may take judicial notice of transcript from another proceeding when deciding motion to dismiss).

**B.     Defendants Entered into a Valid Settlement Agreement with Plaintiff**

On February 24, 2016, Defendants, Defendants' former counsel, Plaintiff, Plaintiff's counsel, and Magistrate Judge Sheila Finnegan participated in a voluntary settlement conference that resulted in the heavily-negotiated Settlement Agreement at issue in this case.

Since the Settlement Agreement's execution, Defendants have consistently demanded that Plaintiff follow the terms of the Settlement Agreement and have abundantly benefited from those terms.  *See* Pl.'s Am. Compl., Ex. B.  Nevertheless, Defendants now attempt to impugn the integrity of the Settlement Agreement by half-heartedly calling its validity into question. Specifically, in their Response—with much flare but little substance—Defendants assert that (1) "unknown modifications" were made to the Settlement Agreement, (2) Plaintiff violated the non-disparagement clause, and (3) AVKO did not have the authority to grant an exclusive licensee to the Sequential Spelling material because it was not the sole owner of the material.  *See* Defs.' Resp. 3-7.  Defendants dangle these claims in front of the Court in their attempt to delay the inevitable justice of the case.  These assertions, however, are not only irrelevant; they are blatantly misleading or entirely false.

First, the "modifications" made on February 25, 2016 to the February 24, 2016 Settlement Agreement (the dates Defendant McCabe lists in his affidavit are incorrect and reflect Defendant McCabe's carelessness toward factual accuracy) were made at the request of Defendants' former counsel.[6]  These "modifications" were merely *clarifications* to the existing terms of the Settlement Agreement.  They included, as Defendants note in their Response, a clarification of the $25,000 payment dates, the mutual quarterly payment of royalties and the

---

[6] Defendants' suggestion that the minor amendments made to a settlement agreement, the day after it was signed, by all of the lawyers of the parties, somehow evidences that the original settlement agreement (or those amendments) was made under "false pretenses" is entirely bewildering and groundless.

5

financial statements related thereto, and mutual auditing rights. Plaintiff, along with Defendants' former counsel, Wolek and Noack (who represented Defendants at the time), agreed to these minor amendments in a signed writing. Indeed, Defendants have provided evidence confirming these facts. *See* Defs.' Resp. Ex. C, at 1-4. Defendants, therefore, are legally bound to these amendments. Even if Wolek and Noack did not inform Defendant McCabe of these amendments (as Defendants falsely claim), Defendants are still bound to these amendments. *In re Gibson-Terry & Terry*, 325 Ill. App. 3d 317, 322 (1st Dist. 2001) (stating that when a party "permits his attorney to act on his behalf, the party may not subsequently deny his attorney's apparent authority") (citations omitted). Needless to say, this Court is not the appropriate forum for Defendants to litigate their alleged malpractice claims. Even if these amendments were somehow deemed invalid, the entire Settlement Agreement is not invalid as a result. In short, Defendants' false claims regarding the amendments to the Settlement Agreement are both false and irrelevant.

Second, throughout their Response, Defendants claim that Plaintiff somehow violated the Settlement Agreement's non-disparagement clause. Defendants, of course, provide no examples of this bogus claim besides a conclusory hearsay statement in Defendant McCabe's affidavit. *See* Defs.' Resp. Ex. 2, at 2 (stating that it is his "understanding" that Plaintiff violated the non-disparagement clause). To be clear, Plaintiff never violated the Settlement Agreement's non-disparagement clause. However, even if the Court assumes Defendant McCabe's false hearsay is true, the non-disparagement clause is not a material term or condition-precedent of the Settlement Agreement and does not undermine the validity of its other terms. *See, e.g.*, *Dragon Constr. v. Parkway Bank & Trust,* 287 Ill. App. 3d 29, 33 (1st Dist. 1997) (defining the materiality of a contractual provision as one with "such a nature and such importance that the

6

contract would not have been made without it"); *see also* Defs.' Resp. Ex. 1, at 6 (Section 10.3 Severability, Waiver and Survival Clause).

