# EXHIBIT D

```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    WAVE 3 LEARNING, INC., a Nevada          )
      Corporation,                             )
 4                                             )   16 CV 5643
                        Plaintiff,             )
 5                                             )
      vs.                                      )   Chicago, Illinois
 6                                             )
      AVKO EDUCATIONAL RESEARCH FOUNDATION     )
 7    INC., a Michigan corporation,            )   August 15, 2016
                                               )
 8                      Defendant.             )   11:01 o'clock a.m.

 9                           TRANSCRIPT OF PROCEEDINGS
10                    BEFORE THE HONORABLE JAMES B. ZAGEL

11
      For the Plaintiff:
12
                        SAPER LAW OFFICES, LLC
13                      BY: Daliah Saper
                            Matt Grothouse
14                      505 North LaSalle
                        Suite 350
15                      Chicago, Illinois 60654
                        (312) 527-4100
16
      For Defendant AVKO:
17
                        PRESIDENT OF AVKO EDUCATIONAL
18                      RESEARCH FOUNDATION:
                        Donald McCabe
19

20
      Court reporter:
21
                        Blanca I. Lara, CSR, CP, RPR
22                      219 South Dearborn Street
                        Room 2504
23                      Chicago, Illinois 60604
                        (312) 435-5895
24

25
```

1 (Proceedings taken in open court:)

2 THE CLERK:  Case number 16 CV 5643, Wave3 Learning

3 versus AVKO Educational Research Foundation.

4 MS. SAPER:  Good morning, Your Honor.

11:01:40 5 Daliah Saper on behalf of Wave 3.

6 MR. GROTHOUSE:  Good morning, Your Honor.

7 Matt Grothouse on behalf of Wave 3.

8 MR. MC CABE:  Don McCabe on behalf of the AVKO

9 Educational Research Foundation.

11:02:03 10 (Brief pause).

11 THE COURT:  We can begin with you.

12 MR. GROTHOUSE:  Your Honor, we're here today as a

13 continued hearing to address the AVKO and Mr. McCabe's breach

14 of the settlement agreement, breach of the -- violation of the

11:02:31 15 TRO, and violation of Your Honor's court order.

16 We attempted to follow Your Honor's instruction to

17 bring fact witnesses to this hearing.  Unfortunately, because

18 it was a confidential settlement agreement and obviously we

19 couldn't divulge the terms of the settlement agreement to any

11:02:57 20 third-party, the fact witnesses in this case are purely the

21 parties and their lawyers.

22 We attempted to reach out and we did reach out to

23 Judge Finnegan.  Asked her to appear, if she could.  We have an

24 e-mail -- or excuse me, a note from Judge Finnegan basically

11:03:18 25 declining the invitation and saying that she would only come if

1    Your Honor ordered her to come because she didn't want to

2    undermine her role as a mediator in settlement conferences.

3         We also reached out to AVKO's former counsel and asked

4    them to come.  And they basically wrote a letter, I can give it

11:03:36    5    to Your Honor, basically saying the same thing, that they would

6    not come unless ordered to do so.

7         So we are basically in the same place that we were

8    last week.  We have the president of Wave 3 here with us, he

9    can testify to facts, we have ourselves and we have

11:03:55    10    Mr. McCabe, but those are pretty much the only parties that can

11    testify to the facts of this case.

12         MS. SAPER:  And to remind Your Honor, we already have

13    much of Mr. Morrow's testimony on the record when he appeared

14    here on the initial TRO date.

11:04:12    15         MR. GROTHOUSE:  Your Honor, I would first begin just

16    by saying that this case is very simple and straightforward.

17    It's just about a breach of the settlement agreement.

18         A settlement agreement was reached between the

19    parties, AVKO and Wave 3, on February 24, 2016.  One of the key

11:04:25    20    terms in that settlement agreement--a settlement agreement that

21    was negotiated by both parties with representation of counsel

22    under the supervision of Judge Finnegan--one of the key terms

23    to the settlement agreement was that AVKO granted Wave 3 an

24    exclusion license to Sequential Spelling Works Levels 1 through

11:04:45    25    7 and derivatives thereof, and that exclusive license obviously

1    applied to classic AVKO versions and then also derivatives,

2    which included Wave 3's revised versions and also other

3    derivatives, such as online works once they were approved by

4    AVKO under the approval process set forth in the settlement

5    agreement.

6         Now, originally I think all parties were very clear

7    and on board with this language and interpretation, perhaps

8    because it is very clear in the settlement agreement what an

9    exclusive license means and what material was exclusively

10    licensed. I understood it perfectly fine. Wave 3 understood

11    it perfectly fine. I believe this Court understands it

12    perfectly fine. AVKO's original attorneys understood what it

13    meant, what exclusive license meant.

14         And even Mr. McCabe himself understood what the

15    exclusive license meant as indicated by his March 8th e-mail

16    that we set forth as Plaintiff's Exhibit Number 3 during our

17    TRO hearing, where he asked Wave 3 to, quote/unquote, accept a

18    small change from exclusive to nonexclusive so he could

19    publish, he could have other entities, such as Inquisicorp

20    reproduce and distribute classic AVKO Sequential Spelling

21    versions.

22         Now, obviously he wouldn't ask for this change if he

23    thought that he already could do that and that Wave 3,

24    quote/unquote, only had an exclusive license to its own revised

25    versions, but that wasn't the case.

11:05:04

11:05:23

11:05:40

11:06:05

11:06:16

1       Mr. McCabe and AVKO clearly understood what the

2  exclusive license meant, and that it applied to AVKO classic

3  versions, as well as Wave 3's versions, and all derivatives

4  thereof.

11:06:28    5       Now, obviously Mr. McCabe had a change of heart when

6  Wave 3 would not renegotiate the settlement agreement.  And

7  when Wave 3 would not give up its exclusive license, Mr. McCabe

8  developed a very unreasonable and self-serving interpretation

9  of the settlement agreement and he kind of ran with that

11:06:45  10  interpretation thereafter despite counsel, his attorneys, and

11  despite our own e-mails and communications telling him that he

12  was wrong and that his interpretation was in violation of the

13  settlement agreement.

