# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAVE 3 LEARNING, INC., a Nevada corporation | |
| Plaintiff | |
| | 16-cv-5643 |
| v. | |
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan 501(C)3 nonprofit corporation | Judge Sara L. Ellis |
| Defendant | |

**DEFENDANT'S REPLY TO PLAINTIFFS' COMPLAINT**

Defendant AVKO Educational Research Foundation, Inc. (AVKO) respectfully submits this reply to Plaintiff's complaint.

**NATURE OF THE ACTION**

1. There is no breach of contract, nor breach of an implied covenant of good faith and fair dealing, nor unjust enrichment, nor tortious interference with a business expectancy.

**JURISDICTION AND VENUE**

2. AVKO agrees with Plaintiff on this point.

**PARTIES**

3. Plaintiff Wave 3 Learning, Inc. (Wave 3) is a Nevada corporation with its principal place of business located at 126 E. Wing St. Suite 20, Arlington Heights, Illinois 60004

4. Defendant AVKO Educational Research Foundation, Inc. is a 501(c)3 nonprofit organization with its principal place of business located at 3084 Willard Road, Birch Run, Michigan 48415.

## BACKGROUND

5. After five years of litigation in four different courts in which Wave 3 and its attorneys unsuccessfully tried to appropriate AVKO's copyrights, Thomas Morrow for Wave 3 and Donald McCabe for AVKO signed a settlement agreement on February 24, 2016. See Exhibit A. The agreement was not mutually beneficial. In that agreement AVKO did grant an exclusive license not to AVKO's Sequential Spelling 1-7 but to the Wave 3 Sequential Spelling Teacher Edition 1-7 which has elements that some distributors such as Inquisicorp[1] do not appreciate.

6. After a lengthy all-day settlement conference mediated by Magistrate Judge Sheila Finnegan, McCabe reluctantly signed the settlement agreement mainly because she and AVKO's attorneys told him that Wave 3 did not have any more money to continue the litigation and the settlement was the best AVKO could get.

## AVKO DENIAL OF ANY BAD FAITH ATTEMPT TO UNDO THE SETTLEMENT AGREEMENT

7. Since that date AVKO (by and through its President, Don McCabe) has attempted to correct obvious deficiencies but Wave 3 would not negotiate. However, Wave 3 did convince AVKO's attorneys **WITHOUT AUTHORIZATION FROM AVKO** to make amendments to the agreement. It also should be noted that according to an Email and a letter from AVKO's attorney Brian Noack this action took place on February 25, 2016 but notification to AVKO of the unauthorized change to the settlement agreement did not place until July 8, 2016! (See Exhibit B).

---

[1] Also known as Sonlight, a Christian based distributor of home school educational products.

This is definitely a bad faith undoing of part of the settlement agreement by Wave 3 as well as AVKO's counsel. AVKO wanted to negotiate and correct obvious deficiencies. See Exhibit A.

    8. In paragraph 10 of Wave 3's complaint, Wave 3 asserts without any evidence whatsoever, that AVKO (specifically McCabe) "unreasonably denied approval of Wave 3's revised versions of Sequential Spelling Level 1 and 2. What happened is that Wave 3 convinced AVKO's attorneys that Thomas Morrow could give the terms to Jerry Bailey for his decision. Rather than "Were AVKO's objections reasonable?" (which is the meaning of "not unreasonably withheld" as it is written in the settlement agreement), Thomas Morrow said that if his changes were reasonable AVKO must accept them. Here Morrow DBA Wave 3 clearly managed to undo part of the agreement. AVKO's objections to the changes were reasonable objections not unreasonable. Just because a change may be reasonable does not mean an objection to the change is unreasonable. There is room for judgment. If both sides have a reason for their position, then as the settlement was written AVKO's objections should stand. But, that is not the directions given by Wave 3 to Jerry Bailey whose decision AVKO was bound by. On page 8 paragraph 27 in **Wave 3's Exhibit B** under **Undermining the Approval Process**, Wave 3 disparages Mr. McCabe and AVKO by deliberately referring to Mr. McCabe's objection to the "deletion of the outdated and offensive word 'negro' (sic)." The word *Negro* is always to be capitalized. AVKO felt it is important for the teacher to know the correct spelling of *Negro*. The instructions were to omit the word if the teacher deemed it offensive. The remainder of Wave 3's accusations of Mr. McCabe's attempts to "undermine" the approval process is without merits.

