# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WAVE 3 LEARNING, INC., | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 5643 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| AVKO EDUCATIONAL RESEARCH | ) |
| FOUNDATION, INC. and DON MCCABE, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This dispute arises from a settlement agreement entered into between the parties regarding the licensing and distribution of certain educational materials. Unfortunately, the lengthy and ongoing feud between the parties reignited, and plaintiff filed this case, shortly after the ink on the settlement agreement dried. Plaintiff has filed a sixteen-count First Amended Complaint, alleging breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business expectancy, common law unfair competition, deceptive trade practices, fraud, and punitive damages.[1] Before the Court is plaintiff's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the motion [52] is denied.

## BACKGROUND

On February 24, 2016, after several years of litigation in several different courts, plaintiff Wave 3 Learning, Inc. ("Wave 3") and defendants AVKO Educational Research Foundation, Inc. ("AVKO") and Don McCabe ("McCabe") entered into a settlement agreement (the

---

[1] Plaintiff voluntarily dismissed its claims for common law unfair competition (Counts V and XII) as well as its claims for punitive damages (Counts VIII and XVI). *See* Pl's Motion for Partial Judgment on the Pleadings, at p. 13, 15.

"Agreement") to resolve their long-standing dispute over the Sequential Spelling materials. (Am. Ans. ¶¶ 7, 8.) Pursuant to the terms of the Agreement, Wave 3 agreed to dismiss all claims against defendants, pay defendants a fixed sum over a four-year period, and pay a 6% royalty on all future Sequential Spelling-related sales. (Am. Ans. ¶ 8; Am. Compl., Ex. A[2].) In exchange, defendants agreed to dismiss all claims against Wave 3 and allow it to use the Sequential Spelling website and trademark. (*Id*.) Under the Agreement, AVKO was also given the authority to approve any new Wave 3 material. (Am. Ans. ¶ 25.) The parties agreed that approval would not be "unreasonably withheld" and created an appeal mechanism to address any issues arising from the approval process. (Am. Ans. ¶¶ 26, 30; Am. Compl., Ex. A.) While defendants admit these material facts, defendants dispute many of Wave 3's remaining allegations.

The crux of the instant case lies in the parties' disagreement over the licensing rights of the Sequential Spelling materials. Wave 3 alleges that, under the terms of the Agreement, defendants granted it an exclusive license to Sequential Spelling Levels 1-7 and its derivatives in the U.S. as well as a nonexclusive license to the Sequential Spelling materials worldwide. (Am. Compl. ¶ 8.) Defendants deny this and state that "AVKO granted an exclusive license to Wave 3 Revised Edition Sequential Spelling Teacher Editions 1-7, not AVKO's Sequential Spelling." (Am. Ans. ¶ 9.) In other words, defendants say that they granted Wave 3 an exclusive license to the "revised" Sequential Spelling materials and any derivatives thereof but that they retained the rights to the "classic" Sequential Spelling materials.

---

[2] The Settlement Agreement has been filed three separate times in this case—under seal, redacted, and normally (not under seal or redacted). (*See* dkts. 14, 12, 19, 35, and 57.) For clarity's sake, when referring to the Agreement, the Court will cite Exhibit A of Plaintiff's Amended Complaint.

Wave 3 alleges that defendants have breached the Agreement by (1) selling the Sequential Spelling materials to distributors and other non-individuals in the United States after February 24, 2016, (2) refusing to give an accounting of and remit payment for AVKO's sale of the Sequential Spelling materials from February 24, 2016 to April 28, 2016, and (3) violating the non-disparagement clause of the Agreement through its communications with third parties. (Am. Compl. ¶¶ 59, 98.) Defendants deny these allegations. (Am. Ans. ¶¶ 9, 59, 98.) They state that Wave 3 did not work in good faith to fulfill the terms of the Agreement, that Wave 3 and its President, Thomas Morrow ("Morrow"), breached the Agreement by posting disparaging remarks on their website, and that AVKO's attorneys modified the Agreement without defendants' consent. (*Id*. ¶ 9)