Third, Defendants attempt to cast doubt on the validity and enforceability of the Settlement Agreement—specifically Plaintiff's exclusive license—by arguing that Defendants did not solely own rights to the Sequential Spelling Material.[7] This argument is both misleading and irrelevant. First, as Defendants state clearly in their Response (and as Defendant McCabe clarifies in his affidavit), Defendant AVKO was the sole owner of the copyrights in the original Sequential Spelling copyrighted material (Levels 1-7 of the written Sequential Spelling Teacher Guide and Student Response Book, which were developed decades ago). The *only* copyrights AVKO allegedly "co-owns" with Instructional Media Innovation are certain recently developed CD/DVD *derivative works* of the original Sequential Spelling books. Therefore, even if this alleged co-ownership exists, it would preclude Wave 3 only from having an exclusive licensee to those existing CD/DVD derivative works.[8] However, Plaintiff's exclusive license to the original works (the Levels 1-7 of the Sequential Spelling Teacher Guides and Student Response Books), as well as its exclusive license to all *other* derivative works, remains undisturbed.[9] Simply put, Instructional Media Innovations' alleged co-ownership of the DVD/CD works does not undermine Plaintiff's exclusive license to the Sequential Spelling Material.

Furthermore, in the Settlement Agreement, Defendants "represent[ed] and warrant[ed]" that they had "all requisite power, authority, or capacity, as applicable, to execute, deliver, and

---

[7] *See* Defs.' Resp. 6 ("AVKO would never have been able to grant Wave 3 exclusive rights to AVKO's classic versions of Sequential Spelling Levels 1-7 as AVKO was not the sole owner of the copyright to those materials."); *id.* at 8 ("AVKO only co-owns the copyrights of the classic versions with Instructional Media Innovations.").
[8] Instead of an exclusive license to those existing DVD/CD derivatives, Plaintiff would effectively take AVKO's place as co-owner of the DVD/CD works.
[9] For example, J.K. Rowling's copyright ownership in the original Harry Potter books would not be undermined simply because Warner Brothers claims co-ownership of the derivative movies.

perform th[e] Agreement" and that "[n]o other person or entity is required to execute this Agreement for it to be binding as intended." Defs.' Resp. Ex. A, at 1. Defendants also represented that "AVKO is the sole and exclusive owner of the copyrights at issue in this lawsuit." Defs.' Resp. Ex. A, at 3. Accordingly, even if Defendant AVKO did not fully and solely own the Sequential Spelling Material (it does except for the derivative CD/DVD's works), Defendants are still liable for breaching Section 1 of the Settlement Agreement. Such a breach would cause the same damages as the breach of the exclusive license.

Simply put, the Settlement Agreement is valid and Defendants' attempt to impugn its integrity or cast doubt upon its validity is plainly frivolous and fraught with bad faith.

### C. Defendants Breached Plaintiff's Exclusive's License (Counts I and IX)

The context of the Settlement Agreement is set forth in Plaintiff's First Amended Complaint. Five years of litigation preceded the February 24, 2106 Settlement Agreement. This litigation centered on one splintering issue: Who owned the Sequential Spelling works? The Settlement Agreement finally resolved this contentious dispute. In exchange for, among other things, four payments of $25,000 and an ongoing 6% royalty, AVKO granted to Wave 3 an exclusive license to the copyright-registered Sequential Spellings Levels 1-7 Teacher Guide and Student Response Book). Because Wave 3 was contemplating making its own online and DVD-versions of the Sequential Spelling written material, and since Wave 3 planned to sell its own (improved) version of the Sequential Spelling written material, the Settlement Agreement also granted Wave 3 the right to make "derivatives" of that material.

Defendants' bad-faith and groundless interpretation of the Settlement Agreement (a clear question of law) is completely contradicted by (1) the plain language of the exclusive license, (2) the Settlement Agreement as a whole, and (3) Defendants' own actions and comments.

1. *The Plain Language of the Exclusive Licensee*

Rules of contract interpretation are substantive, so the Agreement must be interpreted according to state law—in this case, the laws of the State of Illinois. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014) (citations omitted). In Illinois, the main objective in contract interpretation is to give effect to the intent of the parties. *Id.* (citing *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.,* 306 Ill. App. 3d 1015 (1st Dist. 1999). "If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." *Hanover*, 751 F.3d at 792 (internal citations and quotations omitted). *Cf. Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003).