14       Now, his interpretation led him to not only

11:06:59  15  misrepresent the settlement agreement and Wave 3's rights under

16  the settlement agreement to third-parties, but it also led

17  Mr. McCabe and AVKO to start selling this material in strict

18  and in clear violation of settlement agreement to third-parties

19  and license it to entities such as JJH Publishing.

11:07:18  20       Now, this had a terrible effect on the market.  Wave

21  3's sales dried up and Wave 3's reputation and goodwill is

22  obviously imperiled because distributors and customers are

23  confused who owns the material and who can sell it.

24       Now, we are here today due to Mr. McCabe's

11:07:37  25  unreasonable and self-serving interpretation of the settlement

1    agreement.  And when we filed the TRO, it was clear that he --

2    and he admitted in the filing that he filed in court that he

3    was, in fact, selling to JJH, licensing to JJH, and that he was

4    misrepresenting the settlement agreement to third-parties.  And

11:07:59    5    so the TRO, Your Honor, you granted, and you ordered the

6    licensing between AVKO and these other entities to be

7    terminated.

8            Unfortunately, Mr. McCabe also developed this

9    unreasonable and self-serving interpretation of that order and

11:08:21    10    basically thought and ran with the idea that Your Honor, for

11    some reason, terminated Wave 3's license in your order, which

12    obviously you did not.  And Mr. McCabe has ran with that

13    self-serving interpretation of Your Honor's order.  And he has

14    misrepresented to third-parties that Wave 3 no longer has a

11:08:42    15    license to sell Sequential Spelling Works.  And he has also

16    engaged with distributors and basically represented that after

17    the TRO was up, that he could perhaps re-license the material

18    in direct violation of the settlement agreement.

19            So we are here now because Wave 3's rights under the

11:09:03    20    settlement agreement are directly undermined by AVKO's actions,

21    specifically the action and communications of Mr. McCabe.

22            Wave 3 is not making the sales that it needs to make

23    to honor the end of the settlement agreement.  It should be

24    making tens of thousands of dollars right now, instead it's

11:09:20    25    making zero dollars like it did in the month of June.

1        So Wave 3 needs direct relief, and we need some sort

2   of resolution immediately so we can reestablish, Wave 3 Can

3   reestablish its place in the marketplace and it can clarify

4   it's rights under the settlement agreement.

11:09:43   5        Particularly, when it comes to the motion to show

6   cause, this is the second motion to show cause.  And we have

7   continued this case a couple of times in order to help

8   Mr. McCabe, one, get an attorney if he so desired, and two, if

9   we could flush out this case, I guess, a little bit more and

11:10:12   10  figure out exactly what's going on.

11       But I believe that it's pretty straightforward, Your

12  Honor.  That Mr. McCabe has assumed or adopted these

13  unreasonable interpretations of not only the settlement

14  agreement but also your TRO order, and he has ran with these

11:10:30   15  self-serving interpretations in direct violation and directly

16  damaging my client's rights.

17       THE COURT:  It's your turn.

18       MR. MC CABE:  Your Honor, well, the history of the

19  litigation between AVKO and Wave 3 is lengthy and appears very

11:10:54   20  complex.  It really boils down to an attempt by the plaintiff

21  to obtain the AVKO copyrights and without having to pay for

22  them, and failing that, to destroy AVKO so Wave 3 could claim

23  the copyrights without any opposition.

24       This case has to do with:

11:11:15   25       One, the TRO Your Honor granted.

1        The terms of the settlement agreement itself.

2        Three, copyrights.

3        And four, money.

4        AVKO has complied with the TRO.  AVKO terminated the

5   licenses of the only two firms AVKO had granted a license to,

6   that is Wave 3 and JJH Publishing.  AVKO has not made one sale

7   to a single nonindividual since the TRO was granted.  AVKO has

8   not misrepresented to any nonindividual anything concerning the

9   settlement agreement, ever; while Wave 3 on its website has not

10  only misrepresented to the general public with its web page,

11  "what happened to AVKO," it is to this very day infringing on

12  an AVKO copyrighted placement test.

13       When it comes to the second element of this case, the

14  settlement agreement, some of which is clearly stated, has been

15  ignored by Wave 3.

16       For example, it clearly states in the very first

17  paragraph:

18           "... this agreement shall be effective on the

19           date of the last signature required for full

20           execution by both AVKO and Wave 3 ..."

21           quote, "the effective date."

22           Under two, "settlement payment," it clearly states:

23           "... beginning on or before the effective date

24           Wave 3 shall pay to AVKO the sum of $100,000

25           ... "

1        the settlement amount:

2        "... on or before the effective date."

3        Not one penny was provided to AVKO on or before the

4 effective date.  It is clearly stated "on or before the

11:13:20  5 effective date."

6        On pages 2 and 3 of the settlement agreement, under

7 "materials at issue," it does clearly state:

8        "... AVKO shall grant and hereby grants an

9        exclusive license in the United States and

11:13:37  10        Canada in a worldwide nonexclusive license to

11        the below titles."

12        "Titles" is the operative word very clearly stated.

13 And it lists Sequential Spelling Levels 1 to 7 teacher guides

14 and Sequential Spelling levels 1 to 7 student response books,

11:14:06  15 each listed separately by title as only the Wave 3's revised

16 version, which is a derivative of AVKO Sequential Spelling as

17 separate response books.  The exclusive license pertains only

18 to Wave 3's version and not the originals which have different

19 titles.

11:14:40  20        On page 3 under "AVKO sales," it says:

21        "... AVKO shall be permitted to sell all its

22        copyrighted materials on its website or other

23        channels to the extent that it is to individuals

24        and not distributors ...."

11:14:56  25        And on the same page, under 7, "copyright use," it

1    clearly states:

2              "... Wave 3 understands and believes that AVKO

3              is the sole and exclusive owner of the

4              copyrights."

5         The meaning is clear enough, AVKO is granted the

6    right to sell both versions of Sequential Spelling as AVKO owns

7    the copyrights but can sell their copyrighted works only to

8    individuals.