9. In **Wave 3's Exhibit B** on page 10 under **AVKO has Sold and is Currently Selling Sequential Spelling Level 1-7 Material to Distributors in Direct Violation of the Settlement Agreement** paragraphs 38, 39, and 40 are clearly irrelevant as AVKO is not selling to distributors. AVKO has licensed JJH Publishing to publish all AVKO copyrighted materials with the one exception, the Wave 3 revised versions of Sequential Spelling. JJH Publishing is currently selling to distributors, not AVKO.

10. **In Wave 3's Exhibit B** on page 11 under **Refusing to Pay Wave 3 its Royalties** paragraph 43 the Plaintiff contends that "AVKO's payment to Wave 3 of 50% of gross profits from the aforementioned sales, however, was not conditioned upon Wave 3's fulfillment of the four $25,000 payments over four years." What the Plaintiff omits is that in the Settlement Agreement there is no conditioning upon when the aforementioned royalties must be paid. To expect AVKO to pay a few hundred dollars or so to Wave 3 that owes AVKO $75,000 and counting, is a reach.

11. **In Wave 3's Exhibit B** on page 11 paragraph 44 the Plaintiff incorrectly claims that "The purpose of the Settlement Agreement was to provide clarity in the marketplace and to establish Wave 3 as the exclusive source of Sequential Spelling. No! That was not the case. The real purpose of the settlement was to end the ongoing litigation which Wave 3 claimed they could no longer afford doing. AVKO's attorneys presented an evaluation made by an independent firm Epsilon Economics[2] that showed the litigation had cost AVKO well over $1,000,000. After extensive questioning regarding Wave 3's financial situation, both AVKO's attorneys Brian Noack and Adam Wolek along with Judge Sheila Finnegan convinced Mr. McCabe that all Wave 3 could afford was $100,000 to be paid over four years but with no down payment until June 1, 2016. It should be noted that Thomas Morrow in an email

---

[2] This evaluation cost AVKO $9,600.00. AVKO's attorneys have refused to release the evaluation to AVKO along with a complete set of the AVKO materials.

to his distributors claimed Wave 3 was soon going to spend $75,000 in promoting Sequential Spelling.

**12. In Wave 3's Exhibit B** page 12 under **Count I Breach of Contract** in paragraph 47 the Plaintiff contends it has kept "…confidential the terms of the Settlement Agreement not necessary to exercise its rights granted under the Settlement Agreement and (5) refraining from disparaging AVKO. **Not quite true in either case.**

13. On page 12 in **Wave 3's Exhibit B** under **Count 1 Breach of Contract** in paragraph 48 the Plaintiff claims AVKO committed the material breach of contract by selling Sequential Spelling 1-7 to distributors after February 24, 2016. There is within the agreement a clause allowing this to occur until Wave 3 has their version ready for sale. There is also a small sticking point that AVKO wanted corrected. For a contract to be a contract there must be some consideration not just a promise of a consideration. The consideration was not paid until just days before June 1, 2016. Also in that same paragraph the Plaintiff accuses AVKO of violating the non-disparaging clause through its communications with Inquisicorp. That accusation in itself is disparaging. AVKO would like to know what the Plaintiff believes occurred in the aforementioned communications and what proof it has for such a disparaging accusation.

14. In **Wave 3's Exhibit B** under **Count I Breach of Contract** on page 13, paragraph 49 (a) Plaintiff asks for an "injunction ordering AVKO to stop selling Sequential Spelling Levels 1-7 material to distributors.…" Such an injunction is unnecessary as AVKO is not selling to any distributor. AVKO has granted a non-exclusive license to JJH Publishing for publishing all AVKO copyrighted materials with the one exception of the *Wave 3 Sequential Spelling Revised Editions 1-7*.