Wave 3 further complains that defendants breached the implied covenant of good faith and fair dealing by abusing the approval process. (Am. Compl. ¶¶ 28-37.) Wave 3 says defendants unreasonably denied approval of Wave 3's revised versions of the Sequential Spelling material in an attempt to force Wave 3 to renegotiate the Agreement. (Am. Compl. ¶¶ 64, 103.) Additionally, Wave 3 alleges AVKO abused the approval process so that it could continue selling the Sequential Spelling material to distributors and other non-individuals. (*Id*.) Defendants deny abusing the approval process and contend that they were merely attempting to correct deficiencies in the Agreement and coordinate with Wave 3 to reconsider certain terms of the Agreement, that McCabe was concerned about legal ramifications related to certain copyrights, and that McCabe had legitimate concerns about the material submitted to defendants for approval. (Am. Ans. ¶¶ 10-43, 59, 98.)

Wave 3 alleges that defendants were unjustly enriched when they sold the Sequential Spelling materials to non-individuals after February 24, 2016. (Am. Compl. ¶¶ 68, 103.) AVKO

admits that it sold the Sequential Spelling materials to non-individuals after February 24, 2016. (Am. Ans. ¶ 68.)

Wave 3 next contends that AVKO intentionally interfered with Wave 3's business expectancy by convincing distributors and customers to purchase AVKO's goods instead of Wave 3's. (Am. Compl. ¶ 75.) Additionally, Wave 3 states that McCabe told Wave 3's current and potential distributors and consumers that AVKO had the right to sell the Sequential Spelling materials and Wave 3 did not. (*Id.* ¶ 112.) Defendants deny these allegations. (Am. Ans. ¶¶ 75, 112.)

Wave 3 also complains that defendants used deceptive trade practices by inducing third parties to purchase the Sequential Spelling materials from AVKO by misrepresenting to third parties that Wave 3 did not have the rights to sell the Sequential Spelling materials. (Am. Ans. ¶¶ 84, 122.) Defendants deny these allegations. (Am. Ans. ¶¶ 84, 122.)

Finally, Wave 3 says that AVKO, at the direction of McCabe, committed fraud by making false statements of material facts to Wave 3—that it had licensed the Sequential Spelling material only to JJH Publishing only when AVKO had in fact sold the materials to twenty other non-individuals—to make Wave 3 believe that its improper sale of the Sequential Spelling material was less egregious than it was. (Am. Ans. ¶¶ 87, 124.) Defendants deny these allegations. (Am. Ans. ¶¶ 87, 124.)

## STANDARD

Generally, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). However, when, as here, a party uses Rule 12(c) "to attempt to dispose of [a claim] on the basis of the underlying substantive merits[,].

4

. . . the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993); *see also Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (stating that the pleadings "consist of the complaint, the answer, and any written instruments attached as exhibits"). In considering such a motion, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *Janssen v. BRI Holding, LLC*, No. 16 C 10098, 2017 WL 2080424 at *2 (N.D. Ill. May 15, 2017). "A judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed." *All Am. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000). A court will grant a motion for judgment on the pleadings only when "no genuine issues of material fact remain to be resolved and . . . the [moving party] is entitled to judgment as a matter of law." *See Alexander*, 994 F.2d at 336. A dispute involving interpretation of a contract is generally amenable to resolution in the context of a judgment on the pleadings. *See Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 842 (N.D. Ill. 2009) (quoting *Rickher v. Home Depot, Inc.,* 535 F.3d 661, 664 (7th Cir. 2008) ("Under Illinois law, the interpretation of a contract presents a question of law that is decided by the court.")).