Here, the language of Plaintiff's exclusive license is unambiguous. The Settlement Agreement states the following:

> "AVKO shall grant and hereby grants an exclusive license in the United States and Canada, and a worldwide nonexclusive license to the below titles and their derivatives (collectively "Sequential Spelling"):
>
> - Sequential Spelling Level 1 Teacher Guide
> - Sequential Spelling Level 2 Teacher Guide
> - Sequential Spelling Level 3 Teacher Guide
> - Sequential Spelling Level 4 Teacher Guide
> - Sequential Spelling Level 5 Teacher Guide
> - Sequential Spelling Level 6 Teacher Guide
> - Sequential Spelling Level 7 Teacher Guide
> - Sequential Spelling Level 1 Student Response Book
> - Sequential Spelling Level 2 Student Response Book
> - Sequential Spelling Level 3 Student Response Book
> - Sequential Spelling Level 4 Student Response Book
> - Sequential Spelling Level 5 Student Response Book
> - Sequential Spelling Level 6 Student Response Book
> - Sequential Spelling Level 7 Student Response Book

Defs.' Resp. Ex. A, at 2-3.

Defendants argue that the above language should somehow be interpreted to mean that Wave 3 owns only an exclusive license to "Wave 3's versions" of each Teacher Guide and

Student Response Book, thereby excluding from that exclusive license AVKO's original or "classic" versions of each Teacher Guide and Student Response Book. The plain language of the license, however, makes no such distinction. It is not reasonably susceptible to more than one interpretation. This should be the end of the analysis. *Cananwill, Inc. v. T.J. Adams Grp., LLC*, 2013 IL App (1st) 111604-U, ¶ 41 ("Construction of a clear and unambiguous contract is a matter of law appropriate for summary judgment"). In no uncertain terms, the Settlement Agreement grants to Wave 3 an exclusive license to each level of the Sequential Spelling Teacher Guide and Student Response Book) and their derivatives with no distinction between "classic " AVKO versions and "Wave 3 versions" (which are a derivative works).

    2.    *The Settlement Agreement Read As A Whole*

The Settlement Agreement, when read as a whole, confirms the literal wording of Wave 3's exclusive license to all Sequential Spelling Levels 1-7 written material and conclusively discredits Defendants' self-serving proposition that the license is somehow limited only to "Wave 3's versions" of the Sequential Spelling Material.

First, Defendants' self-serving interpretation creates multiple absurdities. Reading a "Wave 3 versions vs. AVKO classic version" distinction into the exclusive license completely contradicts Section 6 of the Settlement Agreement, which states that "AVKO shall be permitted to sell all of its copyrighted materials on its website or other channels to the extent it is to individuals and not distributors." Defs.' Resp. Ex. A., at 3. If Wave 3's exclusive license was really limited to only "Wave 3 versions" of the Sequential Spelling Material, and AVKO in fact retained the rights to "AVKO's classic versions" of the Sequential Spelling Material, then why would Section 6 of the Settlement Agreement prohibit AVKO from selling "all of its copyrighted materials" to distributors and other non-individuals? Additionally, the hand-written addition to

Section 6 (added during the settlement conference and initialed by Plaintiff and Defendant McCabe himself) grants AVKO the right to sell Sequential Spelling Level 1 Teacher Guides to "its distributors" *until* there is an approved improved version of the Sequential Spelling 1 Teacher Guide. Defs.' Resp. Ex. A., at 3. If Defendants' fictitious interpretation of Plaintiff's exclusive license were correct, this provision would make no sense. Defendants' bad-faith interpretation of the exclusive license makes the other provisions in the Settlement Agreement absurd.[10]

       3.    *Defendants' Post-Settlement Conduct and Communications*

After the parties executed the Settlement Agreement on February 24, 2016, Defendant McCabe sent a series of emails to Plaintiff demonstrating his original and correct understanding of the Settlement Agreement.

In his March 8, 2016 and March 9, 2016 emails to Wave 3, Defendant McCabe (personally directing and representing AVKO) admitted that the Settlement Agreement precluded AVKO from licensing the *classic* AVKO Sequential Spelling material to third parties. *See* First Am. Compl. Ex B, at 4. Additionally, in his March 9, 2016 email, Defendant McCabe (and Defendant AVKO) recognized that "Wave 3 versions" of the written materials were part of the "derivatives" granted to Wave 3 in the Settlement Agreement. *Id.* In short, Defendants knew the plain meaning of the exclusive license set forth in the Settlement Agreement and only later—after they breached it—developed their bad-faith, self-serving interpretation.