9         The agreement is totally silent about licensing,

10   contrary to Wave 3's claim, on page 2, under the temporary

11   restraining order that AVKO licensed JJH Publishing in, quote:

12             ".... contravention of Wave 3 Learning's

13             exclusive license to such material ..."

14             end of quote.

15        It is common knowledge that copyright owners do have

16   the legal authority to license the use of its intellectual

17   property.

18        AVKO exercised its right when it licensed JJH

19   Publishing a nonexclusive right to publish the classic version

20   of Sequential Spelling, as well as all of its other copyrighted

21   books with the one exception, and that of Wave 3's revised

22   editions of Sequential Spelling and their respective student

23   response books.

24        On the same page there is added a note, quote:

11:15:13

11:15:35

11:15:55

11:16:18

11:16:37  25

1        "... until there is an approved version of

2        Sequential Spelling, one teacher guide, AVKO has

3        the right to sell such material and AVKO and

4        Wave 3 will split the gross margin 50/50 ..."

11:16:55   5      What the settlement agreement does not say is when

6 AVKO must calculate that money and when that very small,

7 actually insignificant amount of money is to be paid, a few

8 hundred dollars it might amount to pales in comparison to the

9 $75,000 owed AVKO by Wave 3 by virtue of the settlement

11:17:18  10 agreement.  And the money from those few sales is certainly far

11 less than the $550,000 Judge Ludington ruled that Wave 3 had to

12 pay AVKO for its implied license.  AVKO will hold that small

13 amount owed Wave 3 in trust until the larger amounts are paid.

14       On page 3 of the emergency motion under "order of

11:17:44  15 contempt," plaintiff claims AVKO's termination of its license

16 was a direct violation of the settlement agreement.

17       I searched the settlement agreement and could not find

18 anything to do with termination, except on page 3, under 4,

19 Sequential Spelling website, where it clearly states, quote:

11:18:04  20        "... in the event the agreement is terminated,

21        Wave 3 shall sell the sequentialspelling.com

22        domain to AVCO at the same price it was

23        originally purchased for ..."

24        end of quote.

11:18:21  25       Of course, AVKO did not terminate the agreement, just

1  the license.  As per Your Honor's TRO clearly stated, "AVKO

2  must terminate all licenses."

3          Speaking of licenses, there is a problem in the

4  settlement agreement to which I tried unsuccessfully to get

11:18:42  5  AVKO's attorneys to address, that is, on page 5 it states,

6  quote:

7          "... Wave 3 shall be liable for the $100,000 for

8              past damages."

9          end of quote.  It is clear that the $100,000 was for

11:18:59  10  past damages.  No amount was mentioned for the cost of

11  licensing.

12          As is common knowledge, a license has to have some

13  financial consideration to be put into effect.  AVKO's lawyers

14  and the lawyers for the plaintiff, in their haste to finish a

11:19:17  15  settlement agreement, failed to include it.  Their haste was

16  understandable.  A snowstorm was beginning.  They wanted to get

17  home.  In fact, I believe attorney Daliah left before the

18  agreement was signed.

19          But both sets of attorneys refused to even consider a

11:19:52  20  reexamination of the document and to negotiate the necessary

21  changes that would clarify the inherent problems created by

22  their haste.

23          Well, that's not quite true.  The day after the

24  settlement was signed without notifying or consulting AVKO.

11:20:14  25  AVKO's attorney, Brian Nowak, in conjunction with Thomas Morrow

1   with his attorney, made an e-mail amendment to the settlement

2   agreement having to do with when the royalties in Wave 3 sales

3   would be sent directly to his firm.  It appears that getting

4   money quickly from Wave 3 was more important than following the

11:20:35   5   wishes of his client to clarify the badly written settlement

6   agreement.

7           It was perhaps my e-mail to Brian Nowak listing the 22

8   things wrong with the settlement agreement that began with what

9   some people might call a very bad lawyer-client relationship.

11:20:55   10           On page 3, under 3, order of contempt, plaintiff

11   claims AVKO's e-mail to both Wave 3 and JJH Publishing

12   terminating the publishing licenses per Your Honor's TRO

13   represented, quote:

14           "... that AVKO would on August 4th, 2016,

11:21:16   15           re-license to JJH Publishing the classic version

16           of Sequential Spelling 1 to 7 in direct

17           violation of the plain words of the settlement

18           agreement ..."

19            end of quote.

11:21:30   20           First of all, the e-mail did not state "would

21   re-license."  It only stated that there was a possibility that

22   it could occur.  And it didn't.

23           Plaintiff goes on to state that Your Honor did not

24   order AVKO to terminate its license.  True, Your Honor didn't

11:21:57   25   name Wave 3, but Your Honor clearly ordered AVKO to terminate

1       all licenses, and AVKO did.

2               What was in AVKO's e-mail to Rainbow was simply the

3       unvarnished truth:  There was no license publisher at that

4       time.  And as far as AVKO is concerned, there still is no

5       license publisher.

6               AVKO was not informed by Your Honor that we should

7       revoke the termination of license to Wave 3 or could revoke the

8       termination of license to JJH Publishing.

9               On page 5, plaintiff refers to counsel's e-mail of

10      July 28th that AVKO should tell distributors, for all future

11      purchases of Sequential Spelling material levels 1 to 7 and all

12      derivatives thereof, please contact Wave 3 Learning,

13      Incorporated.

14              Plaintiff referred to Exhibit 8 in which there is a

15      copy of the letter Wave 3 wanted AVKO to send.  The very first

16      sentence contained an untruth, quote:

17                  "... since February 24th, 2016, Wave 3 has owned

18                  an exclusive copyright ..."

19               at this point, I knew I could not send that letter as

20      it would be misrepresenting what was in the agreement.  And

21      even if it were, it would be violating the confidentiality

22      clause.