15. On page 14 in **Count II Breach of Implied Convenient of Good Faith and Fair Dealing** in **In Wave 3's Exhibit B** in paragraph 53, Plaintiff states "AVKO, acting through its President, unreasonably denied approval to the Wave 3's revised material in an attempt to force Wave 3 to renegotiate the Settlement Agreement." Incorrect on two counts. (1) Mr. Bailey determined that Wave 3's changes were reasonable, not that AVKO's objections were unreasonable. He was following the protocol given to him by Thomas Morrow of Wave 3 and not objected to by AVKO's attorneys, Noack and Wolek despite AVKO's demands that they should. (2) The Plaintiff attributes a rather disparaging motive for AVKO's action of objecting to various changes in Wave 3's version of Sequential Spelling, i.e., "attempt to force Wave 3 to renegotiate..."

16. Under **Count III Unjust Enrichment** in **Wave 3's Exhibit B** on page 15 in paragraphs 58 and 59 Plaintiff accuses AVKO of "wrongful acts" without stating specifically what the wrongful acts were nor does Plaintiff show any causality between the supposed wrongful acts and any lost revenue, lost customers, reputational injury, etc.

17. Under **Count IV Tortious Interference with a Business Expectancy** in **Wave 3's Exhibit B** in paragraph 62 on page 16 Plaintiff claims that AVKO "…told Wave 3's current and potential distributors and consumers--orally and in writing--that Wave 3 did not possess an exclusive license." AVKO denies that it told any of Wave 3's current and potential distributors and consumers either orally or in writing and certainly not both orally and in writing that Wave 3 did not possess an exclusive license.

18. Under **Count IV Tortious Interference with a Business Expectancy** in **Wave 3's Exhibit B** in paragraph 63 on page 16 Plaintiff claims "AVKO has

intentionally interfered with Wave 3's business expectancy by convincing distributors and customers to purchase AVKO's goods instead of Wave 3's goods. As AVKO isn't selling to distributors, how can there be interference?

19. Under **Count IV Tortious Interference with a Business Expectancy** in **Wave 3's Exhibit B** in paragraph 66 (b) on page 17 the Plaintiff claims damages of at least $20,000.

20. Under **Count V Punitive Damages** in **Wave 3's Exhibit B** paragraph 69 on page 17, Plaintiff asks for $100,000 or more.

21. Under **Count Certificate of Service on** in **Wave 3's Exhibit B** paragraph 63 on page 19, Plaintiff declares that on May 26, 2016 this complaint was served on AVKO's counsel. There is a slight problem with this. AVKO's counsel Noack and Wolek have claimed that their representation of AVKO ended shortly after the Settlement Agreement, specifically March 9, 2016 when the case was dismissed by Judge John Darrah. AVKO's counsel never forwarded the complaint to AVKO. AVKO only received the complaint on July 19, 2016 in an email from Wave 3's counsel Dahlia Saper..

In the **MEMORANDDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INUNCTIONS** Under **STATEMENT OF FACTS** on pages 1-3 Plaintiff re-states what is on pages 2-3 of the complaint with some additions, I think. At any rate AVKO in response would like to present a

## Thumbnail Summary of Facts:
### All of which are in the public records available to all, so there is no breach of confidentiality.

- **Thomas Morrow** drafted all the proposed contracts during the negotiations including the one[3] in which **he, Thomas Morrow** stated **AVKO owned the copyrights** and claimed that Home School Holdings (HSH) owned the publishing rights. In all other contracts proposed during initial negotiations and in the emails

---

[3] A proposed three-way contract with a signing date of September 9, 2009 with AVKO, HSH, and Instructional Media Innovations, Inc.

between Morrow and McCabe **during negotiations the words copyrights were never used.**

- In January, 2010 Thomas Morrow as CEO claimed under penalty of perjury in an SEC filing that HSH had purchased the publishing rights (not copyrights) and submitted a document signed only for AVKO but not by HSH in December 2009 as evidence!