## DISCUSSION

**Breach of Contract (Counts I and IX)**

"A settlement agreement is in the nature of a contract and is governed by principles of contract law." *Rose v. Mavrakis*, 799 N.E.2d 469, 473 (Ill. App. Ct. 2003). Under Illinois law, to assert a claim for breach of contract, a plaintiff must show "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant;

and (4) the resultant damages." *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (quoting *Reger Dev., L.L.C. v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)).  A court's primary objective in interpreting a contract is to give effect to the intent of the parties. *See Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 775 (2016).  A court will first look to the language of the contract because the language, given its plain and ordinary meaning, is the best indication of the parties' intent.  *See Gallagher v. Lenart*, 874 N.E.2d 43, 58 (2007).  A court will also view the contract as a whole rather than viewing particular terms and provisions in isolation.  *See Matthews*, 51 N.E.3d at 776.  "In Illinois, the determination of whether a contract is ambiguous, as well as the construction of an unambiguous contract, are questions of law for the court." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 791 (N.D. Ill. 2010).  "A contract is ambiguous when its terms may reasonably be interpreted in more than one way." *Krilich v. Am. Nat. Bank and Trust Co. of Chi.*, 778 N.E.2d 1153, 1164 (Ill. App. Ct. 2002).  However, a term in a contract is not automatically rendered ambiguous simply because the parties disagree on the meaning of that term.  *See Thompson v. Gordon*, 948 N.E.2d 39, 48 (Ill. 2011).

*The Agreement*

The main point of contention between the parties involves the scope of the licensing rights granted to Wave 3 under the Agreement.  Paragraph 3 of the Agreement provides:

Materials at Issue

AVKO shall grant and hereby grants an exclusive license in the United States and Canada, and a worldwide nonexclusive license to the below titles and their derivatives (collectively "Sequential Spelling"):

- Sequential Spelling Level 1 Teacher Guide
- Sequential Spelling Level 2 Teacher Guide
- Sequential Spelling Level 3 Teacher Guide
- Sequential Spelling Level 4 Teacher Guide

6

- Sequential Spelling Level 5 Teacher Guide
- Sequential Spelling Level 6 Teacher Guide
- Sequential Spelling Level 7 Teacher Guide
- Sequential Spelling Level 1 Student Response Book
- Sequential Spelling Level 2 Student Response Book
- Sequential Spelling Level 3 Student Response Book
- Sequential Spelling Level 4 Student Response Book
- Sequential Spelling Level 5 Student Response Book
- Sequential Spelling Level 6 Student Response Book
- Sequential Spelling Level 7 Student Response Book

(Am. Compl., Ex. A,¶ 3.) The Court finds that this language is clear and unambiguous. The Agreement grants plaintiff an exclusive license in the U.S. and Canada, as well as a nonexclusive license worldwide, to the Sequential Spelling materials listed in paragraph 3 (Sequential Spelling Teacher Guide Levels 1-7 and Student Response Book Levels 1-7) and any derivatives thereof. The Agreement, viewed as a whole, does not contain any type of carve-out provision, or any language that would distinguish the "classic" version from the "revised" version of the Sequential Spelling materials as Defendants suggest. Rather, it is clear from the plain, unambiguous language of the Agreement that defendants granted Wave 3 licenses (both exclusive and nonexclusive) to *all* of the Sequential Spelling materials listed in paragraph 3 *and* their derivatives.

*Validity and Enforceability of the Agreement*

Defendants admit that the parties entered into the Agreement but appear to challenge the validity of it. They first complain that they were "disadvantaged" because their previous attorneys modified the Agreement without their consent and they did not become aware of the modifications until several months later. Defendants state that they should not be "disenfranchised due to conduct unbecoming of their counsel, and unknown to them as clients." Defs' Resp. at p. 5. They cite *Floyd v. Hefner*, 556 F. Supp. 2d 617, 661 (S.D. Tex. 2008), a case involving claims of breach of fiduciary duty and legal malpractice under Texas law, for the

proposition that attorneys owe a fiduciary duty to their clients and that clients are disadvantaged when there is a lack of communication with their attorneys. However, defendants' former attorneys are not parties to this case and any alleged errors in their representation of defendants are not directly at issue here. Moreover, the Court understands the modifications to concern a timeline for royalty payments, which does not affect the validity of the licensing rights granted to Wave 3 or change the Court's analysis.