---

[10] Indeed, Defendants' baseless distinction between "Wave 3 versions" and "AVKO classic versions" does not exist anywhere in the Settlement Agreement. It is clearly made up. Why would Wave 3 agree to an exclusive license to the material in the U.S. and Canada but then a non-exclusive license elsewhere? Who else would sell "Wave 3 versions" of the Sequential Spelling Material besides Wave 3? Nowhere in the Settlement Agreement does Wave 3 grant a trademark license to AVKO or any other party that would allow them to sell "Wave 3" versions of the material without committing trademark infringement.

Therefore, the Settlement Agreement granted Plaintiff an exclusive license to the Sequential Spelling Material (including the "classic" Levels 1-7 of the Sequential Spelling Teacher Guide and Student Response Book) and their derivatives ("Wave 3's versions" of the written material, electronic media versions of the written material, and online versions of the written material). Furthermore, Defendants have openly admitted to selling the Sequential Spelling Material to distributors and other non-individuals. *See* Defs.' Resp. 11. Invoices referenced in Plaintiff's First Amended Complaint (provided to Plaintiff by AVKO via a Court Order) show specific dollars amount of revenue (over $20,000) that Defendants stole from Plaintiff between March and June. *See* Pl.'s Am. Compl. Ex. H; Exhibit A. In addition to this purloined revenue, Defendants' breach has brought about a nearly complete destruction of the market for Sequential Spelling Material. Several distributors, as Defendants openly admit, have either abandoned purchasing Sequential Spelling Material (and have moved on to other spelling programs) or have developed an entirely negative view of Wave 3 as a business. Defs.' Resp. Ex. 2, at 3. As Wave 3's President testified during the TRO, during one of the busiest sales month of years, Wave 3 earned $0.[11] *See* Exhibit E, at 33.

Accordingly, there is no genuine issue of material fact that Defendants' actions constitute a breach of contract. Plaintiff is entitled to judgment as a matter of law on this claim.

> **B. Defendants Breached an Implied Covenant of Good Faith and Fair Dealing by Abusing the Approval Process in Bad Faith to Force Plaintiff to Renegotiate the Settlement Agreement (Counts II, X)**

From March to May, Defendants used their approval authority as leverage to try to force Wave 3 to renegotiate the Settlement Agreement. *See* Pl.'s First Am. Compl. Ex. B, at 1-12.

---

[11] The revenue benchmarks set forth in Section 5 of the Settlement Agreement (which were calculated by combining Wave 3's revenue for 2015 and AVKO's revenue for 2015, as well as an additional twenty-five thousand dollars more per year) assume Wave 3 will make approximately $19,000 a month on average—and far more in the busy months to make up for the slow months.

Defendants' bad-faith purpose behind denying approval of Plaintiff's derivative versions is apparent: in several of Defendants' emails denying approval of Plaintiff's derivative works, Defendants also include a "solution" involving a change of the Settlement Agreement (benefitting Defendants, not Plaintiff). *See* Pl.'s First Am. Compl. Ex. B, at 4-6. Defendants were not actually concerned with the quality of Plaintiff's materials (which were of a high-quality). Indeed, Defendants even admitted that the approval of the derivative works would "almost certainly be granted" *if* Plaintiff simply agreed to change the Settlement Agreement's exclusive license to a non-exclusive license. *See* Pl.'s First Am. Compl.*,* Ex. B, at 6-7.

### C. Plaintiff was Unjustly Enriched through its Collection of 50% of Royalties (Counts III and XI)

Defendants again do not contest the factual allegations in Plaintiff's First Amended Complaint. Nor do Defendants attack the legal sufficiency of Plaintiff's unjust enrichment claim. Instead, Defendants in their Response argue that Plaintiff has provided no "material proof of damages." Defs.' Resp. 10-11. Defendants are incorrect.

Per the Settlement Agreement, Defendants were entitled to 50% of the gross margin of sales for Sequential Spelling Level 1 material *until* Plaintiff received approval for its derivative version. *See* Defs.' Resp. Ex. A, at 3 (Section 6). Rather than reasonably approving Plaintiff's derivative work in early March, however, Defendants in bad faith denied approval to Plaintiff's derivative work until a third party was forced to intervene and approve it in late April. As a result of Defendants' wrongful conduct and delayed approval, Defendants were able to make 50% of gross margins on the sale of Sequential Spelling Level 1 material for *two extra months*. While Defendants have remitted to Plaintiff's 50% of the gross margins ($2,915.60) of these sales after being compelled to do so by Court Order, Defendants have unlawfully retained the other 50% ($2,915.60) it should have never obtained in the first place.