23              I would like, for the sake of continuity, repeat the

24      letter starting again from the beginning, quote:

25                  "... since February 24, 2016, Wave 3 has owned

11:22:21

11:22:40

11:23:02

11:23:23

11:23:44

1      an exclusive copyright license to Sequential
2      Spelling Works Levels 1 to 7 and all derivatives
3      thereof, this includes AVKO classic editions,
4      Wave 3's newly revised editions, and all other
5      approved derivatives such as online programs
6      ..."
7        end of quote.
8       The letter further states:
9       "... consequently, any material purchased by you
10     or other distributors from AVKO or from JJH
11     Publishing after February 24, 2016, is
12     unauthorized and infringing material, the sale
13     of such material to consumers, moreover,
14     constitutes copyright infringement.  Please note
15     that copyright infringement is a strict
16     liability offense.  This means you are liable
17     for selling infringing works even if you thought
18     you were purchasing authorized works."
19       end of quote.
20        These exact words were first used in a previous e-mail
21   sent to Wave 3's former distributors.  And Mr. Morrow wonders
22   why his sales have gone down.  This was in an e-mail
23   practically demanding all the distributors to send -- to sign a
24   contract or risk litigation.
25        I've spoken perhaps too long on the first two points

1    of the TRO and the settlement agreement.

2         The other two points are the copyrights and money.

3    First to copyrights.  Here a bit of history is necessary as it

4    does pertain to the settlement agreement.

11:25:24

5         Over a year before Wave 3 came into existence, AVKO,

6    an Instructional Media Innovations, Incorporated, jointly

7    copyrighted the DVD versions of Sequential Spelling.  Wave 3

8    and its attorneys contend that the settlement agreement totally

9    negates IMI, the Instructional Media Innovations copyrights.

11:25:54

10        I instructed Brian Nowak to pursue this, to clarify

11   the settlement agreement and to make the settlement agreement a

12   clean legal document.  Keeping the essential points in it, but

13   eliminating the simple goofs, such as not stating hours, days,

14   weeks or years after the number 14, and making the licensing

11:26:22

15   part to be legally correct by at least having a small amount,

16   such as $25, being the licensing fee.

17        Wave 3 contends that by the settlement agreement

18   having the phrase "exclusive rights in U.S. and Canada" that

19   they have the copyrights, and could, and they did, claim on

11:26:44

20   their website, up until about a month after the settlement

21   agreement, that they held the copyrights.

22        Brian Nowak refused to attempt negotiating any change

23   in the agreement, saying, in so many words, it's a legally

24   binding contract, so get over it.

11:27:04

25        More about copyrights:  During the negotiations,

1    preceding the June 4, 2010 contract, signed by the CEO and

2    president of Home School Holdings, and by me for AVKO, Thomas

3    Morrow drafted all the proposed contracts, including the one in

4    which he, Thomas Morrow, stated AVKO owned the copyrights and

11:27:31    5    claimed that Home School Holdings, his company, owned the

6    publishing rights, which he didn't at the time.

7        In all other contracts proposed during initial

8    negotiations and in the e-mails between Morrow and myself

9    during the negotiations the words "copyrights" were never used.

11:27:51    10        In January of 2010, Thomas Morrow, as CEO and

11    president of HSH, claimed under penalty of perjury, in an SEC

12    filing, that HSH had purchased the publishing rights, not

13    copyrights, and submitted a document signed only by me for AVKO

14    but not by him for HSH in December 2009 as evidence.

11:28:17    15        Thomas Morrow, for HSH and I signed a plain English

16    publishing agreement on June 4, 2010.  The agreement was for

17    $600,000 and called for two payments of $300,000, consisting of

18    $50,000 cash and $250,000 worth of stock.  AVKO received only

19    $50,000.

11:28:44    20        Wave 3, in various legal documents, claimed the check

21    was from Home School Holdings, Thomas Morrow, and Wave 3,

22    according to the e-mail letter to Magistrate Judge Sheila

23    Finnegan prior to the settlement conference.  Please note, the

24    50-thousand-dollar check could not possibly be from Wave 3.

11:29:10    25    Wave 3 did not come into existence until June 18th, 2010, two

 1   weeks after the check was made out.

 2          Morrow twice attempted to convince AVKO to agree to

 3   purchase stock from Home School Holdings at a nickel a share

 4   when its true value was less than .001, claiming at the last

 5   minute that a signed subscription, which is a purchase

 6   agreement, was necessary for AVKO to be given the stock.

 7          When Morrow left Home School Holdings and created Wave

 8   3, AVKO attempted to work with Wave 3 using the June 4th, 2010,

 9   contract as its basic template until such time as Morrow could

10   come up with an acceptable replacement contract.  He never did.

11          AVKO gave Wave 3 approximately 9 months to get started

12   and to fulfill its part of the bargain.  When Wave 3 did not,

13   AVKO gave notice and then filed suit, case number 11 CV 13381.

14   It was assigned to the Honorable Thomas L. Ludington.

15          Because I failed on the $75,000 bond for AVKO in time,

16   the TRO motion was denied because AVKO's attorney, without the

17   consent of AVKO, dropped HHS from the lawsuit, and because Wave

18   3 could not be party to the contract as it wasn't in existence

19   at the time the contract was signed, all the charges related to

20   copyright infringement and fraud inducement were dropped.

21          At the settlement hearing Thomas Morrow signed an

22   agreement for Wave 3 handwritten in front of Judge Ludington.

23   I also signed it.  I also signed the subsequent formerly

24   drafted agreement as well to settle.  Thomas Morrow refused.

25          Plus, AVKO had no reason to believe that Wave 3 would

1    keep the agreement that was arrived at on February 23rd, 2016.

2            In case 11 CV 13381, Judge Ludington ruled that AVKO

3    had given Wave 3 an implied license to reproduce and distribute

4    the AVKO materials.  Judge Ludington also ruled that Wave 3 had

5    to complete the $250,000 first installment on the license and

6    that Wave 3 must complete the $600,000 licensing fee the

7    implied license called for.

8            Wave 3 ignored Judge Ludington's ruling as well and

9    has not paid AVKO anything.  AVKO informed Wave 3 that they

10   were in breach of the implied licensing contract by not paying

11   the agreed upon amount while continuing to publish.  Wave 3

12   ignored AVKO's warning that Wave 3 was in breach of contract.