- Thomas Morrow for HSH and Donald McCabe for the AVKO Educational Research signed a "Plain English Publishing Agreement" on June 4, 2010. The agreement was for $600,000 and called for two payments of $300,000 consisting of $50,000 cash and $250,000 worth of stock.

- AVKO received only $50,000. W3L in various legal documents claimed the check was from HSH, Thomas Morrow, and Wave 3 Learning which did not come into existence until June 18, 2010.

- Morrow twice attempted to convince AVKO to agree to purchase stock from HSH at $0.05 a share when its true value was less than $0.001 claiming at the last minute that a signed subscription (purchase) agreement was necessary for AVKO to be given the stock.

- When Morrow left HSH and created Wave 3, AVKO attempted to work with Wave 3 using the June 4, 2010 contract as its basic template until such time as Morrow could come up with an acceptable replacement contract.

- AVKO gave W3L approximately 9 months to get started and to fulfill its part of the bargain. When W3L did not, AVKO gave notice and then filed suit. 1:11-cv-13381-TLL-CEB which was assigned to the Honorable Thomas L. Ludington.

- Because AVKO failed to produce a $75,000 bond in time, the TRO motion was denied. Because AVKO's attorney **without the consent of AVKO** dropped HSH from the lawsuit and because **Wave 3 could not be party to the contract** as it **wasn't in existence at the time the contract was signed**, all the charges related to copyright infringement and fraud in the inducement were dropped.

- At the settlement hearing Thomas Morrow signed an agreement for Wave 3 handwritten in front of Judge **Ludington**. McCabe also signed it. McCabe also signed the subsequent formally drafted agreement as well to settle. Morrow

refused. Thus, AVKO has no reason to believe that Wave 3 would keep the agreement that was arrived at on February 23, 2016. This current frivolous lawsuit justifies AVKO's belief.

- In case Judge Ludington ruled that AVKO had given it an implied license to reproduce and distribute the AVKO materials.

- Judge Ludington also ruled that Wave 3 had to complete the $250,000 first installment on the license and that W3L must complete the $600,000 licensing fee the implied license called for.

- Wave 3 ignored that Court's ruling as well and has not paid AVKO anything.[4] AVKO informed Wave 3 that they were in breach of the implied licensing contract by not paying the agreed upon amount while continuing to publish.

- Wave 3 ignored that.

- Judge Ludington also ruled that the copyrights did NOT transfer to the licensee for publishing. Wave 3 has ignored that and decided to file a new lawsuit in Illinois rather than in Michigan as the initial agreement mandated.

- W3L ignored the Court's rulings and to this day continues to claim copyright ownership.[5]

- Before AVKO could file suit for breach of contract, **Wave 3 twice filed suit** for a declaratory judgment that it owned the copyrights.

- Even though the contract (upon which the Judge Ludington ruled the implied license was given) mandated all court actions be filed in Saginaw County, Michigan, Wave 3 filed in Illinois rather than Michigan. 1:14-cv-01948. Judge Virginia Kendall three times dismissed Wave 3's case for failing to produce any signed document beside the laughable licensing of copyrights supposedly owned by Thomas Morrow himself and then transferred to Wave 3. She then dismissed the case on the grounds she lacked jurisdiction and gently reprimanded both counsels for not knowing that.

- The second filing came before the first one had yet to be settled. Both filings contained a "manufactured" document claiming Morrow had assigned his

---

[4] On May 25, 2016 Wave 3 made a $25,000 payment directly to AVKO's attorneys, none of which was given to AVKO.
[5] Despite signing the settlement agreement of February 23, 2016 in which Wave 3 clearly states AVKO owns the copyrights, Wave 3 still claims it owns the copyrights.

copyrights to W3L.

- We have solid evidence to back all these allegations.