Defendants also argue, without support, that the Agreement is somehow invalid since AVKO did not have the authority to grant plaintiff an exclusive license to AVKO's "classic" version of the Sequential Spelling material because it did not solely own the copyright to the electronic (CD/DVD) versions of those materials. AVKO says that it co-owns the copyright to the electronic version of the Sequential Spelling materials with Instructional Media Innovation. Wave 3 responds that the alleged co-ownership does not undermine the validity of its exclusive license to the Sequential Spelling material. Even if it did, Wave 3 argues that defendants would still be liable for breaching the Agreement because defendants represented in it that they had "all requisite power, authority or capacity, as applicable, to execute, deliver and perform this Agreement. No other person or entity is required to execute this Agreement for it to be binding as intended." (Am. Compl., Ex. A, ¶ 1.) Defendants' argument regarding the validity of the Agreement is not well developed here. Regardless, the Court agrees with Wave 3 that either scenario could result in breach.

*Substantial Performance*

Although defendants admit that Wave 3 performed its obligations under the Agreement (to dismiss its lawsuit against AVKO with prejudice, refrain from selling its revised works until they were authorized, remit payment to AVKO, remit royalties on its sales of the Sequential Spelling

material, and keep the terms of the Agreement confidential) they resist judgment on the pleadings on the basis that Wave 3 and Morrow breached the Agreement because they "have made continuous disparaging comments about AVKO and McCabe through their website." (Am. Ans. ¶ 58). Breaching a material term of an agreement may serve as grounds for releasing another party from fulfilling its obligations under the agreement. *See InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1025 (Ill. App. Ct. 2012). Here, however, it is not clear from the pleadings and attachments that Wave 3 and Morrow's alleged breaches were material so as to relieve defendants of their duty to fulfill their obligations under the Agreement. Defendants' vague and generalized allegations of breach do not overcome Wave 3's allegation of substantial performance under the Agreement.

*Breach*

Wave 3 alleges that defendants materially breached the Agreement by (1) selling the Sequential Spelling materials to non-individuals after February 24, 2016, (2) refusing to provide an accounting of and remit payment for certain sales made by AVKO from February 24, 2016 through April 28, 2016, and (3) violating the non-disparagement clause by representing to third parties that Wave 3 does not have any rights to the Sequential Spelling material. Defendants generally deny these allegations.

*1. Selling the Sequential Spelling Materials to non-individuals*

Defendants say that they did not materially breach the Agreement because the Agreement gives Wave 3 the exclusive right to distribute only the "revised" Sequential Spelling materials (and any derivatives thereof) and not the "classic" versions. However, as previously discussed, the Court rejects defendants' interpretation of the Agreement. The Agreement does not distinguish between a "revised" and a "classic" version of the Sequential Spelling materials.

9

Instead, the Agreement grants Wave 3 an exclusive license in the U.S. and Canada to all of the Sequential Spelling materials and their derivatives as well as a nonexclusive license worldwide.

Although the Court finds the Agreement unambiguous in that it does not differentiate between a "revised" version and a "classic" version, Wave 3 has not established (based on the pleadings and attachments) that defendants breached the Agreement by selling and/or licensing the Sequential Spelling materials at issue to non-individuals after February 24, 2016. Although AVKO admits that it sold the Sequential Spelling materials to non-individuals after the Agreement was executed on February 24, 2016, defendants deny that they sold any materials in violation of the Agreement. Defendants state that "[t]he Parties did not produce an approved version of the Materials and thus AVKO was not in violation of the terms." *See* Am. Ans. ¶¶ 68, 40. In other words, defendants seem to concede that they sold the Sequential Spelling materials but did so only before there was an approved version.

At first blush, AVKO's admission that it sold Sequential Spelling materials to non-individuals appears to show that it breached the Agreement. However, paragraph 6 of the Agreement allows AVKO to sell some of the Sequential Spelling materials for a limited period of time. Paragraph 6 provides:

> AVKO shall be permitted to sell all of its copyrighted materials on its website or other channels to the extent that it is to individuals and not distributors. *Until there is an approved version of Sequential Spelling 1(one) Teacher Guide, AVKO has the right to sell such material to its distributors and AVKO and Wave 3 will split the gross margins 50% and 50%.*

*See* Am. Compl., Ex. A, ¶ 6. (emphasis added).