13

      **D.    Defendants Tortiously Interfered with Plaintiff's Business Expectancies by Misrepresenting to Plaintiff's Expected Clients that AVKO and Not Plaintiff Owned Rights to the Works (Counts IV and XII)**

Defendants have admitted to representing to numerous third-party distributors that Plaintiff does not own rights to the "classic versions" of the Sequential Spelling Material and that AVKO is the lawful owner of that material. *See* Defs.' Resp. Ex. 2, at 4. Defendants also do not contest the legal sufficiency of the tortious interference claim. *See* Defs.' Resp. 11.

As a result of Defendants' false representations, distributors and other third-party non-individuals who would have other purchased the Sequential Spelling Material from Plaintiff instead purchased the material form Defendants—or otherwise declined to purchase it from Plaintiff. *See* Pl.'s First Am. Compl. Ex. H; Exhibit A. Additionally, consumer demand has plummeted as a result of Defendants' tortious interference and the resulting consumer confusion.

      **E.    Defendants Engaged in Deceptive Trade Practices (Count VI and XIV)**

The Settlement Agreement establishes Plaintiff as *the* source of the Sequential Spelling Material in the United States and Canada. The Settlement Agreement grants Plaintiff an exclusive license to the copyrighted material and the right to use the Sequential Spelling trademark in connection with that material. Defs.' Resp. Ex. 1, at 2-4. After the execution of the Settlement Agreement, however, Defendants not only continued to sell the Sequential Spelling Material to distributors under the Sequential Spelling trademark, they also misled and deceived those distributors into believing that Plaintiff was *not* a lawful source of the Sequential Spelling Material. These misrepresentations confused consumers and led them not to purchase Sequential Spelling Material from Plaintiff because they mistakenly believe that Defendants were the correct source of the material sold under the Sequential Spelling mark and that Plaintiff was not the lawful source. The invoices referenced in Plaintiff's First Amended Complaint show that

numerous consumers were confused and purchased material from Defendants instead of Plaintiff. *See* Exhibit A. These kinds of misrepresentations are the precise conduct the Illinois statute was designed to prevent and punish.

### G. Defendants Committed Fraud Against Plaintiff (Count VII and XV)

Defendants lied to Plaintiff through a court filing and during a court hearing when Defendant McCabe stated "AVKO is not selling to distributors. . . . JJH Publishing is currently selling to distributors, not AVKO." *See* Exhibit F, at 4.[12] However, AVKO was selling Sequential Spelling material to over twenty distributors and non-individuals. *See* Pl.'s First Am. Compl. Ex. H. As a direct result of Defendants' fraudulent misrepresentation and concealment, Plaintiff was not able to immediately stop those distributors from selling the unauthorized material (Defendant McCabe's lies concealed the sales) and accordingly lost those sales and was effectively denied control to the increasingly oversaturating market for another month.

### Conclusion

There are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court should grant Plaintiff's Motion for Partial Judgement on Counts I-IV, VI, VII, IX-XII, XIV, and XV of the Pleadings.

Respectfully submitted,

Date: February 9, 2017

/s/ Matthew R. Grothouse
Matthew R. Grothouse
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654
Attorney No. 6314834
matt@saperlaw.com
(312) 527-4100

*Attorneys for Plaintiff.*

---

[12] This document does appear on the docket, likely because Mr. McCabe did not file it correctly. He sent the file to Plaintiff's counsel and the courtroom deputy on July 15, 2016. *See* Exhibit F, Page 18.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 9, 2017 the foregoing

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filings to Defendants' counsel of record:

Mason Cole
Cole Sadkin, LLC
20 South Clark Street, Suite 500
Chicago, IL 60603
www.colesadkin.com
(312) 548-8610
mcole@colesadkin.com

*Attorneys for Defendants.*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Matthew R. Grothouse
Matthew R. Grothouse
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
ds@saperlaw.com
(312) 527-4100

*Attorneys for Plaintiff.*