13           Judge Ludington also ruled that the copyrights did not

14   transfer to the licensee for publishing.  Wave 3 has ignored

15   that, and to this date, continues to claim copyright ownership

16   despite the rulings of both Judge Ludington and Judge Kendall.

17           Before AVKO could file suit for breach of contract in

18   Michigan, because AVKO gave notice, Wave 3 filed for a

19   declaratory judgment that it owned the copyrights in Illinois

20   rather than in Michigan, which the contract, the implied

21   contract called for.

22           Now, it's case 14 CV 02948, Judge Virginia Kendall,

23   three times, dismissed without prejudice Wave 3's case for

24   failing to produce any signed document besides the laughable

25   licensing of copyrights supposedly owned by Thomas Morrow

1    himself and then transferred to Wave 3.

2         Wave 3 filed again a 99 percent identical suit before

3    the first one had yet to be settled.  Both filings contained

4    the manufactured document claiming Thomas Morrow had signed his

5    copyrights to Wave 3.  Judge Kendall then dismissed the case on

6    the grounds she lacked jurisdiction, and gently reprimanded

7    both counsels for not knowing that.

8         The cost of defending that lawsuit was $74,717.  When

9    AVKO first retained our attorney, Brian Nowak, I asked him to

10   bring a countercomplaint for breach of contract.  He claimed it

11   would cost AVKO less in the long run if he first established in

12   the Illinois courts that AVKO owned the copyrights.  I

13   disagreed, but the other members of AVKO's legal committee

14   overruled me saying, quote, "listen to your lawyer, he knows

15   best."

16        By listening to AVKO's lawyer, AVKO was out over

17   $74,000 and no closer to stopping Wave 3 from selling AVKO's

18   copyrighted materials without paying for its license to do so.

19        I wasn't a happy camper, but unlike the plaintiff, I

20   did not look for a new lawyer.  Perhaps I should have.  But

21   AVKO's legal committee unanimously agreed we should not change

22   horses in the middle of the stream.

23        From the beginning of the breach of contract suit that

24   followed, to the point at which negotiations for a settlement

25   began, AVKO received $106,388.65 of legal billings by Brian

11:35:24

1  Nowak.  AVKO then received billings of $20,488 just for the

2  settlement agreement.  And AVKO has received billings from

3  Brian Nowak for over $20,000 after he supposedly closed our

4  files on March 9th and notifying the plaintiffs about no longer

5  representing AVKO before he notified AVKO.  And hence the

6  plaintiff sprang into action, not because Wave 3 was being

7  deprived of any income by AVKO's actions, but because Thomas

8  Morrow thought he saw the opportunity to destroy and bankrupt

9  AVKO, just as he has been threatening to do as far back as

11:35:50

10  July 19, 2011, in an e-mail to my grandson, which he said,

11  quote, "also willing to bring suit and destroy AVKO and your

12  grandpa's estate if I have to," end of quote.

13          I respectfully request Your Honor to:

14          One, lift the TRO to allow AVKO to license Wave 3 for

11:36:17

15  $25 a year to have exclusive rights to publish its version of

16  Sequential Spelling, and for another $25 to license Wave 3 to

17  publish its online version with a standard royalty of 50

18  percent.

19          And two, dismiss with prejudice this breach of

11:36:39

20  contract complaint and to award whatever damages to AVKO that

21  Your Honor deems is appropriate and that might deter Wave 3

22  from filing frivolous and malicious lawsuits in the future.

23          Thank you.

24          (Brief pause).

11:38:34

25          MR. GROTHOUSE:  Your Honor, if I may have a chance to

1   respond?

2          First, I just want to make --

3          Is that okay?

4          THE COURT:  Yeah.

5          MR. GROTHOUSE:  First, Your Honor, I just want to make

6   it clear that Mr. McCabe is here as a fact witness and he's not

7   here on behalf of AVKO, as he said at the beginning.

8          And secondly, his legal arguments, many of which he

9   made in his speech, is not really authorized to make on behalf

10  of AVKO.

11         Secondly, I want to make sure that this hearing is

12  focused on one question, and that's whether or not that AVKO

13  and Mr. McCabe violated the settlement agreement and has

14  violated the Court's order since then.

15         It's very important that we focus this hearing,

16  because Mr. McCabe seemingly has gone off on a couple of

17  different tangents.  I want to make sure that we're not

18  relitigating past cases that were settled by the settlement

19  agreement.  I want to make sure that we're not in a malpractice

20  suit against AVKO's former attorneys.  And I want to make sure

21  that we're focused on the one question before the Court today,

22  and that's about the settlement agreement and AVKO and

23  Mr. McCabe's violation thereof.

24         To respond to some of Mr. McCabe's representations and

25  misrepresentations, first, I think he mentioned the settlement

1    amount and whether or not all of the money should be paid right

2    away.  I think the settlement agreement clearly states that the

3    $100,000 should be paid in annual installments of $25,000, so

4    that's $25,000 a year, the clause number two clearly states

11:40:12    5    that.  The first payment was due on June 1st, the first payment

6    was made by Wave 3 on June 1st.  So Wave 3 has followed that.

7    And I don't really understand what Mr. McCabe was saying there.

8         Secondly, when it came to his statement about the

9    exclusive license in the United States, I think he mentioned

11:40:34    10    the operative word being "titles."  And that's true, and the

11    titles that were listed there were AVKO's classic editions, and

12    even Mr. McCabe mentioned that the derivatives -- excuse me,

13    Wave 3's revised versions were derivatives.  So I don't really

14    understand how Mr. McCabe is interpreting that.  It's very

11:41:00    15    clear that in the settlement agreement AVKO granted Wave 3 the

16    exclusive license to the titles below, and the titles were

17    AVKO's classic editions and then the exclusive license also

18    included derivatives thereof --

19         MR. MC CABE:  (Indicating) (indicating).

11:41:21    20         MS. SAPER:  Okay.