22. In Wave 3's **MEMORANDUM OF LAW**...under CONCLUSION on page 8, the Plaintiff claims "Wave 3 will be irreparably harmed if Defendant is allowed to continue selling Sequential Spelling Levels 1-7 material to distributors and other non-individuals." The truth is even **if** AVKO were to be selling to Distributors (which it is not--JJH Publishing is), the total amount of all sales of all AVKO books from July 1, 2015 through June 30, 2016 was $55,295.09. This is considerably less than the $75,000 criteria. And when you consider most of AVKO's sales come from individuals buying off our website, and Wave 3 does not sell books to individuals, there can be no real harm to Wave 3. The legal expenses for AVKO for this period was 182,950.55 resulting in a net loss for the last fiscal year of $172,058.61. As there may be adjustments such as depreciation taken, the true figure almost certainly will be higher.

23. In Wave 3's **MEMORANDUM OF LAW**...under **CONCLUSION** on page 8, the Plaintiff "requests this Court enter an Order granting (1) a temporary order requiring Defendant to (a) immediately cease mispresenting the terms of the Settlement Agreement to third parties,…" AVKO denies ever "mispresenting" any terms of the agreement to any third party. Plaintiff continues with "2) a subsequent preliminary injunction (a) enjoining Defendant from any attempt to sell Sequential Spelling Levels 1-7 to distributors and other non-individuals and (b) enjoining Defendant from representing to third parties that Wave 3 does not have an exclusive license to the copyrights in the Sequential Spelling Levels 1-7 works, until final adjudication of the merits of this action." This is just another not-so subtle attempt on Plaintiff's part to get a Court to override Judge Ludington's ruling that AVKO owns

the copyrights and to override the decisions of Judge Virginia Kendall that Wave 3 can't possibly own the copyrights.

24. In conclusion AVKO respectfully requests the court to issue a summary judgment against Wave 3 and its counsel for knowingly and deliberately filing a nuisance suit whose sole purpose is to force AVKO into bankruptcy so there would be no one left to challenge Wave 3's claims to all the copyrights of the materials written by Don McCabe who had assigned them to AVKO. AVKO is not asking for much. We do believe our former counsel Brian Noack would like to receive at least $100,000 for past expenses. We also believe that Thomas Morrow and Wave 3 will choose the bankruptcy route to avoid any payment. This he has done in the past, and just as he lied under penalty of perjury to the SEC, he also lied on his bankruptcy application. This we also have solid evidence to prove, but we wish that you will at least simply dismiss this case with prejudice and advise the Plaintiffs that the Settlement Agreement does NOT state that Wave 3 has the right to publish an online version of Sequential Spelling without first obtaining a license to do so. AVKO has suggested that to Thomas Morrow as recent as this week and even offered Wave 3 the licensing fee to be a more than affordable fee of just $25.00 along with the marketplace standard of 50% royalty. The only reason AVKO can find for Thomas Morrow to totally reject this offer, is that he knows the online version has no real cost for materials and if he can slide his interpretation of the badly written Settlement Agreement past AVKO, he would only have to pay 6% royalty on sales as opposed to the industry standard of 50%.

EXHIBIT A

## More Than a Few Problems with the Current Settlement Agreement.

1. Upon information and belief Thomas Morrow was not completely honest and forthcoming regarding his and Wave 3's financial situation.

2. The signed settlement is invalid because **it is illegal** for AVKO to grant exclusive publishing rights for the simple reason AVKO shares the copyrights to Sequential Spelling DVD's with Instructional Media Innovations, Inc. **Solution: non-exclusive rights.**

3. Wave 3 is now claiming on its website (http://sequentialspelling.com) owns the copyrights and trademarks despite the fact that the word *copyrights* only occurs in paragraph 7 where it says Wave 3 "understands and believes that AVKO is the sole and exclusive owner of the copyrights at issue ... with the exception of this license as hereby granted." **If** AVKO's attorneys believed on February 24, 2016 the settlement agreement was merely "Wave 3 is to be given the copyrights for $100,000" in exchange for dropping of the lawsuit" then AVKO believes **its attorneys are guilty of malpractice**. They have known that since 2011 AVKO has steadfastly maintained that AVKO has never and will never concede copyrights to Wave 3. Certainly AVKO should have been informed of this interpretation of "an exclusive license in the United States...and a world-wide nonexclusive license..." (See article 3)