When looking at the pleadings and exhibits attached thereto, the Court cannot tell if and exactly when a Sequential Spelling 1 Teacher Guide version was approved in accordance with

paragraph 6 of the Agreement. Therefore, the Court cannot determine when AVKO was no longer permitted to sell the Sequential Spelling 1 Teacher Guide under this provision.

Moreover, defendants deny that they sold any materials in violation of the Agreement and state that "[t]he Parties did not produce an approved version of the Materials and thus AVKO was not in violation of the terms." *See* Am. Ans. ¶ 40. Although Wave 3 attaches a spreadsheet and emails to the amended complaint to support its position, the documents do not definitively show that defendants engaged in the alleged behavior. In reviewing the spreadsheet, the Court is unable to discern which materials were allegedly sold. *See* Am. Compl., Ex. H. Likewise, the referenced emails do not conclusively show that defendants breached the Agreement because the emails discuss possible future actions, not current or past events. (*Id.*, Ex. B.). Based on the facts currently before the Court, and in viewing those facts and any reasonable inferences in the light most favorable to defendants, plaintiff's motion for judgment on the pleadings as to this theory of breach is denied.

### 2. *Royalties*

Wave 3 alleges that defendants breached the Agreement when they refused to give an accounting and remit payment for AVKO's sales of Sequential Spelling Level 1 material from February 24, 2016 and April 28, 2016. Defendants respond that McCabe was not aware that AVKO had to submit royalties within a certain time period but that defendants have since complied with this requirement. Wave 3 has not challenged that response, and this matter may therefore be moot. However, based on the pleadings and exhibits, the Court cannot determine whether royalties have been paid or whether defendants actually breached the Agreement in this manner. Because this issue is unresolved and genuine issues of material fact remain, Wave 3's motion as to this theory of breach is denied.

11

### 3. The non-disparagement clause

Wave 3 also says that defendants breached the non-disparagement clause of the Agreement by informing third parties that Wave 3 did not have exclusive licensing rights to the Sequential Spelling materials. Paragraph 9 of the Agreement provides:

> The Parties agree that they will not make any statement now, or at any time in the future, to representatives of any media or to any other person or entity, which is disparaging of the other Parties' reputation or disparaging of the character, competence or reputation of any officer, director, executive, shareholder, agent, employee, insurer, or attorney of the other Party which could, if publicized, cause any person or entity related to one of the Parties to any humiliation or embarrassment, or which could cause the public to question the competence, reputation or character of any of these persons or entities.

*See* Am. Compl., Ex. A, ¶ 9.

On July 22, 2016, McCabe sent an email to the President of Wave 3 (Morrow) and a third party (Joe Hipps of JJH Publishing) stating that AVKO had terminated all licenses of Sequential Spelling Levels 1-7 materials and all derivatives thereof to non-individuals and that AVKO may be able to re-license the revised version of the materials to Wave 3 and the classic version of the materials to JJH Publishing after August 4, 2016. *See* Am. Compl., Ex. I. Several days later, on July 29, 2016, McCabe sent an email to two third-party distributors (Rainbow Resource Center, Inc. and Exodus Books) stating that no publisher was licensed to sell the Sequential Spelling material to distributors. *See* Am. Compl, Ex. K. Essentially, defendants told third parties that plaintiff did not have exclusive rights to the Sequential Spelling materials.

Defendants admit sending the emails but deny that McCabe made any disparaging remarks about Wave 3 to third parties because his communications to the third parties were consistent with his understanding of the Agreement. The Court, however, has rejected defendants' interpretation of the Agreement.

Nonetheless, Wave 3 has not met its burden here. Based on the plain language of the Agreement, it is not clear to the Court that defendants' statements to third parties (that Wave 3 did not have a license to the Sequential Spelling materials) were disparaging or violated the non-disparagement clause. Further, it is unclear whether defendants materially breached the Agreement by sending the referenced emails. Whether a material breach of contract has been committed is a question of fact. *See InsureOne Independent Ins. Agency, LLC*, 976 N.E.2d at 1027. Accordingly, Wave 3's motion for judgment on the pleadings regarding this theory of breach is denied.