21         Anyway, I think it's also worthy to point out that

22    Mr. McCabe as a very bizarre interpretation of licensing or

23    selling.  I don't understand that either.  The entire point was

24    -- the entire point of the settlement agreement was to give

11:41:39    25    Wave 3 an exclusive license.

11:41:55

1       In fact, when the parties were computing the amount
2   that the revenue, annual revenue requirement that Wave 3 would
3   have to meet in order to keep an exclusive license, they
4   basically took all of AVKO's sales from the previous year and
5   all of Wave 3 sales from the previous year and added them
6   together to reach this revenue benchmark.

7       It would make very little sense if Wave 3 only had a,
8   quote/unquote, license to sell Wave 3's revised versions while
9   AVKO could license out the classic versions and somehow Wave 3

11:42:18

10  was supposed to meet the combined revenue of both companies
11  next year.  It just doesn't make any sense, besides just the
12  clear and obvious fact that the exclusive license was given to
13  the copyrighted works at issue and their derivatives, and that
14  licensing is selling and selling is licensing.

11:42:38

15      Secondly, Mr. McCabe, not that it matters, it's
16  irrelevant because we're not relitigating the past cases, but I
17  just want to point out that Judge Ludington ruled that Wave 3
18  had at least an implied license.  He did not go into:  One,
19  whether or not there was more than implied license, which we

11:42:57

20  believe that there was.  The order was that at least an implied
21  license, and that was sufficient to dismiss -- or on summary
22  judgment AVKO's copyright claim against Wave 3.

23      Judge Ludington never required Wave 3 to pay any
24  money, let alone $550,000.  Never ruled on the terms of any

11:43:20

25  license, never ruled that there was a license.  He simply just

1  held that there was at least an implied license and therefore
2  AVKO could not bring a copyright claim against Wave 3.

3       Secondly, Mr. McCabe represented that he is not going
4  to pay the licensing fees that he owes Wave 3, that he's just
5  simply going to hold it in trust until he feels like he's being
6  paid enough, and that's not in accordance with the settlement
7  agreement.

8       The licensing amount was supposed to be paid, the
9  royalties were supposed to be paid at the end of the quarter.
10 Wave 3 paid its royalties to AVKO in accordance with the
11 settlement agreement at the end of the quarter, and AVKO simply
12 refused to do so and just simply held that they're going to
13 hold it in trust and not pay.

14      Also, Mr. McCabe's interpretation of financial
15 consideration for a license, I don't really have to go into
16 that.  Obviously, promises are sufficient for consideration.
17 And in this particular case, there was a 6 percent royalty rate
18 and the $100,000, there was also that.  And there were a myriad
19 of other promises that both parties were to make, including
20 both parties dismissing their claims against each other.  Wave
21 3 had counterclaims against AVKO and Wave 3 dismissed those
22 claims with prejudice.  I think Mr. McCabe simply doesn't
23 understand how contracts work.

24      Additionally, when it comes to the TRO, Your Honor,
25 the TRO order states that AVKO should terminate all licenses in

1    accordance with the settlement agreement because Wave 3 had the

2    exclusive license.  The important part is that it's in

3    accordance with the settlement agreement, and the settlement

4    agreement gave Wave 3 an exclusive license.  The order did not

11:45:14    5    command AVKO to terminate Wave 3's license, that wouldn't make

6    any sense.  Wave 3 would not come to this Court and ask Your

7    Honor to terminate its own license that it was asking the Court

8    to recognize and protect.

9         Finally, Wave 3 did not file suit right away because

11:45:36   10    it was giving AVKO the chance to honor the settlement

11    agreement.  And then the date that we did file it, and the day

12    that Wave 3 did notice up the TRO, it removed the TRO in hopes

13    that AVKO would change leadership, particularly that Mr. McCabe

14    would resign and that Wave 3 would be able to go into -- would

11:46:02   15    be able to actually find someone that would honor the

16    settlement agreement.

17         We gave that chance.  It was not -- we basically -- it

18    was the last resort for us, for Wave 3 to file a lawsuit.  And

19    we did so only after it was clear that Mr. McCabe was not

11:46:22   20    leaving and that Mr. McCabe was continuing to license the

21    material to third-parties and that Wave 3 had no chance of

22    making money and that their relationship was doomed.  That's

23    why Wave 3 filed the suit.  It was the last resort.  We made

24    sure that it was the last resort.

11:46:39   25         And we're here today, as I mentioned before, simply

1    because we need immediate -- Wave 3 needs immediate relief.

2    The settlement agreement is clear, Mr. McCabe's violations are

3    clear, and I'd ask this Court not to reward unreasonable and

4    self-serving interpretations.

5    Thank you, Your Honor.

6    THE COURT:  I issued a temporary restraining order,

7    and it now becomes a preliminary order which forbids AVKO --

8    MR. MC CABE:  I haven't heard -- Your Honor, I haven't

9    heard a word you said.

10   THE COURT:  No, I heard quite enough.  If you want to

11   sit down, you can.  It's up to you.

12   (Brief pause).

13   THE COURT:  I issued a temporary restraining order, it

14   now becomes a preliminary order which forbids AVKO --

15   MR. MC CABE:  I haven't heard -- Your Honor, I haven't

16   heard a word you said.

17   THE COURT:  No, you've heard quite enough.  If you

18   want to sit down, you can.  It's up to you.

19   (Brief pause).

20   THE COURT:  The restraining order is against

21   Mr. McCabe as well, which I will explain to Mr. McCabe in a

22   moment.

23   I am also, if I had not already said this, I am also

24   banning AVKO from dealing in this product.  I recognize that

25   there is possibly an outside -- there's an outside possibility,

11:47:01
11:47:51
11:47:46
11:48:02
11:48:42

11:49:17

1    I think, of almost no chance of success that after all is said

2    and done, one could possibly argue that the decision against

3    AVKO might possibly have been too restrictive.  I don't think

4    this would occur, but I will enter an order which indicates

5    that if such a finding is made, this Court does have the

6    authority to provide a remedy to AVKO against Wave 3.  The

7    reason I'm not ordering that money to be put into a protected

8    place for the holding of cash, since I regard the possible use

9    of that cash being almost nil, I will enter judgment, if I do,

11:50:06

10   on the basis of what I've heard without ordering further money

11   paid to AVKO.