**4.** Wave 3 (http://sequentialspelling.com/SS_for_Adults_and_Teens.html) is also claiming the copyrights to Sequential Spelling for Adults. This AVKO work was not the subject of the agreement--only Morrow's revised version of Sequential Spelling 1-7 and his Student Workbooks 1-7. It also contains a disparaging comment on its web page. **There is nothing in the settlement agreement regarding the licensing of the other AVKO materials to Wave 3 let alone the granting of copyrights!**

**5.** Wave 3 is also announcing a new *Sequential Keyboarding* to be introduced. **There is nothing in the settlement agreement regarding the licensing of the other AVKO materials to Wave 3 let alone the granting of copyrights!**

6. Wave 3 agreed that AVKO has the right to approve changes. Not a problem.

7. Other than a protocol for selecting a third party to the arbitrate a

disputed change there is no protocol in the agreement for the arbitrator to follow. Now, that is a problem.

a) Wave 3 has thus far submitted three books, Sequential Spelling 1, Student Work Book 1, and Sequential Spelling 4. All of which deviated so substantially from the original versions that they were deemed by AVKO as unacceptable.

b) AVKO believes an arbitrator (like the head official at a NFL football game) must have overwhelming and indisputable evidence to overrule the calling by the field official (AVKO) that each change was justifiable. In other words, Wave 3 must convince the arbitrator that

   i. each deletion of each sentence in the instructions makes for a **b**etter, **m**ore **e**ducationally **s**ound **p**roduct (BMESP)

   ii. each additional sentence in the instructions makes for a BMESP

   iii. each deletion of a teacher note, footnote, special formatting, homophone, or word for spelling makes for a BMESP.

   iv. each addition of a teacher note or word for spelling makes for a BMESP.

   v. each additional activity (such as unscrambling words) is necessary for a BMESP.

   vi. As Wave 3 is in possession of the original Microsoft Word documents of Sequential Spelling, to speed the approval and/or arbitration process, Wave 3 should produce each book of Sequential Spelling as it is with each change clearly marked.

8. **AVKO's attorneys refused to argue these six points with Wave 3's attorneys and allowed Thomas Morrow to set the ground rules for Mr. Bailey to follow**.

9. It was not established as to who was to contact Paul Holtz whom I understand refused to be that arbitrator. It was not established in the agreement as to who was to contact the person whose name overlapped or the one whose name might be picked out of a hat. AVKO would have been willing to accept Judge Finnegan if only to speed the process. Again, it was Thomas Morrow who ended up contacting Mr. Bailey and setting the ground rules. AVKO did not authorize Mr. Morrow

to do the contacting and the setting up of the ground rules. AVKO does not want to believe its attorneys would have given the Mr. Morrow that authorization without consulting AVKO. But, they may well have just done that just as on February 25, 2016 they amended the Settlement Agreement without AVKO's knowledge or permission.

10. There should have been two documents: **(1) one a settlement agreement** and **(2) a licensing agreement** to reproduce and distribute (i.e., a publishing rights agreement), or at the very least a division of the document **into two distinct parts**.

11. A license by law involves "consideration such as payment of money."

12. There has not been any payment. There is only the assurance given by Wave 3 that it intends to pay the initial installment of $25,000 on June 1, 2016 as part of the overall settlement agreement. As it is a matter of record that Wave 3 did not make any payment after a settlement agreement was signed in front of Judge Ludington. AVKO would not be surprised that Wave 3 again does the same, especially since **Case 1:15-cv-03393** was recently dismissed WITH PREJUDICE.

AVKO is of the opinion that the Judge Darrah's decision to do so was highly premature and subject to an appeal. Perhaps an informal appeal by Judge Finnegan would help.