For the reasons stated above, Wave 3's motion for partial judgment on the pleadings regarding its breach of contract claims is denied.

**Breach of Implied Covenant of Good Faith and Fair Dealing (Counts II and X)**

Wave 3 argues that defendants breached the implied covenant of good faith and fair dealing by (1) unreasonably using the approval process to force plaintiffs to re-negotiate the Agreement and (2) communicating their bad faith interpretation of the Agreement to third parties. Illinois does not recognize a separate cause of action for breach of implied covenant of good faith and fair dealing. *See Ross Advert., Inc. v. Heartland Bank and Trust Co.*, 969 N.E.2d 966, 979 (Ill. App. Ct. 2012). Rather, the implied covenant of good faith is "used as a construction aid to assist the Court in determining whether the manner in which one party exercised its discretion under the contract violated the reasonable expectations of the parties when they entered into the contract." *Wilson v. Career Educ. Corp*. 729 F.3d 665, 675 (7th Cir. 2013) (applying Illinois law); *see also Zeidler v. A & W Restaurants, Inc.*, 301 F.3d 572, 574-75 (7th Cir. 2002) (the covenant of good faith and fair dealing "is only an aid to interpretation, not a source of contractual duties or liability under Illinois law.") "'Good faith' is a compact reference

to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990).

Wave 3 acknowledges that Illinois does not recognize a separate cause of action for these claims and requests, in the alternative, that these claims be subsumed into its breach of contract claim or unjust enrichment claim. Even construing the allegations within plaintiff's breach of contract claims, however, judgment on the pleadings is not appropriate because genuine issues of material fact remain. Wave 3 says that defendants tried to force Wave 3 to re-negotiate the Agreement and used the approval process as leverage. Defendants deny this and contend that McCabe had legitimate concerns about the legal ramifications of certain copyrights as well as the material submitted to defendants for approval. Because issues of material fact remain unresolved, plaintiff's motion for judgment on the pleadings as to Counts II and X is denied.

**Unjust Enrichment (Counts III and XI)**

Plaintiff argues that defendants were unjustly enriched by unreasonably denying and delaying approval of plaintiff's revised works. However, recovery on an unjust enrichment claim is not available when an actual contract governs the relationship between the parties. *See Gagnon v. Schickel*, 983 N.E.2d 1044, 1053 (Ill. App. Ct. 2012); s*ee also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (citing *Nesby v. Country Mut. Ins. Co.*, 805 N.E. 2d 241, 243 (Ill. App. Ct. 2004) ("Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."). Here, Wave 3 alleges that the parties entered into the Agreement and that defendants are liable for breaching it. (*See* Am. Compl. ¶ 67 (incorporating all preceding paragraphs).) Because Wave 3 alleges the existence of

an actual contract, its unjust enrichment claim is not viable here. Accordingly, plaintiff's motion for judgment on the pleadings as to Counts III and XI is denied.

**Tortious Interference with a Business Expectancy (Counts IV and XII)**

Wave 3 argues that it had a reasonable expectation of entering into valid business relationships with several distributors, including Inquisicorp, Inc. and twenty other non-individuals; defendants were aware of this business expectancy; and, defendants purposely interfered by representing to Wave 3's current and potential distributors and consumers that Wave 3 did not have a license to sell or distribute the Sequential Spelling materials and that AVKO had the right to sell the material. Wave 3 contends that consumer demand plummeted, resulting in lost profits and goodwill. Defendants deny these allegations and state that they did not sell any versions of the Sequential Spelling materials in violation of the Agreement and that McCabe has no knowledge that his actions may have "directly and irreversibly injured" plaintiff's business interests and expectancy. *See* Defs' Resp., Ex. 2.

To assert a claim for tortious interference with a business expectancy under Illinois law, a plaintiff must show (1) a "reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1020 (N.D. Ill. 2014). "To satisfy the first element of tortious interference, a plaintiff must specifically identify the customers who 'actually contemplated entering into a business relationship with [the plaintiff].'" *Id*. (quoting *Celex Group, Inc. v. Executive Gallery*, 877 F. Supp. 1114, 1126 n. 19 (N.D. Ill. 1995)).