12        What you should do, have it back here at about 3:00

13   o'clock, a detailed step of all the things that AVKO is

14   forbidden to do.

11:50:43

15        The statements made by Mr. McCabe are kind of a mash

16   of things talking about a variety of issues at different times

17   under different circumstances.  He appears to be the only

18   person willing to speak in this way, according to what he has

19   personally said is that a group, which included him, thought

11:51:22

20   that this deal was fine and he kept silent, which is his right,

21   and the procedures go forward.  And it is only after everybody,

22   in particular Wave 3, has stuck its very warm hand into some

23   very cold water, but according to what was stated here, the

24   only player in this is the man standing to your right

11:52:04

25   (indicating).

1          This was not AVKO itself that said anything or did
2   anything here.  There is one man who feels very strongly.  He
3   is relying on cases that cannot be used by him in defense.  I
4   can understand that he may have been deeply offended by what
5   happened in this case, but you don't get a second chance at it,
6   particularly in a case like this where we have a distinct
7   minority, someone who is, in fact, not a party in this court
8   demanding consequences from the court itself.

9          The reason I picked 3:00 o'clock is, the rules which I
10  have dealt with in a very general way, because the exact
11  operation of the business are covered by Wave 3, needs some
12  more detail than what I already have.  And it also might be a
13  chance for Mr. McCabe to look at this and understand what is at
14  issue and what isn't, because a lot of what he says might a
15  long time ago have been significant, but even then under those
16  circumstances he's not in complete charge, and it might be
17  helpful to him if he understands exactly what his limits are.

18         Whatever issues also remain, which is who has which
19  person's money and under what circumstances, should also be
20  dealt with in the preliminary order.

21         I am putting off to one side the issue of the amounts
22  of money which were due to Mr. McCabe because of his absence of
23  appearance here.  I'm not going to deal with that in the order
24  that you're talking about.

25         And there are probably some other issues that ought to

1   be raised in sworn testimony from Mr. McCabe, but that, I

2   think, would have to wait another day.  Although, I believe

3   based on -- I have to look this up fairly carefully:  I

4   remember it was July 26th that I first imposed the amount of

5   money that was supposed to be a prod so that he would come

6   here.  And I will at least enter a separate order with respect

7   to some of those days, particularly, in some respects, the

8   earliest ones of all, because this is a case which should've

9   been dealt with and understood, even if not decided, much

10  earlier in the time that it occurred.  Some of it may be due to

11  the fact that Mr. McCabe does not have a deep understanding of

12  the obligations of a party and the obligations of someone who

13  is not a party.  I have some sense of leniency with respect to

14  him, because it is clear that there's a lot about the law in

15  the circumstance that he does not know.  On the other hand, had

16  he been here earlier, we might've been at a better place

17  earlier than we are now.

18          So I'll see you at 3:00 o'clock.

19          MS. SAPER:  Just to be clear, Your Honor, the issue of

20  sanctions and attorney's fees should not be in this order?

21          THE COURT:  It should not be in that order.

22          Mr. McCabe, you don't have to stay here, but I would

23  advise you that they're going to have something for me to deal

24  with at 3:00 o'clock this afternoon, and some of it you might

25  want to be heard and I will hear you.

1        Thank you.

2            MS. SAPER:  Thank you, Your Honor.

3            MR. GROTHOUSE:  Thanks, Your Honor.

4        (Brief pause)

11:58:14  5            MR. MC CABE:  Did I understand you right about my

6    being here?  I would not be able to speak or do --

7            THE COURT:  No, I think I said to you that if you're

8    here at 3:00 o'clock I'll give you some small amount of time to

9    express your views.

11:58:36  10            MR. MC CABE:  At 3:00 o'clock today?

11            THE COURT:  3:00 o'clock today.

12            MR. MC CABE:  Oh, God!

13

14

11:58:50  15            (Recess taken until 3:00 o'clock p.m.)

16

17

18

19

20

21

22

23

24

09:12:33  25

```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   WAVE 3 LEARNING, INC., a Nevada          )
     Corporation,                             )
 4                                            )   16 CV 5643
                        Plaintiff,            )
 5                                            )
     vs.                                      )   Chicago, Illinois
 6                                            )
     AVKO EDUCATIONAL RESEARCH FOUNDATION     )
 7   INC., a Michigan corporation,            )   August 15, 2016
                                              )
 8                      Defendant.            )   3:00 o'clock p.m.

 9                    TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE JAMES B. ZAGEL

11
     For the Plaintiff:
12
                   SAPER LAW OFFICES, LLC
13                 BY: Daliah Saper
                       Matt Grothouse
14                 505 North LaSalle
                   Suite 350
15                 Chicago, Illinois 60654
                   (312) 527-4100
16
     For Defendant AVKO:
17
                   PRESIDENT OF AVKO EDUCATIONAL
18                 RESEARCH FOUNDATION:
                   Donald McCabe
19

20   Court reporter:
21
                   Blanca I. Lara, CSR, CP, RPR
22                 219 South Dearborn Street
                   Room 2504
23                 Chicago, Illinois 60604
                   (312) 435-5895
24

25
```

1      (Proceedings taken in open court:)

2          THE CLERK:  Recalling case number 16 CV 5643, Wave 3

3    Learning versus AVKO Educational Research Foundation.

4          MS. SAPER:  Good afternoon, Your Honor.

02:39:10      5          Daliah Saper on behalf of Wave 3.

6          (Brief pause).

7          THE COURT:  I know, Mr. McCabe, that you wanted to say

8    a few other things, and I think we can get you out of here with

9    time enough to get out of here and on the train.

02:39:36    10          So you should speak first.

11          MR. MC CABE:  Okay.  One of the things I wanted to

12   point out is right straight from the settlement agreement, and

13   that has to do with what materials at issue were.