13. Under 2. Settlement Payment it states: "Beginning **on or before** the Effective Date, Wave 3 shall pay to AVKO the sum of one hundred thousand dollars ($100,000.00) (the "Settlement Amount") in annual installments of twenty-five thousand dollars ($25,000) until satisfaction of the Settlement amount." NOTE: Nothing is said concerning payment of the licensing fees.

14. It also states: "Failure to pay the full Settlement Amount within 14 business days of the effective date of this Agreement terminates this entire Agreement...."

15. I know it continues on with "...unless the Parties agree in writing to extend this deadline." AVKO **did not agree "in writing"** to "extend this deadline.

16. Question: When is the Effective Date? The $100,000 has NOT been paid. According to the above sentence, the settlement amount will not be completed until June, 2019.

> Yet, it clearly states in the first paragraph that "This Agreement shall be **effective on the date of the last signature required for full execution by both AVKO and Wave 3 ("the Effective Date").**" This would make **February 24, 2016 the effective date.** Hmm. On or before the Effective Date????
>
> 17. According to the legal definition of a license, a license requires a payment. There was **no mention in this agreement of a payment for the license**, merely royalties. That two sets of IP attorneys failed to recognize the requirement of a payment for a license is a bit incomprehensible.
>
> 18. Under **2. Settlement Agreement** the word *it* is ambiguous in simple ordinary English and certainly it should be ambiguous in legalese. "Upon satisfaction of the Settlement Amount, AVKO acknowledges the receipt and sufficiency of this payment, and that it is in consideration of the releases and other provisions contained in this Agreement."
>
> 19. On page 1, re: confidentiality it states: "WHEREAS, the parties desire to keep the terms of their settlement confidential." The operative word is "desire." It does NOT state, "parties must keep the terms of their settlement confidential." And certainly Thomas Morrow has already leaked some of the terms of the settlement causing great concern to Sonlight, IMI, and Rainbow.
>
> Based upon Wave 3's actions since the February 23, 2016 signing, AVKO sees no point in having a non-disclosure clause in a revised agreement or the non-disparagement clause.

Other rather minor problems with the signed agreement:

20. On page 2 There is an ambiguity as to who actually receives the 6% royalty fees. It could be construed that Wave 3 is to pay AVKO directly. It could also be construed that the royalties are to be paid directly to Wolek and Noack to be held in trust for AVKO. I am sure our attorneys would prefer the latter and regret its omission.

21. On page 4 There is an ambiguity as to the length of time in:

"Such an individual will be granted no fewer than fourteen (14) from receipt of the item to provide an authorization or rejection." Fourteen years, fourteen months, fourteen days, fourteen minutes, fourteen seconds? There is little excuse for four attorneys to miss this except

perhaps the fact that it was late at night and their minds were a wee bit foggy.

22. In fact, the entire Count 10 Right of Review needs to be rewritten.

23. The numbering used in signed agreement goes from 13. <u>No Admission of Liability</u> to 8. <u>Confidentiality</u> so that there are two number eights, nines, and tens. Again four attorneys missed this.

For the preceding 23 reasons, AVKO is directing its attorneys to request a follow-up settlement conference with Judge Finnegan using all 23 reasons and any other reasons they may come up with to justify it. AVKO is further directing its attorneys to use as a starting point for the negotiation of a proper settlement the enclosed draft entitled *Settlement Agreement, Publishing License, and Release* which AVKO has submitted to them.

From: **Don McCabe** <donmccabe1@gmail.com>
Date: Fri, Jul 15, 2016 at 3:24 PM
Subject: 16-cv-5643
To: Rhonda_Johnson@ilnd.uscourts.gov, Daliah Saper <ds@saperlaw.com>

Your Honorable Sara L. Ellis and Wave 3 Inc.'s Counsel Ms. Daliah Saper

Attached find AVKO's answer.

May God smile on you today.

Don McCabe, President and Research Director Emeritus,
AVKO Educational Research Foundation
3084 Willard Road Birch Run, MI 48415-9404
Phone: (810) 686-9283   Fax: (810) 686-1101
[Website] http://www.avko.org