Wave 3 has not provided the Court with evidence sufficient to show that it had a business relationship with any of the distributors identified in its amended complaint or that the distributors would have entered into business relationships with Wave 3. *See Celex Group, Inc.*, 877 F. Supp. at 1124 ("Merely providing proof of a past customer relationship is not sufficient to prove a 'reasonable expectation' of a business relationship in the future."). Likewise, it is disputed whether McCabe has the requisite knowledge of Wave 3's business interests and expectancy. Because material issues of fact remain to be developed, judgment on the pleadings is inappropriate here. Accordingly, plaintiff's motion as to Counts IV and XII is denied.

**Deceptive Trade Practices (Counts VI and XIV)**

Wave 3 argues that defendants engaged in deceptive trade practices by falsely stating that AVKO, rather than Wave 3, had rights to sell the Sequential Spelling materials so that third parties would purchase the materials from AVKO and not Wave 3. "The purpose of the Deceptive Trade Practices Act is to prohibit unfair competition, and it is primarily directed toward acts that unreasonably interfere with another's conduct of his or her business." *Chi.'s Pizza, Inc. v. Chi.'s Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 995 (Ill. App. Ct. 2008). The Act provides injunctive relief when a plaintiff is able to show that a defendant engaged in the conduct listed in 815 ILCS § 510/2(a), including engaging in conduct that creates a likelihood of confusion or misunderstanding. *See Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455 at *12 (N.D. Ill. Dec. 18, 2015) (citations omitted).

Here, too, genuine issues of material fact exist and further development of the facts is necessary. Defendants deny the allegations and that McCabe "falsely held himself out" to third-parties as the source of Wave 3's goods and that AVKO represented to third parties that AVKO acts on behalf of plaintiff. Defs. Resp., p. 12. Additionally, Wave 3 has not sufficiently

established that the alleged misrepresentations caused consumer confusion and/or caused consumers to not purchase the Sequential Spelling materials from Wave 3. For these reasons, plaintiff's motion for judgment on the pleadings regarding Counts VI and XIV is denied.

**Fraud (Counts VII and XV)**

Wave 3 argues that defendants committed fraud by stating (in open court) that AVKO licensed the Sequential Spelling materials to JJH Publishing only, when, in fact, AVKO licensed and sold the materials to twenty other non-individuals. To support this claim, Wave 3 points to statements McCabe made in open court as well as a document that he purportedly attempted to file with the Court. Wave 3 contends that defendants' alleged fraudulent misrepresentation and concealment resulted in lost sales and control over the market for another month. Defendants deny Wave 3's allegations and state that genuine issues of material fact remain.

To state a common law claim for fraud under Illinois law, a plaintiff must show "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of that statement; and (5) plaintiff's damages resulting from reliance on the statement." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 891 (Ill. 1996)). The pleader must allege that its belief in the false statement and reliance on it was reasonable. *Triumph Packaging Grp. v. Ward*, 877 F.Supp.2d 629 (N.D. Ill. 2012). The allegations must meet the heightened pleading standards in Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Here, Wave 3 has failed to meet its burden. When a plaintiff moves for judgment on the pleadings, the motion will not be granted unless no genuine issues of material fact remain to be resolved and the moving party is entitled to judgment as a matter of law. *See Alexander*, 994

F.2d at 336. Wave 3 has not demonstrated that it is entitled to judgment on the pleadings, and it is not clear whether Wave 3's fraud claim is viable. This claim is not fully developed and genuine issues of material fact remain unresolved. Based on the pleadings and attachments before the Court, Wave 3's motion for judgment on the pleadings as to Counts VII and XV is denied.

## CONCLUSION

For the aforementioned reasons, plaintiff's motion for partial judgment on the pleadings [52] is denied. Plaintiff's request for a permanent injunction is denied at this time. The Court's previous Preliminary Injunction Order stands.

**SO ORDERED.**

ENTERED: November 28, 2017

_____
**HON. JORGE ALONSO**
**United States District Judge**