14          Now, there's a world of difference between the classic

02:40:00    15   version, which came out first.  And I can show you a copy that

16   they -- that Wave 3 used to print in which they actually put

17   "copyright 2006 Wave 3," but they wanted to change from what I

18   had and make it so it had student -- extra student work, and

19   that's when they called it the Wave 3 Student, or whatever it

02:40:36    20   was.  I don't have a copy of it --

21          THE COURT:  That's --

22          MR. MC CABE:  My attorneys have copies of it, but they

23   never returned any of the things that I gave them, but that's

24   another story.

02:40:48    25          The thing is, this is what they wanted, the student --

1    there's a different one for each level (indicating).

2            THE COURT:  I want to look at it.

3            MR. MC CABE:  Pardon?

4            THE COURT:  I want to look at one of them.

02:41:08    5    MR. MC CABE:  Okay.  This one is the original, and

6    it's just one.

7            THE COURT:  Okay.

8            MR. MC CABE:  No matter what level, that's it.

9            THE COURT:  Yeah.

02:41:15    10    (Document tendered to the Court.)

11            MR. MC CABE:  They didn't like the very simple one and

12    they wanted it changed, and that's what the materials at issue

13    were.

14            I have no -- I have no qualm about letting them have

02:41:33    15    exclusive rights to their changed version at all.

16            THE COURT:  Okay.

17            MR. MC CABE:  And let them go ahead.  It's the classic

18    version that the members of the AVKO foundation and individuals

19    may want to purchase and that others may want to purchase.  I

02:42:01    20    know that Wave 3 does not want to deal with individuals.  They

21    had said that over and over that individual sales are

22    rinky–dink and it would cost them too much time and effort to

23    do it.  But the important thing is, what is about in the page

24    of the settlement agreement.

02:42:35    25            I'm certainly willing to -- to -- for 20 -- $25 for

1    the -- to make a proper licensing for the materials and for

2    anything else.  I'm not asking for much, because if they make

3    money, it'll come back to AVKO.  It's just I want -- I would

4    like to have it done properly.

02:43:07    5    THE COURT:  The one thing I want to make very clear to

6    you is, you're not in the business --

7    MR. MC CABE:  Pardon?

8    THE COURT:  You are not in the business of dealing

9    with this particular product.  Basically, the order I've

02:43:22   10    entered estops you from doing that.  And if you violate that

11    rule that I put in, it's just going to get worse.

12    I have a preliminary injunction order.  You can read

13    it for yourself.  You can see it.  And you'll see this is not a

14    negotiation between them and you and somebody does one part and

02:43:44   15    another person does another part.  If you're dealing with the

16    old product or the new product, unless, for example, Wave 3

17    writes you a letter and says it's okay to do this, absent that

18    kind of letter from them, you cannot use it under any

19    circumstances and in any fashion.

02:44:05   20    So basically, you're estopped here.  The consequences

21    of that are when we're dealing with whatever else we have to

22    do, we're going to do that as quickly as we can too, possibly

23    because maybe it'll turn out to be right about some of these

24    things, in which case I can open the door for you, but right

02:44:28   25    now, as it stands, you cannot sell these things.

1    And, in fact, the order requires you to send mail to

2  all of AVKO's distributors, licensees and customers, and it

3  basically tells you exactly the things that you're forbidden to

4  do.  Because of that, I'm going to try, as I have with respect

02:45:00    5  to other aspects of this, get a final ruling as quickly as I

6  can, because right now you're basically out of business as to

7  this product.  And if you want to get back into it, there's

8  some other issues that have to be raised, and when they're

9  raised I'll look at them.

02:45:20    10    I don't think there's going to be much leeway for you

11  to do anything, but I don't want this kind of thing that you

12  don't negotiate with them and you're not negotiating anything

13  with me, I've made orders which you have to follow.  I'll try

14  to get the rest of it done as soon as possible, but that's

02:45:40    15  where we are.  And the reason I had you come here is I want you

16  to know that because I don't want you to get yourself in

17  trouble by saying it's okay.  So that's where we are.

18    Do you have anything you want to add?

19    MS. SAPER:  I was just wondering, Your Honor,

02:45:56    20  regarding the separate order for court fines and costs, since

21  we're concerned that that --

22    THE COURT:  It's perfectly all right for you to file

23  something.  I just --

24    MR. MC CABE:  We have no money.  We are already over

02:46:09    25  $900,000 in debt.  AVKO Foundation is just going out of

1    business.

2         MS. SAPER:  But to the extent that may be the case, we

3    are wondering rather than imposing additional fines, that Wave

4    3 will be relieved of some of its obligations to pay that

5    $75,000 payments and/or to offset the 6 percent royalty that it

6    has to pay on an annual basis, I think that's probably a more

7    tangible way of --

8         THE COURT:  Which is fine.  And you may want to talk

9    to your opponent.  Maybe he doesn't want to talk to you.  Maybe

10   you can finally get it done.  But we're only talking about that

11   particular form of money.  We're not talking about the big

12   picture.

13        MS. SAPER:  Sure.  I know, Your Honor, you're going to

14   be issuing an order with respect to the fines and costs, so

15   it's just because it's within your discretion as an additional

16   potential idea.

17        THE COURT:  Yes, but what I want to do is make sure he

18   has this piece of paper (indicating).

19        MS. SAPER:  Yes.

20        (Document tendered.)

21        THE COURT:  Anything further you would like to raise?

22        MS. SAPER:  No, Your Honor.

23        THE COURT:  Thank you, counsel.

24        MS. SAPER:  Your Honor, is there another status or

25   when should we come back?

02:46:27

02:46:47

02:47:03

02:47:43

02:48:11

1        THE COURT:  We'll figure something out.

2        MS. SAPER:  Okay.

3

4       (Which concluded the proceedings had on this

5     date in the above entitled cause.)

6

7     *   *   *   *   *   *   *   *

8

9

10 I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

11   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER

12

13 /s/Blanca I. Lara        January 31, 2017

14

15

16

17

18

19

20

21

22

23

24

25